IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
E. St. LOUIS DIVISION

| | |
|---|---|
| HENRY DAVIS, DOUGLAS COLEMAN, AARON FILLMORE, JEROME JONES, DESHAWN GARDNER, and PERCELL DANSBERRY, <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN BALDWIN, <br><br> Defendant. | Case No. 3:16-cv-600-SCW <br> Honorable Stephen C. Williams |

**MEMORANDUM OF LAW IN SUPPORT OF
THE DEFENDANT'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO SEVER THE COMPLAINT**

NOW COMES the Defendant, JOHN BALDWIN, the Director of the Illinois Department of Corrections, by and through his attorney, LISA MADIGAN, Attorney General for the State of Illinois, and hereby submits this memorandum of law in support of his Motion to Dismiss or, alternatively, to Sever the Complaint, stating as follows:

**INTRODUCTION**

On June 2, 2016, Plaintiffs Henry Davis, Douglas Coleman, Aaron Fillmore, Jerome Jones, DeShawn Gardner, and Percell Dansberry filed a complaint pursuant to 42 U.S.C. § 1983, purporting to seek class-based declaratory and injunctive relief against a single defendant, John Baldwin, the Director of the Illinois Department of Corrections ("IDOC"). Plaintiffs allege that the Director, through the enactment and enforcement of policies and customs relating to the placement of offenders in disciplinary segregation ("segregation") and administrative detention, has violated Plaintiffs' rights under the Eighth and Fourteenth Amendments.

In support of their claims, each plaintiff presents a unique set of individualized allegations concerning their current or former confinement to segregation and administrative detention within

various facilities operated by IDOC. For relief, Plaintiffs request a declaratory judgment and extensive equitable relief that would effectively replace IDOC's standards and procedures for placement of offenders within segregation, administrative detention, and other forms of discretionary segregation within all facilities operated by IDOC.

Now, the Director moves to dismiss Plaintiffs' complaint for several reasons. *First*, Plaintiffs fail to state a claim for violation of their constitutional rights under the Eighth and Fourteenth Amendments. *Second*, the Court is without subject-matter jurisdiction to grant the relief sought by Offenders Coleman, Jones, and Dansberry because they do not allege they are currently confined in segregation or administrative detention. *Third*, the claims of Offenders Coleman, Fillmore, and Jones are barred by *res judicata* because their claims were previously dismissed with prejudice in *Coleman, et al. v. Taylor*, N.D. Ill. 2015-cv-5596. And *finally*, if the Court does not dismiss the complaint, the Court should sever Plaintiffs' claims into separate actions in accordance with Federal Rule of Civil Procedure 21.

**BACKGROUND**

In the complaint, Plaintiffs allege that IDOC enforces policies and procedures regarding the placement of offenders in segregation, discretionary segregation, and administrative detention, which results in the imposition of "extreme isolation." Plaintiffs further contend that "extreme isolation" presents a great risk of physical and emotional harm to offenders.

In support of their contention that they are exposed to "extreme isolation," each Plaintiff presents a plethora of complaints concerning segregation or administrative detention, including restrictions on visitations and telephone privileges, the lack of ability to communicate with other offenders, the conditions of their cells, and the grievance procedures, among other things.

<u>*Henry Davis*</u>

Offender Henry Davis alleges that he is currently confined to a six-month term of disciplinary segregation at Lawrence Correctional Center, which terminates on September 11, 2016. (Doc. 1 at

¶¶ 68-69.) Offender Davis complains of many aspects of his segregation, including: restrictions on personal visits (Doc. 1 at ¶ 69); limitations on telephone calls (*id.*); mail delays (*id.*); interruption of his General Educational Development (G.E.D.) preparation program (*id.* at ¶ 70); inability to participate in "Bible study courses" and other identified religious programming (*id.*); and an unstaffed law library with "torn and tattered books" (*id.*).

He also vaguely alleges that his food portions "are very small" (*id.*); that his cell is "bug-ridden" (*id.* at ¶ 71); and that his cell is "often freezing cold in winter" (*id.*). Offender Davis complains of difficulty in communicating with other offenders in segregation because of the building materials used in segregation and ambient noise. (*Id.* at ¶ 72.) Offender Davis further admits that he is allowed to go outside in the recreation yard, though he claims is allowed only "approximately two hours each week, usually combined on the same day." (*Id.*) He does not currently have a cellmate, but he has in the past. (*Id.*)

Offender Davis states he was placed in disciplinary segregation on March 11, 2016, after he received a disciplinary report for leadership in a security threat group ("STG"), a charge which he has been found guilty of in the past. (Doc. 1 at ¶ 68.) Offender Davis alleges that prison officials failed to disclose to him the identities of confidential informants and that he "was unable to call any witnesses to refute the charge against him." (*Id.*) Plaintiff provides no further allegations about the disciplinary process.

### *Douglas Coleman*

Offender Douglas Coleman alleges he is currently incarcerated in "X"-house at Stateville Correctional Center. (Doc. 1 at ¶ 74.) Offender Coleman does not allege that he is currently confined to segregation; instead he complains about conditions he alleges to have experienced during different terms of disciplinary segregation in 2001, 2011, and 2013. (Doc. 1 at ¶¶ 76, 81.)

### Aaron Fillmore

Offender Aaron Fillmore alleges that he has been continuously confined in various forms of segregation during the past 17 years of his incarceration. (Doc. 1 at ¶ 107.) He is currently incarcerated at Lawrence Correctional Center and has been placed in administrative detention since December 1, 2015, after serving a one-year term in disciplinary segregation as the result of alleged gang activity commencing in 2014. (Doc. 1 at ¶¶ 129-30.)

Offender Fillmore complains of many aspects of administrative detention in the complaint. For instance, Offender Fillmore complains about: the size and arrangement of his cell (Doc. 1 at ¶ 112); the smell and noise in his housing unit (*id.* at ¶¶ 112-13); restrictions on personal visits and telephone calls (*id.* at ¶¶ 114, 116); not regularly receiving five hours of yard time each week (*id.* at ¶ 117); lack of access to reading materials and the law library (*id.* at ¶ 118); delays in mail (*id.* at ¶ 118); and lack of religious programming (*id.* at ¶ 121). He alleges he has had cellmates in the past, but complains that he does not possess the social skills to interact with other offenders due to his placement in administrative detention. (*Id.* at ¶ 120.)

After being notified that he would be placed in administrative detention on November 3, 2015, Offender Fillmore alleges that he was not allowed to attend the placement review, present any evidence at the review, or defend against his continued placement in administrative detention. (Doc. 1 at ¶ 130.) He further states that, on December 7, 2015, he received a memorandum from prison officials informing him that he would remain in administrative detention indefinitely. (*Id.*)

### Jerome Jones

Offender Jerome Jones states that he is currently confined in general population at Menard Correctional Center. (Doc. 1 at ¶ 178.) He complains of conditions he experienced in 2013 to 2015 in administrative detention at Stateville Correctional Center and Lawrence Correctional Center. (Doc. 1 at ¶ 133.)

### DeShawn Gardner

Offender DeShawn Gardner alleges that he is currently confined in the least-restrictive phase of administrative detention at Lawrence Correctional Center and that he has been confined in administrative detention since October 28, 2014. (Doc. 1 at ¶¶ 150, 163.) Offender Gardner complains of several conditions that he alleges to have experienced in administrative detention, including: denial of rehabilitative, education and religious programming (*id.* at ¶ 164); limited time outside of his cell (*id.*); lack of access to the law library (*id.*); the application of restraints when he is transported outside of his cell (*id.* at ¶ 165); restrictions on visitations and telephone usage (*id.* at ¶¶ 166, 175); delays in mail (*id.* at ¶ 167); a 15-minute timer on his toilet (*id.* at ¶ 168); the proximity of his cell to the cells of mentally-ill offenders (*id.* at ¶ 169); the noise and smell of his housing unit (*id.*); small food portions (*id.* at ¶ 174); and insects that enter his cell (*id.* at ¶ 176). Offender Gardner states that, in spite of his feelings of isolation, he does not want a cellmate and that the presence of another offender in his cell may cause him to engage in fighting. (*Id.* at ¶ 177.) Offender Gardner states that prison officials have conducted multiple reviews of his continued placement in administrative detention. (Doc. 1 at ¶ 181.)

### Percell Dansberry

Offender Percell Dansberry is currently confined at Menard Correctional Center. (Doc. 1 at ¶ 182.) Offender Dansberry complains about conditions he experienced in administrative detention, from which he was released in November of 2015. (*Id.* at ¶ 184.)

### MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim for relief is *plausible* if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78.

However, a complaint merely offering conclusory allegations or a formulaic recitation of the elements of a cause of action is insufficient to satisfy the requirement in Rule 8 of a "short plain and statement of the claim showing that the pleader is entitled to relief." *Id.*; Fed. R. Civ. P. 8(a). Stated simply, Rule 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.

## ARGUMENT

### I. Plaintiffs Failed to State a Conditions-of-Confinement Claim.

Plaintiffs' conditions-of-confinement claim should be dismissed because Plaintiffs fail to allege that prison officials are currently acting with deliberate indifference to a substantial risk of serious harm posed by Plaintiffs' current placements. The Eighth Amendment prohibits prison officials from confining a prisoner in conditions imposing the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). To state a claim challenging the conditions of his confinement, a prisoner must allege that prison officials have acted with deliberate indifference to a substantial serious risk of harm posed by those conditions. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Such a showing requires that a prisoner allege sufficient facts to satisfy both objective and subjective elements of the claim. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

*Objectively*, the prisoner must allege facts showing that the conditions in which he is confined are "sufficiently serious," such that the confinement results in "the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S 825, 834 (1994) (quoting *Rhodes*, 452 U.S. at 347)); *Gruenberg v. Gempeler*, 697 F.3d 573, 578-79 (7th Cir. 2012); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). An objectively serious risk is "one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

*Subjectively*, the prisoner must allege facts showing that the prison official is acting with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (recognizing that *deliberate indifference* is "something akin to criminal recklessness, which requires that the defendant be aware of and disregard an excess risk of serious harm to the inmate"). In this context, a prisoner must allege that a prison official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. More simply, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Id.*

Here, the Court should dismiss Plaintiffs' respective claims concerning the conditions of their confinement at the various institutions in which they are currently confined. Initially, Offenders Coleman, Jones, and Dansberry claims should be dismissed as moot because they each fail to allege that the Director is currently perpetrating an ongoing constitutional violation in relation to the conditions of their confinement. As to the remaining claims under the Eighth Amendment, Offenders Davis, Fillmore, and Gardner fail to allege facts showing that the conditions of their confinement are sufficiently serious to constitute an objective risk of harm or that the Director has acted deliberately indifferent. The Court should dismiss Plaintiffs' conditions-of-confinement claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**A. The claims of Offenders Coleman, Jones, and Dansberry are moot.**

Offenders Coleman, Jones, and Dansberry do not allege that they are currently in disciplinary segregation or administrative detention. Because they are seeking declaratory relief, which requires an actual controversy between the parties, and injunctive relief against the Director in his official capacity, which requires the presence of an ongoing constitutional violation, these Plaintiffs' failure to allege that they are currently experiencing unconstitutional conditions of confinement warrants dismissal of their claims. *See Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir.

1992) ("By the time Forbes filed his petition, he had been released from administrative segregation, and any request for less restrictive custody was therefore moot.")

### B. The allegations of Offenders Davis, Fillmore, and Gardner fail to establish that the Director has acted with deliberate indifference to the deprivation of their basic human needs.

In the context of conditions-of-confinement actions, federal jurisprudence holds that prison officials must ensure prisoners receive adequate food, clothing, shelter, medical care, bedding, hygiene materials, and sanitation. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *see also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). But, while the Eighth Amendment requires that a prisoner be housed under "humane conditions," *Farmer*, 511 U.S. at 832, "the Constitution does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349. *See generally Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) ("For instance, extreme deprivations are required to make out a conditions-of-confinement claim."); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement."); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment.").

Here, Plaintiffs have failed to establish the objective element of their conditions-of-confinement claim because they are unable to plausibly allege that their placement in segregation or administrative detention has deprived them of a basic human need which the Director is required to provide under the Eighth Amendment. As a result, the Court should dismiss their claim for failure to state a claim upon which relief can be granted.

Plaintiffs' allegations concerning the restrictions imposed by their placement in segregation or administrative detention do not rise to the level of being objectively serious. As stated above, in the context of conditions-of-confinement claims, federal jurisprudence has held that prison

officials must ensure that a prisoner's basic human needs are met, which have been held to include receipt of adequate food, clothing, shelter, medical care, bedding, hygiene materials, and sanitation. *See Knight*, 590 F.3d at 463; *Gillis*, 468 F.3d at 493. While Plaintiffs do not clearly identify the basic human need the Director has allegedly denied them, it seems that Plaintiffs' claims relate to some undefined amount and types of interaction with other human beings, as suggested by their repeated use of the expression "extreme isolation." The Director, however, has discovered no federal jurisprudence specifically holding that such a deprivation forms the basis of a claim under the Eighth Amendment.

Yet, even assuming human contact constitutes a basic need under the Eighth Amendment, Plaintiffs' respective alleged confinements do not deprive them of their asserted basic need. The Supreme Court addressed the concept of "extreme isolation" in relation to incarceration in *Wilkinson v. Austin*. 545 U.S. 209, 214 (2005). In that case, the Supreme Court described the conditions at Ohio's "Supermax" prison, the Ohio State Penitentiary, as "synonymous with extreme isolation":

> In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates *are deprived of almost any environmental or sensory stimuli and of almost all human contact.*

*Id.* at 214 (emphasis added). The Supreme Court further stated that, in addition to the described conditions, "placement at OSP is for an indefinite period of time, limited only by an inmate's sentence." *Id.* at 214-15. *Wilkinson* involved only a procedural due-process claim under the Fourteenth Amendment (as the parties had settled an Eighth Amendment claim much earlier in the case). *See id.* at 229 ("Prolonged confinement in Supermax may be the State's only option for the control of some inmates, and claims alleging violation of the Eighth Amendment's prohibition on

cruel and unusual punishments were resolved, or withdrawn, by settlement in an early phase of this case.").

In comparing Plaintiffs' allegations of the conditions of their respective experiences in segregation and administrative detention to those experienced by the prisoners in *Wilkinson*, it is apparent that Plaintiffs are not held in conditions constituting "extreme isolation." Unlike the *Wilkinson* prisoners, who the Supreme Court described as "deprived of almost any environmental or sensory stimuli and of almost all human contact," Plaintiffs' allegations demonstrate that they have regular opportunities for environmental and sensory stimuli and human contact.

To illustrate, other than Offender Gardner, who claims he does not want a cellmate, each Plaintiff admits that he has had a cellmate at some time during his time in segregation or administrative detention. (Doc. 1 at ¶¶ 72, 78, 120, 142, 162, 197.) Similarly, each Plaintiff, other than Offender Gardner who does not address the issue, admits that he may participate, or could have participated, in visitations with individuals from outside the prison while in segregation or administrative detention. (Doc. 1 at ¶¶ 69, 86, 116, 139, 193.) Further, no Plaintiff contends that he is, or has been, deliberately prevented from communicating with other offenders in segregation or administrative detention by prison officials; rather, Plaintiffs complain that communication with other offenders can be difficult because of environmental factors and the noise created by other offenders in the unit. (Doc. 1 at ¶¶ 72, 83, 112.)

In light of these allegations, as well as other allegations in the complaint demonstrating the human interactions they have had while in segregation or administrative detention (receipt of mail, telephone privileges, etc.), Plaintiffs fail to establish that the conditions they experience in segregation or administrative detention amount to "extreme isolation" or the deprivation of a basic human need. Therefore, the Court should dismiss Plaintiffs' conditions-of-confinement claim because they have failed to establish that they are currently experiencing an objective, serious risk from the restrictions imposed on their ability to interact with other individuals.

Finally, Plaintiffs complain of collateral conditions they experienced in their cell, which are not clearly related to the deprivation of the asserted basic human need of human interaction on which they base their complaint. The collateral conditions include alleged smaller food portions, the presence of insects, cold temperatures in the winter, and the smell and noise caused by other offenders in their respective housing units, among other things.

However, in relation to each of these allegations, Plaintiffs fail to allege that the Director has been deliberately indifferent to these conditions and fail to establish a nexus between the alleged unconstitutional policies and customs of which they complain and any conditions complained of within the complaint. Even in official-capacity claims, a prisoner must allege that a prison official possesses the requisite state of mind to state a claim. *See Wilson*, 501 U.S. at 300 (holding that a plaintiff must establish that an official is acting with the requisite culpability in a claim challenging conditions of confinement, even when "continuing" or "systemic" conditions are at issue). Plaintiffs allege no facts showing the Director was aware of facts from which an inference could be drawn that a substantial risk of serious harm currently exists and that he has, in fact, drawn the inference. *See Farmer*, 511 U.S. at 837. Because Plaintiffs have not alleged that the Director has disregarded these conditions, or that the policies and customs he allegedly enforces have plausibly sanctioned these conditions, the Court should hold that Plaintiffs have failed to establish that the Director has acted with deliberate indifference to these collateral conditions.

## II. Plaintiffs Fail to State a Procedural Due-Process Claim.

Plaintiffs' procedural due process claim should be dismissed because Plaintiffs do not have a liberty interest in avoiding segregation, nor have they been denied the required process. To state a claim for a procedural due-process violation, a plaintiff must allege that "the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). A procedural due-process claim is examined in two steps: "the first asks whether there exists a liberty or property interest which has

been interfered with by the State; [and] the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989) (internal citations omitted).

Here, the Court should dismiss Plaintiffs' procedural due-process claims because they fail to establish both required elements. First, Offenders Coleman, Jones, and Dansberry each fail to allege that they are currently confined in any form of segregation that would warrant injunctive relief. Second, Offenders Davis, Fillmore, and Gardner fail to allege facts showing a liberty interest in avoiding segregation or administrative detention, or that they were denied the requisite process.

### A. The claims of Offenders Coleman, Jones, and Dansberry are moot.

Offenders Coleman, Jones, and Dansberry do not allege that they are currently in disciplinary segregation or administrative detention. Because they are seeking declaratory relief, which requires an actual controversy between the parties, and injunctive relief against a state official, which requires the presence of an ongoing constitutional violation, these Plaintiffs' failure to allege that they are currently experiencing unconstitutional conditions which would require additional process warrants dismissal of their claims. *Black v. Brown*, 513 F.2d 652, 654 (7th Cir. 1975) (plaintiff released from isolation is not entitled to injunctive relief on his claim that he was placed there without procedural due process.)

### B. Offenders Davis, Fillmore, and Gardner do not possess a liberty interest in avoiding segregation or administrative detention.

A prisoner maintains no liberty interest in avoiding a transfer to more adverse conditions of confinement or remaining in the general prison population. *Wilkinson*, 545 U.S. at 221; *Williams*, 71 F.3d at 1248. Instead, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 203 (citing *Sandin v. Connor*, 515

U.S. 472, 484 (1995)). "[T]he Fourteenth Amendment provides to inmates a liberty interest in avoiding placement in more restrictive conditions, such as segregation, when those conditions pose an atypical and significant hardship when compared to the ordinary incidents of prison life." *Townsend*, 522 F.3d at 771.

As to the procedures required in prison disciplinary hearings, prison officials must afford a prisoner: (1) written notice of the charge against the prisoner at least twenty-four hours in advance of the hearing; (2) the opportunity to appear in person before an impartial tribunal; (3) the opportunity to call witnesses and to present physical and documentary evidence; and (4) a written statement of the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Prison disciplinary officials need not permit the presentation of irrelevant or repetitive evidence to afford prisoners due process in disciplinary proceedings. *Id.* (citing *Forbes*, 976 F.2d at 318). Likewise, prison officials are not required to allow the presentation of evidence, including witnesses or documentation that could threaten institutional safety or correctional goals. *Id.* (citing *Piggie v. Cotton*, 244 F.3d 674, 678 (7th Cir. 2003)).

Here, Offender Davis' allegations concerning his confinement to segregation fail to state a claim. First, the length of Offender Davis' term, six months, is not such an extreme term of segregation as to implicate the right to procedural due-process protections in itself. *See Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995). Likewise, the Seventh Circuit has previously held that many of the conditions that Offender Davis describes, *i.e.*, the denial of programming, no-contact visits, restrictions on phone privileges, and the perceived mail delay, do not constitute an atypical and significant hardship in relation to the general population. *See Lekas v. Briley*, 405 F.3d 602, 611 (7th Cir. 2005); *Hardaway v. Meyerhoff*, 734 F.3d 740, 744-45 (7th Cir. 2013). While he also complains about the food portions, cold temperatures in winter, and the presence of insects in his cell, Offender Davis fails to allege that these conditions were part of his segregation

sentence and not conditions present throughout the prison regardless of segregation status. Offender Davis fails to factually develop these allegations beyond "naked assertions" that would enable the Defendant or the Court to determine whether these conditions he experiences in segregation differ in any significant manner from the conditions in administrative detention or the general population. *See Iqbal*, 556 U.S. at 678. Thus, Offender Davis has failed to establish that he has a protected liberty interest in avoiding his current six-month term of segregation.

Yet, even if he has established a protected liberty interest in avoiding segregation, Offender Davis has failed to establish that the policies of IDOC were implemented or enforced by Defendant to deny due process. Offender Davis makes no specific allegations concerning the procedures he was afforded and simply contends that prison officials relied on a confidential source and that "[he] was unable to call any witnesses to refute the charge against him." (Doc. 1 at ¶ 68.) Offender Davis' assertion that prison officials did not disclose a confidential source does not establish a due-process violation. *See Mendoza v. Miller*, 779 F.2d 1287, 1293-94 (7th Cir. 1985) (withholding identity of a confidential informant not a violation of due process if withheld for safety reasons and informant reliability is established). Plaintiff has provided no link or nexus to the policies of the Director and his claimed denial of due process. Therefore, because Offender Davis has failed to allege sufficient facts to establish a due-process violation, the Court should dismiss his claim.

Lastly, the Court should dismiss the procedural due-process claims of Offenders Fillmore and Gardner relating to their placement in administrative detention. It is well-settled in the Seventh Circuit that prisoners "have no liberty interest in avoiding transfer to discretionary segregation- that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend*, 522 F.3d at 771 ("Indeed, there is nothing 'atypical' about discretionary segregation; discretionary segregation is instead an 'ordinary incident of prison life' that inmates should expect to experience during their time in prison."); *Bono v. Saxbe*, 620 F.2d 609, 614 (7th Cir. 1980) ("Inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual

punishment even if they continue for an indefinite period of time, although the duration 'is a factor to be considered, especially if the confinement is punitive.'"). But, the conditions these offenders allegedly experience in administrative detention do not present an atypical and significant hardship in relation to the general population. For instance, each offender admits that he is allowed to leave his cell to engage in recreation in the yard on a weekly basis, utilize the telephone, and participate in multiple visitations each month. (Doc. 1 at ¶¶ 114, 116-17, 165-66, 172, 175.) While these conditions may be more restrictive than general population, they are noticeably less restrictive than the conditions held not to implicate a protected liberty interest in *Lekas*, where the prisoner was subjected to a 24-hour-a-day segregation for 70 days and only allowed to leave his cell for visits with a doctor and the segregation superintendent. *Lekas*, 405 F.3d at 610-11.

### III. The Court Should Dismiss the Claims of Offenders Coleman, Jones, and Dansberry for a Lack of Subject Matter Jurisdiction as Resolution of Their Claims Would Violate the State's Sovereign Immunity.

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established a limited exception to a State's sovereign immunity in cases where a plaintiff challenges the constitutionality of a state official's action in enforcing state law. *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. at 155-60). Specifically, the Eleventh Amendment does not prohibit a federal court "from granting prospective injunctive relief to prevent a [state official's] continuing violation of federal law." *Id.* However, a federal court remains without jurisdiction to grant retrospective injunctive relief against a State or state official. *Id.*; *see Stewart*, 131 S. Ct. at 1638 (providing that the *Ex parte Young* doctrine does not apply when a State, and not a state official, is "the real, substantial party in interest"). "A federal court possesses broad powers to remedy constitutional violations, but those powers are not boundless." *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). When no continuing violation of federal law can be proven, "injunctive relief is not part of a federal court's remedial powers." *Id.* (citing *Green*, 474 U.S. at 71).

Here, the Court lacks subject matter jurisdiction to award retrospective injunctive relief to Offenders Coleman, Jones, and Dansberry in relation to their former placements in segregation and administrative detention. None of these offenders allege that they are currently being confined in conditions that are unconstitutional or that they are entitled to procedural due-process in relation to their current placement. Therefore, the Defendant retains his sovereign immunity and the Court should dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for a lack of subject-matter jurisdiction.

IV. **The Court Should Dismiss the Claims of Offenders Coleman, Fillmore, and Jones as Barred by *Res Judicata*.**

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "The aim of the doctrine is to relieve the parties from litigating multiple suits, to conserve judicial resources, to prevent inconsistent decisions, and to encourage reliance on adjudication." *Id.* at 839-40. "*Res judicata* promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being hauled into court repeatedly." *Id.* (quoting *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011).

The doctrine of *res judicata* will bar a subsequent action if the suits involve: (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action. *Id.* "Two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." *Id.* (quoting *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993)).

Here, the Court should dismiss the claims of Offenders Coleman, Fillmore, and Jones as barred by the doctrine of *res judicata*. These Plaintiffs filed a nearly identical complaint in the U.S.

District Court for the Northern District of Illinois on June 24, 2015, against the Director's predecessor-in-office, Gladyse Taylor. (Ex. 1, Compl. in *Coleman, et al. v. Taylor*, N.D. Ill. 15-5596, June 24, 2015.) On February 11, 2016, *Coleman v. Taylor* was dismissed under Rule 12(b)(6) with prejudice although the district court indicated the dismissal was without prejudice. (Order in *Coleman, et al. v. Taylor*, N.D. Ill. 15-5596, Feb. 11, 2016.) *See Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 780 (7th Cir. 1986); *Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1073 (7th Cir. 2006) (recognizing that "dismissals under Rule 12(b)(6) logically are with prejudice" even when a district court indicates otherwise); Fed. R. Civ. P. 41(b). As a result of the final adjudication on the merits in *Coleman, et al. v. Taylor*, Offenders Coleman, Fillmore, and Jones may not pursue their claims against the Defendant in this forum, and the Court should dismiss their claims as barred by the doctrine of *res judicata*. See <u>Tartt v. Nw. Cmty. Hosp.</u>, 453 F.3d 817, 822 (7th Cir. 2006) (dismissal under Rule 12(b)(6) constitutes a final judgment on the merits for res judicata purposes).

V.  **In the Alternative, the Court Should Sever the Plaintiffs' Respective Claims in Accordance with Rule 21 for Misjoinder of Parties.**

If the Court concludes that one or more Plaintiffs have stated an actionable claim or claims against the Director, it should sever the claims into individual lawsuits pursuant to Federal Rule of Civil Procedure 21. The allegations in the complaint show that the allegations asserted against the Director are not premised upon a single, centralized claim against him; instead, Plaintiffs have resorted to compiling all of the grievances concerning the conditions of their confinement, both past and present, and across institutions into a single complaint against a single defendant for convenience rather than pursuing their unique claims against the actual individual actors who they feel have wronged them. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits"). Additionally, many of these claims involve institutions outside the geographic regions of this district, such as Stateville Correctional

Center. As such, to the extent the Court concludes that Plaintiffs have stated claims against the Director or other prison officials, the claims should be severed into individual claims pursuant to Federal Rule of Civil Procedure 21.

## CONCLUSION

WHEREFORE, for the above and foregoing reasons, the Defendant, JOHN BALDWIN, respectfully requests the honorable Court dismiss Plaintiffs' complaint, or in the alternative, sever the complaint.

Respectfully submitted,

JOHN BALDWIN, Director of
Corrections for the State of Illinois,

Defendant,

| | |
|---|---|
| Adam J. Poe, #6301918<br>Assistant Attorney General<br>Office of the Attorney General<br>500 South Second Street<br>Springfield, Illinois 62701<br>Primary: apoe@atg.state.il.us | LISA MADIGAN, Attorney General for<br>the State of Illinois,<br><br>Attorney for the Defendant.<br><br>By:    /s/ Adam J. Poe<br>      Adam J. Poe, #6301918<br>      Assistant Attorney General |

# CERTIFICATE OF SERVICE
## No. 16-600

I hereby certify that on August 22, 2016, I electronically filed the foregoing Memorandum of Law in Support of the Defendant's Motion to Dismiss or, Alternatively, to Sever the Complaint, with the Clerk of the Court using the CM/ECF system, which will send electronic notice to the following:

Alan Mills
Uptown People's Law Center
4413 North Sheridan Rd.
Chicago, IL. 60640
(773) 769-1411
At alanmills@comcast.net

Kimball Anderson
Winston & Strawn – Chicago
35 West Wacker Drive
Chicago, IL. 60601-9703
(312) 558-5858
At kanderson@winston.com

  s/ Adam J. Poe
   Adam J. Poe, #6301918
   Assistant Attorney General
   Assistant Attorney General
   500 South Second Street
   Springfield, Illinois 62701
   (217) 524-6880 Phone
   (217) 524-5091 Fax
   E-Mail: apoe@atg.state.il.us