# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## E. ST. LOUIS DIVISION

HENRY DAVIS, DOUGLAS COLEMAN,       )
AARON FILLMORE, JEROME JONES,        )
DESHAWN GARDNER, and PERCELL         )
DANSBERRY on behalf of themselves and all )
others similarly situated,           )
                                     )     Case No. 3:16-cv-600-SCW
                Plaintiffs,          )
                                     )     Honorable Stephen C. Williams
        v.                           )
                                     )
JOHN BALDWIN, Acting Director of the )
Illinois Department of Corrections,  )
                                     )
                Defendant.           )

## EXHIBIT LIST TO COMPLAINT

| Exhibit | Description |
|---|---|
| A | Segregation Housing Utilization and Population Dissemination, and Institution Population Chart, dated June 30, 2013 |
| B | Segregation Sentence Imposed Compared to the Actual Length of Stay in Segregation, dated June 30, 2013 |
| C | Quantitative Findings on Use and Outcomes of Segregation in IL DOC, dated September 28, 2011 |
| D | Various Segregation Charts, dated from September 30, 2009 to December 31, 2012 |
| E | Memorandum of Understanding Between The Illinois Department of Corrections and The Vera Institute of Justice, dated May 2010 |
| F | Reducing Prisoner Isolation: An Innovative Approach to Classification and Management of Segregation, Control Units, and Supermax, undated |
| G | IDOC Segregation Study Major Findings, undated |

# Exhibit A

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Segregation Housing Utilization and Population Dissemination, and Institution Population
*June 30, 2013*

| *Parent Facility* | Housing Availability Report (OERHP101) as of 06/30/13 | | Inmates with a Segregation Assignment as of 06/30/13 | | | Inmates with a Segregation Assignment as of June 30, 2012 | Difference from 06/30/12 to 06/30/13 | Institution Population as of 06/30/13 |
|---|---|---|---|---|---|---|---|---|
| | *Beds* | *Inmates* | *Disciplinary Segregation* *Inmates* | *Administrative Detention* *Inmates* | *Total* *Inmates* | *Inmates* | | *Inmates* |
| *Closed Maximum Security* | | | | | | | | |
| Tamms CC | 0 | 0 | 0 | 0 | 0 | 168 | -168 | 0 |
| *Maximum Security* | | | | | | | | |
| Dwight CC | 0 | 0 | 0 | 0 | 0 | 44 | -44 | 0 |
| Menard CC | 390 | 352 | 324 | 22 | 346 | 302 | 44 | 3,735 |
| Pontiac CC | 914 | 822 | 779 | 111 | 890 | 658 | 232 | 1,977 |
| Stateville CC | 226 | 203 | 183 | 3 | 186 | 90 | 96 | 3,979 |
| *Maximum Security Total* | *1,530* | *1,377* | *1,286* | *136* | *1,422* | *1,094* | *328* | *9,691* |
| *Medium Security* | | | | | | | | |
| Big Muddy River CC | 60 | 49 | 38 | 0 | 38 | 32 | 6 | 1,911 |
| Centralia CC | 54 | 52 | 37 | 0 | 37 | 35 | 2 | 1,563 |
| Danville CC | 59 | 50 | 32 | 0 | 32 | 24 | 8 | 1,904 |
| Dixon CC | 179 | 129 | 116 | 6 | 122 | 112 | 10 | 2,413 |
| Graham CC | 60 | 43 | 22 | 0 | 22 | 21 | 1 | 1,954 |
| Hill CC | 111 | 85 | 47 | 1 | 48 | 57 | -9 | 1,824 |
| Illinois River CC | 59 | 48 | 21 | 0 | 21 | 17 | 4 | 2,131 |
| Lawrence CC | 142 | 107 | 96 | 1 | 97 | 85 | 12 | 2,386 |
| Lincoln CC | 11 | 5 | 0 | 0 | 0 | 1 | -1 | 1,004 |
| Logan CC | 99 | 83 | 34 | 0 | 34 | 14 | 20 | 1,951 |
| Pinckneyville CC | 231 | 197 | 147 | 0 | 147 | 148 | -1 | 2,513 |
| Shawnee CC | 112 | 100 | 65 | 0 | 65 | 62 | 3 | 2,115 |
| Sheridan CC | 48 | 25 | 13 | 0 | 13 | 1 | 12 | 2,066 |
| Western Illinois CC | 108 | 82 | 53 | 1 | 54 | 42 | 12 | 2,123 |
| *Medium Security Total* | *1,333* | *1,055* | *721* | *9* | *730* | *651* | *79* | *27,858* |
| *Minimum Security* | | | | | | | | |
| Decatur CC | 16 | 4 | 0 | 0 | 0 | 0 | 0 | 697 |
| East Moline CC | 48 | 39 | 23 | 0 | 23 | 11 | 12 | 1,429 |
| Jacksonville CC | 19 | 11 | 3 | 0 | 3 | 4 | -1 | 1,525 |
| Robinson CC | 15 | 1 | 1 | 0 | 1 | 3 | -2 | 1,205 |
| Southwestern Illinois CC | 8 | 5 | 3 | 0 | 3 | 4 | -1 | 696 |
| Taylorville CC | 14 | 3 | 2 | 0 | 2 | 1 | 1 | 1,201 |
| Vandalia CC | 66 | 30 | 13 | 0 | 13 | 16 | -3 | 1,657 |
| Vienna CC | 32 | 28 | 22 | 0 | 22 | 10 | 12 | 1,891 |
| *Minimum Security Total* | *218* | *121* | *67* | *0* | *67* | *49* | *18* | *10,301* |
| **Total** | **3,081** | **2,553** | **2,074** | **145** | **2,219** | **1,962** | **257** | **47,850** |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| June 2012 Stats | **3,888** | **2,651** | **1,846** | **116** | **1,962** | | | **47,070** |
| *Difference* | -807 | -98 | 228 | 29 | 257 | | | 780 |

# Exhibit B

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Sentence Imposed Compared to the Actual Length of Stay in Segregation**
*Segregation Assignment as of June 30, 2013*

| Length of Stay in Segregation | Segregation Sentence Imposed | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 Year or Less | 1 to 2 Years | 2 to 3 Years | 3 to 4 Years | 4 to 5 Years | 5 to 6 Years | 6 to 7 Years | 7 to 8 Years | 8 to 9 Years | 9 to 10 Years | More than 10 Years* | Total |
| 3 months or less | 1,175 | 46 | 12 | 3 | 1 | 1 | 1 | 0 | 0 | 2 | 33 | 1,274 |
| 3 to 6 months | 253 | 63 | 14 | 5 | 3 | 0 | 2 | 1 | 0 | 0 | 23 | 364 |
| 6 months to 1 year | 109 | 87 | 26 | 4 | 3 | 2 | 5 | 4 | 1 | 1 | 105 | 347 |
| 1 to 2 years | 2 | 28 | 33 | 11 | 4 | 5 | 3 | 5 | 1 | 3 | 10 | 105 |
| 2 to 3 years | 0 | 0 | 7 | 12 | 7 | 6 | 3 | 1 | 3 | 1 | 6 | 46 |
| 3 to 4 years | 0 | 0 | 0 | 1 | 7 | 5 | 5 | 5 | 1 | 2 | 7 | 33 |
| 4 to 5 years | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 0 | 3 | 10 | 16 |
| 5 to 6 years | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 1 | 1 | 0 | 7 | 12 |
| 6 to 7 years | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 2 | 3 | 8 |
| 7 to 8 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 |
| 8 to 9 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| 9 to 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 4 |
| More than 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 |
| Total | 1,539 | 224 | 92 | 36 | 25 | 22 | 23 | 18 | 8 | 14 | 218 | 2,219 |

| Segregation Sentences Imposed Greater than 1 Year by Facility | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Dixon | Hill | Logan | Menard | Pinckneyville | Pontiac | Stateville | Western Illinois | Total |
| 1 To 2 Years | 2 | 2 | 4 | 45 | 2 | 163 | 6 | 0 | 224 |
| 2 To 3 Years | 1 | 0 | 2 | 10 | 0 | 76 | 3 | 0 | 92 |
| 3 To 4 Years | 1 | 0 | 1 | 2 | 0 | 32 | 0 | 0 | 36 |
| 4 To 5 Years | 0 | 0 | 1 | 0 | 0 | 22 | 2 | 0 | 25 |
| 5 To 6 Years | 0 | 0 | 0 | 1 | 0 | 21 | 0 | 0 | 22 |
| 6 To 7 Years | 0 | 0 | 0 | 2 | 0 | 20 | 1 | 0 | 23 |
| 7 To 8 Years | 0 | 0 | 0 | 1 | 0 | 17 | 0 | 0 | 18 |
| 8 To 9 Years | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 0 | 8 |
| 9 To 10 Years | 0 | 0 | 0 | 0 | 0 | 14 | 0 | 0 | 14 |
| More Than 10 Years* | 6 | 1 | 2 | 6 | 0 | 193 | 9 | 1 | 218 |
| Total | 10 | 3 | 10 | 67 | 2 | 566 | 21 | 1 | 680 |

| Length of Stay for Inmates Serving More Than 1 Year in Segregation by Facility | | | |
| --- | --- | --- | --- |
| | Dixon | Menard | Pontiac | Total |
| 1 To 2 Years | 2 | 4 | 99 | 105 |
| 2 To 3 Years | 0 | 1 | 45 | 46 |
| 3 To 4 Years | 1 | 0 | 32 | 33 |
| 4 To 5 Years | 0 | 1 | 15 | 16 |
| 5 To 6 Years | 0 | 0 | 12 | 12 |
| 6 To 7 Years | 0 | 0 | 8 | 8 |
| 7 To 8 Years | 0 | 0 | 3 | 3 |
| 8 To 9 Years | 0 | 0 | 2 | 2 |
| 9 To 10 Years | 0 | 0 | 4 | 4 |
| More Than 10 Years | 0 | 0 | 5 | 5 |
| Total | 3 | 6 | 225 | 234 |

*Includes cases without a planned-end-date entered into OTS.

# Exhibit C

# Quantitative Findings on Use and Outcomes of Segregation in IL DOC

September 28, 2011

Dr. Suzanne Agha, Vera Institute of Justice
Dr. James Austin, JFA Institute
Dr. Angela Browne, Vera Institute of Justice

# Who is included in these analyses?

▸ All prisoners released from segregation in 2008

  ❑ Followed for 12 months after release to general population from segregation;

  ❑ Must remain imprisoned for a full 12 months after leaving segregation to be included in these numbers.

2

# Findings – Seg Time Served

Prisoners who spent <u>less time</u> in segregation were <u>not</u> more likely to commit new violations during the first 12 months of release into general population.

# Findings – Severity of Incoming Violation

In addition, prisoners who committed <u>more serious</u> incoming violations were <u>not</u> more likely to commit new violations during the first 12 months of release into general population.

# Table 1. Description of Prisoners Released from Segregation between 1/1/2008 and 12/31/2008

| | |
|---|---:|
| Number of prisoners released | 10,219 |
| Average* number of days in seg | 59 days |

\* Mode = 31 days, Median = 31 days

## Table 2. Incoming Segregation Violation[*]

| Class | Number | Percent | Avg days seg |
|---|---|---|---|
| 100 class violation | 371 | 4% | 115 |
| Assault any person | 51[**] | 1% | |
| Sex misconduct | 77 | 1% | |
| Dangerous contraband | 57 | 1% | |
| 200 class violation | 1,177 | 12% | 91 |
| Damage/misuse prop | 514 | 5% | |
| Intimidation/threat | 291 | 3% | |
| Drug/drug paraphernalia | 148 | 1% | |
| 300 class violation | 4,663 | 46% | 52 |
| Unauthorized movement | 1,517 | 15% | |
| Insolence | 1,343 | 13% | |
| Contraband property | 803 | 8% | |
| 400 class violation | 3,975 | 39% | 51 |
| Violation of rules | 1,662 | 16% | |
| Disobey direct order | 1,506 | 15% | |
| Failure to report | 480 | 5% | |
| 500 class violation | 2 | less than 1% | 90 |
| 600 class violation | 31 | less than 1% | 45 |
| Attempt assault | 23 | less than 1% | |
| Total | 10,219 | 100% | 59 |

15% of population had 100 or 200 class violations

85% of population had 300 – 600 class violations

*If more than one violation in the same incident table examines most serious violation.
**Number in white rows are the largest types of violations within each class and will not sum to the total number of violations in the class.

6

## Table 3. New Violation in First 12 Months After Release from Segregation

|  | Percent |
|---|---|
| NO New Violations | 38% |
| New Non-Seg Violations | 25% |
| New Seg Violations | 37% |
| Total | 100% |

# Prisoners who spent <u>less time</u> in seg were <u>not</u> more likely to commit new violations during the first 12 months of release into general population

**Table 4. New Violation After Release from Segregation By Time Served in Segregation**

| Seg Time Served | N | NO new viols | New non-seg viols | New Seg viols |
|---|---|---|---|---|
| 1 to 14 days | 3,935 | 32% | 32% | 38% |
| 15 to 30 days | 2,446 | 39% | 25% | 36% |
| 31 to 60 days | 1,970 | 40% | 21% | 39% |
| 61 to 90 days | 606 | 50% | 16% | 35% |
| 91 to 120 days | 390 | 50% | 14% | 36% |
| 121 to 180 days | 208 | 47% | 10% | 43% |
| 181 to 270 days | 235 | 44% | 13% | 43% |
| 271 to 365 days | 147 | 41% | 19% | 40% |
| 366 days or more | 237 | 38% | 9% | 53% |

8

# Prisoners who committed <u>more serious</u> incoming violations were <u>not</u> more likely to commit new violations during the next 12 months

## Table 5. New Violation After Release from Segregation by Type of Original Violation

| Class of Original Violation | N | NO New Viols | New Non-Seg Viols | New Seg Viols |
|---|---|---|---|---|
| 100 class | 371 | 41% | 19% | 40% |
| 200 class | 1,117 | 41% | 22% | 38% |
| 300 class | 4,662 | 37% | 25% | 38% |
| 400 class | 3,975 | 38% | 26% | 36% |
| 500 class | 2 | 50% | 50% | 0% |
| 600 class | 31 | 48% | 13% | 39% |

# Types of New Violations

**Table 6 New Seg Violation**[*]

100 – 200 class = 31%

| Class | N | Percent | Class | N | Percent |
|---|---|---|---|---|---|
| 100 Class violation | 465 | 12% | 200 class violation | 739 | 19% |
| Assault | 226[**] | 6% | Intimidation/threats | 390 | 10% |
| Sexual misconduct | 86 | 2% | Damage property | 197 | 5% |
| Dangerous Contraband | 63 | 2% | | | |
| 300 class violation | 1,877 | 49% | 400 class violation | 705 | 19% |
| Fighting | 629 | 16% | Disobey dir. order | 526 | 14% |
| Insolence | 612 | 16% | | | |
| Unauthorized mvmt. | 247 | 6% | | | |
| 500 class violation | 0 | 0% | 600 class violation | 29 | less 1% |
| | | | Aid/attempt Assault | 9 | less 1% |
| | | | Aid/attempt theft | 4 | less 1% |
| | | | Total | 3,815 | 100% |

*6,404 (63%) of prisoners did not commit a new violation that resulted in them returning to segregation. This table only focuses on the 3,815 (37%) prisoners who did commit new seg offense.

** Numbers in white rows are the largest types of violations within each class and will not sum to the total number of violations in the class.

300 – 400 class = 68%

Almost ½ commit 300 class violations

10

# IN SUM

For prisoners released from segregation in 2008, IDOC data indicate that:

▸ Those who spent <u>less time </u>in segregation were not more likely to commit new violations during the first 12 months of release into general population.

▸ Those who committed <u>more serious </u>incoming violations were not more likely to commit new violations during the next 12 months.

# Exhibit D

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Table 1:  Segregation Sentences Imposed**
*September 30, 2009*

| Parent Facility | Housing Availability Report (OERHP101) as of 10/02/09 | | Total Inmates with Seg Asgnt | Average Segregation Sentence Imposed | | Segregation (OTS Primary Assignment Code 4000) | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Beds | Inmates | | Days | Years | 0 - 1 | 1.1 - 2 | 2.1 - 3 | 3.1 - 4 | 4.1 - 5 | 5.1 - 6 | 6.1 - 7 | 7.1 - 8 | 8.1 - 9 | 9.1 - 10 | 10 + | Total |
| *Level 1 - Maximum* | | | | | | | | | | | | | | | | | |
| Dwight CC | 110 | 81 | 69 | 759 3 | 2 1 | 56 | 6 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 69 |
| Menard CC | 505 | 468 | 444 | 425 7 | 1 2 | 379 | 36 | 6 | 7 | 1 | 2 | 1 | 0 | 1 | 2 | 9 | 444 |
| Pontiac CC | 785 | 625 | 614 | 1,652 7 | 4 5 | 302 | 100 | 52 | 21 | 19 | 11 | 15 | 8 | 6 | 10 | 70 | 614 |
| Stateville  CC | 261 | 227 | 209 | 518 4 | 1 4 | 180 | 18 | 6 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 3 | 209 |
| Tamms CC | 472 | 225 | 0 | 0 0 | 0 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Thomson CC | 0 | 0 | 0 | 0 0 | 0 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| *Level 1 - Total* | *2,133* | *1,626* | *1,336* | *559* | *1.5* | *917* | *160* | *66* | *30* | *20* | *13* | *16* | *9* | *7* | *12* | *86* | *1,336* |
| *Level 2 - Secure Medium* | | | | | | | | | | | | | | | | | |
| Hill CC | 111 | 106 | 85 | 76 2 | 0 2 | 85 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 85 |
| Lawrence CC | 218 | 121 | 103 | 59 6 | 0 2 | 103 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 103 |
| Pinckneyville CC | 408 | 224 | 204 | 82 4 | 0 2 | 202 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 204 |
| Western Illinois CC | 108 | 105 | 56 | 95 7 | 0 3 | 55 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56 |
| *Level 2 - Total* | *845* | *556* | *448* | *78* | *0.2* | *445* | *3* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *448* |
| *Level 3 - High Medium* | | | | | | | | | | | | | | | | | |
| Big Muddy River CC | 59 | 57 | 38 | 106 2 | 0 3 | 36 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 38 |
| Danville CC | 87 | 61 | 46 | 80 7 | 0 2 | 46 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 46 |
| Dixon CC | 161 | 140 | 112 | 223 2 | 0 6 | 104 | 4 | 1 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 1 | 112 |
| Illinois River CC | 59 | 54 | 30 | 51 5 | 0 1 | 30 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 30 |
| Shawnee CC | 112 | 101 | 85 | 55 3 | 0 2 | 85 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 85 |
| *Level 3 - Total* | *478* | *413* | *311* | *103.4* | *0.3* | *301* | *6* | *1* | *0* | *0* | *1* | *1* | *0* | *0* | *0* | *1* | *311* |
| *Level 4 - Medium* | | | | | | | | | | | | | | | | | |
| Centralia CC | 54 | 49 | 31 | 55 7 | 0 2 | 31 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 31 |
| Decatur CC | 16 | 5 | 3 | 31 0 | 0 1 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Graham CC | 59 | 50 | 32 | 55 0 | 0 2 | 32 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 32 |
| Lincoln CC | 11 | 10 | 3 | 30 0 | 0 1 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Logan CC | 50 | 21 | 3 | 45 0 | 0 1 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Sheridan CC | 65 | 23 | 8 | 229 4 | 0 6 | 7 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 |
| *Level 4 - Total* | *255* | *158* | *80* | *43.3* | *0.1* | *79* | *0* | *0* | *1* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *80* |
| *Level 5 - High Minimum* | | | | | | | | | | | | | | | | | |
| Jacksonville CC | 19 | 9 | 5 | 27 8 | 0 1 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| Robinson CC | 15 | 12 | 7 | 43 9 | 0 1 | 7 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| Taylorville CC | 14 | 11 | 2 | 9 5 | 0 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| *Level 5 - Total* | *48* | *32* | *14* | *27.1* | *0.1* | *14* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *14* |
| *Level 6 - Minimum* | | | | | | | | | | | | | | | | | |
| East Moline CC | 32 | 19 | 10 | 46 6 | 0 1 | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 |
| Southwestern Illinois CC | 8 | 5 | 0 | 0 0 | 0 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vandalia CC | 66 | 18 | 11 | 15 1 | 0 0 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11 |
| Vienna CC | 26 | 18 | 13 | 53 9 | 0 1 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 |
| *Level 6 - Total* | *132* | *60* | *34* | *28.9* | *0.1* | *34* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *34* |
| **Total** | **3,891** | **2,845** | **2,223** | **172.5** | **0.5** | **1,790** | **169** | **67** | **31** | **20** | **14** | **17** | **9** | **7** | **12** | **87** | **2,223** |

Note:  2,845 inmates occupied segregation beds on 10/02/09; only 2,223 had a primary assignment of segregation as of 09/30/09

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Segregation Housing Utilization and Population Dissemination, and Institution Population
*August 31, 2010*

| Parent Facility | Housing Availability Report (OERHP101) as of 08/29/10 | | Inmates with a Segregation Assignment as of 8/31/10 | | | Institution Population as of 8/31/10 |
|---|---|---|---|---|---|---|
| | | | Disciplinary Segregation | Administrative Detention | Total | |
| *Parent Facility* | *Beds* | *Inmates* | *Inmates* | *Inmates* | *Inmates* | *Inmates* |
| *Level 1 - Maximum* | | | | | | |
| Dwight CC | 127 | 106 | 53 | 0 | 53 | 1,061 |
| Menard CC | 504 | 405 | 333 | 0 | 333 | 3,552 |
| Pontiac CC | 784 | 655 | 633 | 4 | 637 | 1,656 |
| Stateville  CC | 262 | 195 | 135 | 0 | 135 | 3,599 |
| Tamms CC | 472 | 213 | 81 | 133 | 214 | 406 |
| *Level 1 - Total* | *2,149* | *1,574* | *1,235* | *137* | *1,372* | *10,274* |
| *Level 2 -Secure Medium* | | | | | | |
| Hill CC | 111 | 90 | 60 | 0 | 60 | 1,822 |
| Lawrence CC | 218 | 153 | 151 | 0 | 151 | 2,319 |
| Pinckneyville CC | 230 | 193 | 178 | 0 | 178 | 2,424 |
| Western Illinois CC | 108 | 89 | 53 | 0 | 53 | 2,072 |
| *Level 2 - Total* | *667* | *525* | *442* | *0* | *442* | *8,637* |
| *Level 3 - High Medium* | | | | | | |
| Big Muddy River CC | 60 | 51 | 40 | 0 | 40 | 1,902 |
| Danville CC | 87 | 77 | 26 | 0 | 26 | 1,836 |
| Dixon CC | 163 | 137 | 123 | 1 | 124 | 2,232 |
| Illinois River CC | 59 | 56 | 31 | 2 | 33 | 2,066 |
| Shawnee CC | 112 | 110 | 91 | 0 | 91 | 2,033 |
| *Level 3 - Total* | *481* | *431* | *311* | *3* | *314* | *10,069* |
| *Level 4 - Medium* | | | | | | |
| Centralia CC | 54 | 53 | 35 | 0 | 35 | 1,537 |
| Decatur CC | 16 | 6 | 1 | 0 | 1 | 636 |
| Graham CC | 59 | 24 | 20 | 0 | 20 | 1,916 |
| Lincoln CC | 11 | 9 | 6 | 0 | 6 | 1,015 |
| Logan CC | 50 | 47 | 17 | 0 | 17 | 1,924 |
| Sheridan CC | 48 | 22 | 14 | 0 | 14 | 1,469 |
| *Level 4 - Total* | *238* | *161* | *93* | *0* | *93* | *8,497* |
| *Level 5 - High Minimum* | | | | | | |
| Jacksonville CC | 19 | 10 | 5 | 0 | 5 | 1,608 |
| Robinson CC | 15 | 9 | 8 | 0 | 8 | 1,216 |
| Taylorville CC | 14 | 6 | 0 | 0 | 0 | 1,200 |
| *Level 5 - Total* | *48* | *25* | *13* | *0* | *13* | *4,024* |
| *Level 6 - Minimum* | | | | | | |
| East Moline CC | 32 | 24 | 6 | 0 | 6 | 1,203 |
| Southwestern Illinois CC | 8 | 7 | 9 | 0 | 9 | 675 |
| Vandalia CC | 66 | 41 | 20 | 0 | 20 | 1,705 |
| Vienna CC | 26 | 25 | 20 | 0 | 20 | 1,660 |
| *Level 6 - Total* | *132* | *97* | *55* | *0* | *55* | *5,243* |
| **Total** | **3,715** | **2,813** | **2,149** | **140** | **2,289** | **46,744** |

Note:  2,800 inmates occupied segregation beds on 08/29/10; only 2,288 had a primary assignment of segregation as of 08/31/10

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Segregation Housing Utilization and Population Dissemination, and Institution Population
*December 31, 2010*

| Parent Facility | Housing Availability Report (OERHP101) as of 12/29/10 | | Inmates with a Segregation Assignment as of 12/31/10 | | | Institution Population as of 12/31/10 |
|---|---|---|---|---|---|---|
| | | | Disciplinary Segregation | Administrative Detention | Total | |
| *Parent Facility* | *Beds* | *Inmates* | *Inmates* | *Inmates* | *Inmates* | *Inmates* |
| *Level 1 - Maximum* | | | | | | |
| Dwight CC | 123 | 101 | 58 | 0 | 58 | 1,085 |
| Menard CC | 504 | 419 | 339 | 1 | 340 | 3,529 |
| Pontiac CC | 790 | 637 | 626 | 4 | 630 | 1,696 |
| Stateville  CC | 309 | 248 | 164 | 0 | 164 | 3,364 |
| Tamms CC | 530 | 210 | 82 | 128 | 210 | 408 |
| *Level 1 - Total* | *2,256* | *1,615* | *1,269* | *133* | *1,402* | *10,082* |
| *Level 2 -Secure Medium* | | | | | | |
| Hill CC | 111 | 97 | 57 | 0 | 57 | 1,835 |
| Lawrence CC | 218 | 169 | 158 | 0 | 158 | 2,338 |
| Pinckneyville CC | 231 | 210 | 172 | 0 | 172 | 2,449 |
| Western Illinois CC | 108 | 87 | 49 | 0 | 49 | 2,093 |
| *Level 2 - Total* | *668* | *563* | *436* | *0* | *436* | *8,715* |
| *Level 3 - High Medium* | | | | | | |
| Big Muddy River CC | 60 | 50 | 35 | 0 | 35 | 1,911 |
| Danville CC | 87 | 59 | 39 | 0 | 39 | 1,823 |
| Dixon CC | 163 | 125 | 72 | 1 | 73 | 2,282 |
| Illinois River CC | 59 | 48 | 20 | 0 | 20 | 2,061 |
| Shawnee CC | 112 | 108 | 69 | 0 | 69 | 2,036 |
| *Level 3 - Total* | *481* | *390* | *235* | *1* | *236* | *10,113* |
| *Level 4 - Medium* | | | | | | |
| Centralia CC | 54 | 44 | 23 | 0 | 23 | 1,547 |
| Graham CC | 59 | 54 | 38 | 0 | 38 | 1,884 |
| Lincoln CC | 11 | 10 | 0 | 0 | 0 | 1,006 |
| Logan CC | 50 | 35 | 19 | 0 | 19 | 1,978 |
| Sheridan CC | 48 | 33 | 16 | 0 | 16 | 1,649 |
| *Level 4 - Total* | *222* | *176* | *96* | *0* | *96* | *8,064* |
| *Level 5 - High Minimum* | | | | | | |
| Decatur CC | 16 | 0 | 1 | 0 | 1 | 665 |
| Jacksonville CC | 19 | 6 | 3 | 0 | 3 | 1,608 |
| Robinson CC | 15 | 6 | 6 | 0 | 6 | 1,206 |
| Taylorville CC | 14 | 5 | 0 | 0 | 0 | 1,207 |
| *Level 5 - Total* | *64* | *17* | *10* | *0* | *10* | *4,686* |
| *Level 6 - Minimum* | | | | | | |
| East Moline CC | 32 | 31 | 12 | 0 | 12 | 1,231 |
| Southwestern Illinois CC | 8 | 7 | 2 | 0 | 2 | 693 |
| Vandalia CC | 66 | 24 | 3 | 0 | 3 | 1,718 |
| Vienna CC | 26 | 16 | 7 | 0 | 7 | 1,879 |
| *Level 6 - Total* | *132* | *78* | *24* | *0* | *24* | *5,521* |
| **Total** | **3,823** | **2,839** | **2,070** | **134** | **2,204** | **47,181** |

Note: 2,839 inmates occupied segregation beds on 12/29/10; only 2,203 had a primary assignment of segregation as of 12/31/10

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Counts and Sentences Extending Beyond the Projected Mandatory Supervised Release Date (MSR)**
*December 31, 2010*

| | Total Inmates with Seg Asgnt | Projected MSR Date | | | Average Segregation Sentences Imposed | | Segregation Sentences Extending Beyond Mandatory Supervised Release Date | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Excluded Cases | | | | | Year Ranges | | | | | | | | | | | |
| | | Life or SDP | Incorrect Date | Valid | Days | Years | 0 - 1 | 1.1 - 2 | 2.1 - 3 | 3.1 - 4 | 4.1 - 5 | 5.1 - 6 | 6.1 - 7 | 7.1 - 8 | 8.1 - 9 | 9.1 - 10 | 10+ | Total |
| *Total* | **2,204** | **130** | **209** | **1,865** | **1,008.5** | **2.8** | *138* | *22* | *16* | *9* | *9* | *4* | *3* | *2* | *4* | *4* | *47* | *258* |

Note: 2,203 had a primary assignment of segregation as of 12/31/10 (130 had a life sentence or Sexual Dangerous Person (SDP) commitment and 209 were past their projected MSR dates as of 12/31/10

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Housing Utilization and Population Dissemination, and Institution Population**
*October 31, 2011*

| Parent Facility | Housing Availability Report *(OERHP101) as of 11/30/11 | | Inmates with a Segregation Assignment as of 10/31/11 | | | Institution Population as of 10/31/11 |
|---|---|---|---|---|---|---|
| | Beds | Inmates | Disciplinary Segregation | Administrative Detention | Total | |
| | | | Inmates | Inmates | Inmates | Inmates |
| *Level 1 - Maximum* | | | | | | |
| Dwight CC | | | 59 | 0 | 59 | 1,056 |
| Menard CC | | | 345 | 0 | 345 | 3,610 |
| Pontiac CC | | | 657 | 9 | 666 | 1,743 |
| Stateville  CC | | | 131 | 0 | 131 | 3,671 |
| Tamms CC | | | 73 | 129 | 202 | 395 |
| *Level 1 - Total* | *0* | *0* | *1,265* | *138* | *1,403* | *10,475* |
| *Level 2 - Secure Medium* | | | | | | |
| Hill CC | | | 66 | 0 | 66 | 1,836 |
| Lawrence CC | | | 138 | 0 | 138 | 2,336 |
| Pinckneyville CC | | | 151 | 0 | 151 | 2,487 |
| Western Illinois CC | | | 61 | 0 | 61 | 2,076 |
| *Level 2 - Total* | *0* | *0* | *416* | *0* | *416* | *8,735* |
| *Level 3 - High Medium* | | | | | | |
| Big Muddy River CC | | | 43 | 0 | 43 | 1,931 |
| Danville CC | | | 40 | 0 | 40 | 1,822 |
| Dixon CC | | | 100 | 1 | 101 | 2,347 |
| Illinois River CC | | | 29 | 1 | 30 | 2,085 |
| Shawnee CC | | | 81 | 0 | 81 | 2,040 |
| *Level 3 - Total* | *0* | *0* | *293* | *2* | *295* | *10,225* |
| *Level 4 - Medium* | | | | | | |
| Centralia CC | | | 34 | 0 | 34 | 1,540 |
| Graham CC | | | 16 | 0 | 16 | 1,938 |
| Lincoln CC | | | 0 | 0 | 0 | 997 |
| Logan CC | | | 8 | 0 | 8 | 1,975 |
| Sheridan CC | | | 11 | 0 | 11 | 1,641 |
| *Level 4 - Total* | *0* | *0* | *69* | *0* | *69* | *8,091* |
| *Level 5 - High Minimum* | | | | | | |
| Decatur CC | | | 0 | 0 | 0 | 671 |
| Jacksonville CC | | | 1 | 0 | 1 | 1,606 |
| Robinson CC | | | 4 | 0 | 4 | 1,213 |
| Taylorville CC | | | 0 | 0 | 0 | 1,207 |
| *Level 5 - Total* | *0* | *0* | *5* | *0* | *5* | *4,697* |
| *Level 6 - Minimum* | | | | | | |
| East Moline CC | | | 13 | 0 | 13 | 1,235 |
| Southwestern Illinois CC | | | 2 | 0 | 2 | 694 |
| Vandalia CC | | | 18 | 0 | 18 | 1,748 |
| Vienna CC | | | 14 | 0 | 14 | 1,920 |
| *Level 6 - Total* | *0* | *0* | *47* | *0* | *47* | *5,597* |
| **Total** | **0** | **0** | **2,095** | **140** | **2,235** | **47,820** |

Note: 2,839 inmates occupied segregation beds on 12/29/10; only 2,203 had a primary assignment of segregation as of 12/31/10

*Report must be requested in advance

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Segregation Housing Utilization and Population Dissemination, and Institution Population
*November 30, 2011*

| Parent Facility | Housing Availability Report (OERHP101) as of 11/30/11 | | Inmates with a Segregation Assignment as of 11/30/11 | | | Institution Population as of 11/30/11 |
|---|---|---|---|---|---|---|
| | Beds | Inmates | Disciplinary Segregation | Administrative Detention | Total | |
| | | | Inmates | Inmates | Inmates | Inmates |
| *Level 1 - Maximum* | | | | | | |
| Dwight CC | 127 | 88 | 44 | 0 | 44 | 1,008 |
| Menard CC | 494 | 431 | 326 | 6 | 332 | 3,619 |
| Pontiac CC | 784 | 662 | 652 | 6 | 658 | 1,710 |
| Stateville  CC | 313 | 281 | 94 | 29 | 123 | 3,625 |
| Tamms CC | 530 | 199 | 77 | 120 | 197 | 397 |
| *Level 1 - Total* | *2,248* | *1,661* | *1,193* | *161* | *1,354* | *10,359* |
| *Level 2 -Secure Medium* | | | | | | |
| Hill CC | 111 | 98 | 54 | 0 | 54 | 1,840 |
| Lawrence CC | 218 | 111 | 111 | 0 | 111 | 2,303 |
| Pinckneyville CC | 231 | 218 | 189 | 0 | 189 | 2,464 |
| Western Illinois CC | 108 | 93 | 71 | 0 | 71 | 2,041 |
| *Level 2 - Total* | *668* | *520* | *425* | *0* | *425* | *8,648* |
| *Level 3 - High Medium* | | | | | | |
| Big Muddy River CC | 60 | 45 | 36 | 0 | 36 | 1,922 |
| Danville CC | 87 | 56 | 34 | 0 | 34 | 1,827 |
| Dixon CC | 181 | 120 | 71 | 2 | 73 | 2,335 |
| Illinois River CC | 59 | 51 | 24 | 0 | 24 | 2,041 |
| Shawnee CC | 112 | 106 | 71 | 0 | 71 | 2,018 |
| *Level 3 - Total* | *499* | *378* | *236* | *2* | *238* | *10,143* |
| *Level 4 - Medium* | | | | | | |
| Centralia CC | 54 | 54 | 35 | 0 | 35 | 1,534 |
| Graham CC | 59 | 28 | 13 | 5 | 18 | 1,896 |
| Lincoln CC | 11 | 10 | 0 | 0 | 0 | 1,007 |
| Logan CC | 50 | 38 | 9 | 0 | 9 | 1,973 |
| Sheridan CC | 48 | 24 | 10 | 0 | 10 | 1,606 |
| *Level 4 - Total* | *222* | *154* | *67* | *5* | *72* | *8,016* |
| *Level 5 - High Minimum* | | | | | | |
| Decatur CC | 16 | 0 | 0 | 0 | 0 | 692 |
| Jacksonville CC | 19 | 7 | 5 | 0 | 5 | 1,571 |
| Robinson CC | 15 | 6 | 1 | 0 | 1 | 1,196 |
| Taylorville CC | 14 | 8 | 1 | 0 | 1 | 1,197 |
| *Level 5 - Total* | *64* | *21* | *7* | *0* | *7* | *4,656* |
| *Level 6 - Minimum* | | | | | | |
| East Moline CC | 32 | 28 | 21 | 0 | 21 | 1,219 |
| Southwestern Illinois CC | 8 | 5 | 1 | 0 | 1 | 700 |
| Vandalia CC | 66 | 34 | 18 | 0 | 18 | 1,720 |
| Vienna CC | 32 | 29 | 22 | 0 | 22 | 1,899 |
| *Level 6 - Total* | *138* | *96* | *62* | *0* | *62* | *5,538* |
| **Total** | **3,839** | **2,830** | **1,990** | **168** | **2,158** | **47,360** |

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Segregation Housing Utilization and Population Dissemination, and Institution Population
*December 31, 2011*

| *Parent Facility* | Housing Availability Report (OERHP101) as of 12/31/11 | | Inmates with a Segregation Assignment as of 12/31/11 | | | Institution Population as of 12/31/11 |
|---|---|---|---|---|---|---|
| | *Beds* | *Inmates* | Disciplinary Segregation *Inmates* | Administrative Detention *Inmates* | Total *Inmates* | *Inmates* |
| *Level 1 - Maximum* | | | | | | |
| Dwight CC | 127 | 87 | 57 | 0 | 57 | 1,019 |
| Menard CC | 494 | 435 | 339 | 5 | 344 | 3,607 |
| Pontiac CC | 784 | 665 | 653 | 6 | 659 | 1,687 |
| Stateville  CC | 308 | 242 | 99 | 0 | 99 | 3,601 |
| Tamms CC | 530 | 200 | 75 | 124 | 199 | 379 |
| *Level 1 - Total* | *2,243* | *1,629* | *1,223* | *135* | *1,358* | *10,293* |
| *Level 2 -Secure Medium* | | | | | | |
| Hill CC | 111 | 90 | 56 | 0 | 56 | 1,826 |
| Lawrence CC | 218 | 121 | 118 | 0 | 118 | 2,301 |
| Pinckneyville CC | 231 | 200 | 169 | 0 | 169 | 2,453 |
| Western Illinois CC | 108 | 81 | 37 | 0 | 37 | 2,051 |
| *Level 2 - Total* | *668* | *492* | *380* | *0* | *380* | *8,631* |
| *Level 3 - High Medium* | | | | | | |
| Big Muddy River CC | 60 | 38 | 28 | 0 | 28 | 1,902 |
| Danville CC | 87 | 64 | 30 | 0 | 30 | 1,819 |
| Dixon CC | 181 | 119 | 72 | 2 | 74 | 2,345 |
| Illinois River CC | 59 | 48 | 22 | 0 | 22 | 2,061 |
| Shawnee CC | 112 | 101 | 81 | 0 | 81 | 2,031 |
| *Level 3 - Total* | *499* | *370* | *233* | *2* | *235* | *10,158* |
| *Level 4 - Medium* | | | | | | |
| Centralia CC | 54 | 53 | 43 | 0 | 43 | 1,547 |
| Graham CC | 59 | 48 | 37 | 0 | 37 | 1,840 |
| Lincoln CC | 11 | 9 | 0 | 0 | 0 | 992 |
| Logan CC | 50 | 37 | 4 | 0 | 4 | 1,964 |
| Sheridan CC | 48 | 18 | 6 | 0 | 6 | 1,587 |
| *Level 4 - Total* | *222* | *165* | *90* | *0* | *90* | *7,930* |
| *Level 5 - High Minimum* | | | | | | |
| Decatur CC | 16 | 2 | 0 | 0 | 0 | 680 |
| Jacksonville CC | 19 | 4 | 0 | 0 | 0 | 1,567 |
| Robinson CC | 15 | 10 | 8 | 0 | 8 | 1,195 |
| Taylorville CC | 14 | 3 | 3 | 0 | 3 | 1,193 |
| *Level 5 - Total* | *64* | *19* | *11* | *0* | *11* | *4,635* |
| *Level 6 - Minimum* | | | | | | |
| East Moline CC | 32 | 24 | 12 | 0 | 12 | 1,286 |
| Southwestern Illinois CC | 8 | 5 | 4 | 0 | 4 | 695 |
| Vandalia CC | 66 | 29 | 5 | 0 | 5 | 1,642 |
| Vienna CC | 32 | 26 | 11 | 0 | 11 | 1,893 |
| *Level 6 - Total* | *138* | *84* | *32* | *0* | *32* | *5,516* |
| **Total** | **3,834** | **2,759** | **1,969** | **137** | **2,106** | **47,163** |

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Sentence Imposed Compared to the Actual Length of Stay in Segregation**
*Segregation Assignment as of December 31, 2011*

| Length of Stay in Segregation | Segregation Sentence Imposed | | | | | | | | | | | |
| | 1 Year or Less | 1 to 2 Years | 2 to 3 Years | 3 to 4 Years | 4 to 5 Years | 5 to 6 Years | 6 to 7 Years | 7 to 8 Years | 8 to 9 Years | 9 to 10 Years | More than 10 Years* | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 months or less | 1,084 | 55 | 6 | 1 | 1 | 0 | 2 | 1 | 0 | 0 | 135 | 1,285 |
| 3 to 6 months | 211 | 65 | 11 | 3 | 1 | 2 | 2 | 0 | 1 | 0 | 8 | 304 |
| 6 months to 1 year | 80 | 84 | 24 | 5 | 8 | 3 | 4 | 1 | 2 | 2 | 11 | 224 |
| 1 to 2 years | 0 | 34 | 43 | 18 | 6 | 10 | 5 | 1 | 2 | 1 | 13 | 133 |
| 2 to 3 years | 0 | 0 | 6 | 17 | 3 | 6 | 4 | 5 | 3 | 0 | 16 | 60 |
| 3 to 4 years | 0 | 0 | 0 | 2 | 7 | 6 | 3 | 2 | 3 | 0 | 6 | 29 |
| 4 to 5 years | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 2 | 0 | 0 | 11 | 16 |
| 5 to 6 years | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 1 | 0 | 1 | 6 | 11 |
| 6 to 7 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 12 | 13 |
| 7 to 8 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 | 9 |
| 8 to 9 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 |
| 9 to 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| More than 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16 | 16 |
| Total | 1,375 | 238 | 90 | 46 | 27 | 29 | 23 | 14 | 11 | 5 | 248 | 2,106 |

| Segregation Sentences Imposed Greater than 1 Year by Facility | | | | | | | | | | | |
| | Danville | Dixon | Dwight | Hill | Lawrence | Menard | Pinckneyville | Pontiac | Stateville | Tamms | Western Illinois | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 To 2 Years | 1 | 8 | 7 | 2 | 2 | 48 | 3 | 146 | 8 | 12 | 1 | 238 |
| 2 To 3 Years | 0 | 1 | 3 | 0 | 0 | 8 | 0 | 72 | 2 | 4 | 0 | 90 |
| 3 To 4 Years | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 40 | 1 | 3 | 0 | 46 |
| 4 To 5 Years | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 23 | 0 | 2 | 0 | 27 |
| 5 To 6 Years | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 23 | 1 | 2 | 0 | 29 |
| 6 To 7 Years | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 17 | 3 | 1 | 0 | 23 |
| 7 To 8 Years | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 12 | 0 | 1 | 0 | 14 |
| 8 To 9 Years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | 1 | 1 | 0 | 11 |
| 9 To 10 Years | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 3 | 1 | 0 | 0 | 5 |
| More Than 10 Years* | 0 | 4 | 3 | 0 | 0 | 5 | 0 | 74 | 4 | 158 | 0 | 248 |
| Total | 1 | 14 | 18 | 2 | 2 | 66 | 3 | 419 | 21 | 184 | 1 | 731 |

| Length of Stay for Inmates Serving More Than 1 Year in Segregation by Facility | | | | | | |
| | Dixon | Dwight | Menard | Pontiac | Stateville | Tamms | Total |
|---|---|---|---|---|---|---|---|
| 1 To 2 Years | 3 | 4 | 10 | 102 | 4 | 10 | 133 |
| 2 To 3 Years | 1 | 3 | 3 | 48 | 0 | 5 | 60 |
| 3 To 4 Years | 0 | 2 | 0 | 23 | 0 | 4 | 29 |
| 4 To 5 Years | 1 | 0 | 0 | 13 | 0 | 2 | 16 |
| 5 To 6 Years | 0 | 0 | 0 | 7 | 0 | 4 | 11 |
| 6 To 7 Years | 0 | 0 | 1 | 4 | 0 | 8 | 13 |
| 7 To 8 Years | 1 | 0 | 0 | 6 | 0 | 2 | 9 |
| 8 To 9 Years | 0 | 0 | 0 | 3 | 0 | 2 | 5 |
| 9 To 10 Years | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| More Than 10 Years | 0 | 1 | 0 | 3 | 0 | 12 | 16 |
| Total | 6 | 10 | 14 | 210 | 4 | 49 | 293 |

*Includes cases without a planned-end-date entered into OTS.

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Housing Utilization and Population Dissemination, and Institution Population**
*March 31, 2012*

| Parent Facility | Housing Availability Report (OERHP101) as of 03/31/12 | | Inmates with a Segregation Assignment as of 03/31/12 | | | Inmates with a Segregation Assignment as of December 31, 2011 | Difference from 12/31/11 to 03/31/12 | Institution Population as of 03/31/12 |
|---|---|---|---|---|---|---|---|---|
| | Beds | Inmates | Disciplinary Segregation | Administrative Detention | Total | | | |
| | | | Inmates | Inmates | Inmates | Inmates | | Inmates |
| **Level 1 - Maximum** | | | | | | | | |
| Dwight CC | 127 | 88 | 50 | 0 | 50 | 57 | -7 | 952 |
| Menard CC | 494 | 437 | 345 | 0 | 345 | 344 | 1 | 3,626 |
| Pontiac CC | 954 | 692 | 682 | 4 | 686 | 659 | 27 | 1,740 |
| Stateville CC | 188 | 121 | 80 | 0 | 80 | 99 | -19 | 3,526 |
| Tamms CC | 530 | 183 | 68 | 114 | 182 | 199 | -17 | 383 |
| *Level 1 - Total* | *2,293* | *1,521* | *1,225* | *118* | *1,343* | *1,358* | *-15* | *10,227* |
| **Level 2 -Secure Medium** | | | | | | | | |
| Hill CC | 111 | 81 | 51 | 0 | 51 | 56 | -5 | 1,812 |
| Lawrence CC | 218 | 106 | 107 | 0 | 107 | 118 | -11 | 2,281 |
| Pinckneyville CC | 231 | 211 | 177 | 0 | 177 | 169 | 8 | 2,414 |
| Western Illinois CC | 108 | 84 | 65 | 0 | 65 | 37 | 28 | 2,015 |
| *Level 2 - Total* | *668* | *482* | *400* | *0* | *400* | *380* | *20* | *8,522* |
| **Level 3 - High Medium** | | | | | | | | |
| Big Muddy River CC | 60 | 45 | 37 | 0 | 37 | 28 | 9 | 1,883 |
| Danville CC | 87 | 60 | 41 | 0 | 41 | 30 | 11 | 1,811 |
| Dixon CC | 179 | 147 | 119 | 2 | 121 | 74 | 47 | 2,355 |
| Illinois River CC | 59 | 34 | 19 | 0 | 19 | 22 | -3 | 2,051 |
| Shawnee CC | 112 | 100 | 85 | 0 | 85 | 81 | 4 | 2,020 |
| *Level 3 - Total* | *497* | *386* | *301* | *2* | *303* | *235* | *68* | *10,120* |
| **Level 4 - Medium** | | | | | | | | |
| Centralia CC | 54 | 50 | 38 | 0 | 38 | 43 | -5 | 1,536 |
| Graham CC | 60 | 42 | 27 | 0 | 27 | 37 | -10 | 1,797 |
| Lincoln CC | 11 | 10 | 1 | 0 | 1 | 0 | 1 | 1,010 |
| Logan CC | 50 | 44 | 10 | 1 | 11 | 4 | 7 | 1,955 |
| Sheridan CC | 48 | 15 | 11 | 0 | 11 | 6 | 5 | 1,644 |
| *Level 4 - Total* | *223* | *161* | *87* | *1* | *88* | *90* | *-2* | *7,942* |
| **Level 5 - High Minimum** | | | | | | | | |
| Decatur CC | 16 | 5 | 0 | 0 | 0 | 0 | 0 | 687 |
| Jacksonville CC | 19 | 3 | 2 | 0 | 2 | 0 | 2 | 1,556 |
| Robinson CC | 15 | 10 | 9 | 0 | 9 | 8 | 1 | 1,207 |
| Taylorville CC | 14 | 9 | 3 | 0 | 3 | 3 | 0 | 1,215 |
| *Level 5 - Total* | *64* | *27* | *14* | *0* | *14* | *11* | *3* | *4,665* |
| **Level 6 - Minimum** | | | | | | | | |
| East Moline CC | 32 | 32 | 16 | 0 | 16 | 12 | 4 | 1,301 |
| Southwestern Illinois CC | 8 | 5 | 4 | 0 | 4 | 4 | 0 | 701 |
| Vandalia CC | 66 | 35 | 24 | 0 | 24 | 5 | 19 | 1,645 |
| Vienna CC | 32 | 21 | 4 | 0 | 4 | 11 | -7 | 1,877 |
| *Level 6 - Total* | *138* | *93* | *48* | *0* | *48* | *32* | *16* | *5,524* |
| **Total** | **3,883** | **2,670** | **2,075** | **121** | **2,196** | **2,106** | **90** | **47,000** |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| December 2011 Stats | 3,834 | 2,759 | 1,969 | 137 | 2,106 | | | 47,163 |
| *Difference* | *49* | *-89* | *106* | *-16* | *90* | | | *-163* |

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Sentence Imposed Compared to the Actual Length of Stay in Segregation**
*Segregation Assignment as of March 31, 2012*

Inmates with a Segregation Assignment as of December 31, 2011

| Length of Stay in Segregation | Segregation Sentence Imposed | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 Year or Less | 1 to 2 Years | 2 to 3 Years | 3 to 4 Years | 4 to 5 Years | 5 to 6 Years | 6 to 7 Years | 7 to 8 Years | 8 to 9 Years | 9 to 10 Years | More than 10 Years* | Total |
| 3 months or less | 1,224 | 52 | 6 | 5 | 3 | 1 | 3 | 0 | 1 | 0 | 116 | 1,411 |
| 3 to 6 months | 176 | 48 | 8 | 2 | 1 | 0 | 1 | 1 | 0 | 0 | 21 | 258 |
| 6 months to 1 year | 83 | 98 | 27 | 6 | 5 | 2 | 3 | 0 | 2 | 0 | 11 | 237 |
| 1 to 2 years | 0 | 34 | 37 | 15 | 10 | 11 | 4 | 1 | 4 | 0 | 11 | 127 |
| 2 to 3 years | 0 | 0 | 7 | 16 | 6 | 7 | 4 | 6 | 2 | 3 | 11 | 62 |
| 3 to 4 years | 0 | 0 | 0 | 2 | 4 | 4 | 4 | 2 | 2 | 0 | 12 | 30 |
| 4 to 5 years | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 3 | 1 | 0 | 9 | 15 |
| 5 to 6 years | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 1 | 0 | 1 | 7 | 12 |
| 6 to 7 years | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 1 | 0 | 7 | 10 |
| 7 to 8 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 | 11 |
| 8 to 9 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 |
| 9 to 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| More than 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17 | 17 |
| Total | 1,483 | 232 | 85 | 46 | 30 | 26 | 24 | 14 | 13 | 5 | 238 | 2,196 |

| Segregation Sentences Imposed Greater than 1 Year by Facility | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Danville | Dixon | Dwight | Hill | Illinois River | Lawrence | Logan | Menard | Pinckneyville | Pontiac | Stateville | Tamms | Total |
| 1 To 2 Years | 1 | 6 | 7 | 1 | 1 | 2 | 1 | 45 | 2 | 153 | 4 | 10 | 233 |
| 2 To 3 Years | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 8 | 0 | 69 | 1 | 3 | 85 |
| 3 To 4 Years | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 40 | 0 | 3 | 46 |
| 4 To 5 Years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 27 | 0 | 1 | 30 |
| 5 To 6 Years | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 23 | 0 | 2 | 26 |
| 6 To 7 Years | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 2 | 0 | 19 | 0 | 2 | 24 |
| 7 To 8 Years | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 14 |
| 8 To 9 Years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 11 | 0 | 1 | 13 |
| 9 To 10 Years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 5 |
| More Than 10 Years* | 0 | 3 | 3 | 0 | 0 | 0 | 0 | 7 | 0 | 74 | 1 | 149 | 237 |
| Total | 1 | 12 | 16 | 1 | 1 | 2 | 1 | 66 | 2 | 434 | 6 | 171 | 713 |

| Length of Stay for Inmates Serving More Than 1 Year in Segregation by Facility | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Dixon | Dwight | Menard | Pontiac | Stateville | Tamms | Total |
| 1 To 2 Years | 3 | 3 | 11 | 104 | 1 | 5 | 127 |
| 2 To 3 Years | 1 | 3 | 1 | 50 | 0 | 7 | 62 |
| 3 To 4 Years | 0 | 3 | 1 | 25 | 0 | 1 | 30 |
| 4 To 5 Years | 0 | 0 | 0 | 13 | 0 | 2 | 15 |
| 5 To 6 Years | 0 | 0 | 0 | 8 | 0 | 4 | 12 |
| 6 To 7 Years | 0 | 0 | 0 | 4 | 0 | 6 | 10 |
| 7 To 8 Years | 1 | 0 | 1 | 5 | 0 | 4 | 11 |
| 8 To 9 Years | 0 | 0 | 0 | 3 | 0 | 2 | 5 |
| 9 To 10 Years | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| More Than 10 Years | 0 | 1 | 0 | 4 | 0 | 12 | 17 |
| Total | 5 | 10 | 14 | 217 | 1 | 43 | 290 |

*Includes cases without a planned-end-date entered into OTS.

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Housing Utilization and Population Dissemination, and Institution Population**
*June 30, 2012*

| | Housing Availability Report (OERHP101) as of 06/30/12 | | Inmates with a Segregation Assignment as of 06/30/12 | | | Inmates with a Segregation Assignment as of December 31, 2011 | Difference from 12/31/11 to 06/30/12 | Institution Population as of 06/30/12 |
|---|---|---|---|---|---|---|---|---|
| *Parent Facility* | Beds | Inmates | Disciplinary Segregation Inmates | Administrative Detention Inmates | Total Inmates | | | Inmates |
| **Level 1 - Maximum** | | | | | | | | |
| Dwight CC | 127 | 75 | 44 | 0 | 44 | 57 | -13 | 982 |
| Menard CC | 494 | 400 | 302 | 0 | 302 | 344 | -42 | 3,573 |
| Pontiac CC | 954 | 729 | 653 | 5 | 658 | 659 | -1 | 1,817 |
| Stateville  CC | 193 | 173 | 89 | 1 | 90 | 99 | -9 | 3,707 |
| Tamms CC | 530 | 170 | 72 | 96 | 168 | 199 | -31 | 364 |
| *Level 1 - Total* | *2,298* | *1,547* | *1,160* | *102* | *1,262* | *1,358* | *-96* | *10,443* |
| **Level 2 -Secure Medium** | | | | | | | | |
| Hill CC | 111 | 88 | 57 | 0 | 57 | 56 | 1 | 1,807 |
| Lawrence CC | 218 | 117 | 76 | 9 | 85 | 118 | -33 | 2,286 |
| Pinckneyville CC | 231 | 194 | 145 | 3 | 148 | 169 | -21 | 2,402 |
| Western Illinois CC | 108 | 80 | 42 | 0 | 42 | 37 | 5 | 2,053 |
| *Level 2 - Total* | *668* | *479* | *320* | *12* | *332* | *380* | *-48* | *8,548* |
| **Level 3 - High Medium** | | | | | | | | |
| Big Muddy River CC | 60 | 45 | 32 | 0 | 32 | 28 | 4 | 1,893 |
| Danville CC | 87 | 54 | 24 | 0 | 24 | 30 | -6 | 1,803 |
| Dixon CC | 179 | 98 | 111 | 1 | 112 | 74 | 38 | 2,282 |
| Illinois River CC | 59 | 53 | 17 | 0 | 17 | 22 | -5 | 2,052 |
| Shawnee CC | 112 | 100 | 62 | 0 | 62 | 81 | -19 | 1,996 |
| *Level 3 - Total* | *497* | *350* | *246* | *1* | *247* | *235* | *12* | *10,026* |
| **Level 4 - Medium** | | | | | | | | |
| Centralia CC | 54 | 52 | 35 | 0 | 35 | 43 | -8 | 1,537 |
| Graham CC | 60 | 41 | 20 | 1 | 21 | 37 | -16 | 1,780 |
| Lincoln CC | 11 | 8 | 1 | 0 | 1 | 0 | 1 | 999 |
| Logan CC | 50 | 49 | 14 | 0 | 14 | 4 | 10 | 1,905 |
| Sheridan CC | 48 | 13 | 1 | 0 | 1 | 6 | -5 | 1,648 |
| *Level 4 - Total* | *223* | *163* | *71* | *1* | *72* | *90* | *-18* | *7,869* |
| **Level 5 - High Minimum** | | | | | | | | |
| Decatur CC | 16 | 2 | 0 | 0 | 0 | 0 | 0 | 683 |
| Jacksonville CC | 19 | 6 | 4 | 0 | 4 | 0 | 4 | 1,580 |
| Robinson CC | 15 | 8 | 3 | 0 | 3 | 8 | -5 | 1,211 |
| Taylorville CC | 14 | 8 | 1 | 0 | 1 | 3 | -2 | 1,188 |
| *Level 5 - Total* | *64* | *24* | *8* | *0* | *8* | *11* | *-3* | *4,662* |
| **Level 6 - Minimum** | | | | | | | | |
| East Moline CC | 32 | 25 | 11 | 0 | 11 | 12 | -1 | 1,298 |
| Southwestern Illinois CC | 8 | 6 | 4 | 0 | 4 | 4 | 0 | 699 |
| Vandalia CC | 66 | 30 | 16 | 0 | 16 | 5 | 11 | 1,639 |
| Vienna CC | 32 | 27 | 10 | 0 | 10 | 11 | -1 | 1,886 |
| *Level 6 - Total* | *138* | *88* | *41* | *0* | *41* | *32* | *9* | *5,522* |
| **Total** | **3,888** | **2,651** | **1,846** | **116** | **1,962** | **2,106** | **-144** | **47,070** |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| December 2011 Stats | **3,834** | **2,759** | **1,969** | **137** | **2,106** | | | **47,163** |
| *Difference* | *54* | *-108* | *-123* | *-21* | *-144* | | | *-93* |

Prepared by Planning and Research

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Sentence Imposed Compared to the Actual Length of Stay in Segregation**
*Segregation Assignment as of June 30, 2012*

| Length of Stay in Segregation | Segregation Sentence Imposed | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 Year or Less | 1 to 2 Years | 2 to 3 Years | 3 to 4 Years | 4 to 5 Years | 5 to 6 Years | 6 to 7 Years | 7 to 8 Years | 8 to 9 Years | 9 to 10 Years | More than 10 Years* | |
| 3 months or less | 1,049 | 26 | 9 | 0 | 1 | 2 | 0 | 1 | 0 | 1 | 118 | 1,207 |
| 3 to 6 months | 193 | 40 | 8 | 7 | 3 | 1 | 3 | 0 | 1 | 0 | 12 | 268 |
| 6 months to 1 year | 64 | 91 | 20 | 6 | 2 | 1 | 1 | 1 | 1 | 0 | 12 | 199 |
| 1 to 2 years | 0 | 40 | 39 | 13 | 7 | 5 | 6 | 2 | 5 | 0 | 8 | 125 |
| 2 to 3 years | 0 | 0 | 5 | 12 | 9 | 7 | 6 | 6 | 2 | 3 | 11 | 61 |
| 3 to 4 years | 0 | 0 | 0 | 4 | 5 | 2 | 2 | 2 | 2 | 1 | 12 | 30 |
| 4 to 5 years | 0 | 0 | 0 | 0 | 2 | 2 | 1 | 3 | 1 | 1 | 8 | 18 |
| 5 to 6 years | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 1 | 1 | 1 | 6 | 12 |
| 6 to 7 years | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 1 | 5 | 8 |
| 7 to 8 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 7 |
| 8 to 9 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 | 8 |
| 9 to 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| More than 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17 | 17 |
| Total | 1,306 | 197 | 81 | 42 | 29 | 21 | 23 | 16 | 13 | 8 | 226 | 1,962 |

| Segregation Sentences Imposed Greater than 1 Year by Facility | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dixon | Dwight | Graham | Lawrence | Illinois River | Logan | Menard | Pinckneyville | Pontiac | Stateville | Tamms | Total |
| 1 To 2 Years | 6 | 8 | 0 | 1 | 0 | 0 | 29 | 0 | 141 | 2 | 10 | 197 |
| 2 To 3 Years | 2 | 2 | 0 | 0 | 0 | 0 | 4 | 0 | 69 | 2 | 2 | 81 |
| 3 To 4 Years | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 38 | 0 | 3 | 42 |
| 4 To 5 Years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29 | 0 | 0 | 29 |
| 5 To 6 Years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18 | 1 | 2 | 21 |
| 6 To 7 Years | 0 | 2 | 0 | 0 | 0 | 0 | 1 | 0 | 18 | 0 | 2 | 23 |
| 7 To 8 Years | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 15 | 0 | 0 | 16 |
| 8 To 9 Years | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 11 | 0 | 1 | 13 |
| 9 To 10 Years | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 1 | 0 | 8 |
| More Than 10 Years* | 2 | 3 | 1 | 9 | 0 | 0 | 7 | 3 | 68 | 3 | 130 | 226 |
| Total | 11 | 16 | 1 | 10 | 0 | 0 | 43 | 3 | 413 | 9 | 150 | 656 |

| Length of Stay for Inmates Serving More Than 1 Year in Segregation by Facility | | | | | | |
|---|---|---|---|---|---|---|
| | Dixon | Dwight | Menard | Pontiac | Tamms | Total |
| 1 To 2 Years | 4 | 4 | 7 | 108 | 2 | 125 |
| 2 To 3 Years | 1 | 2 | 1 | 51 | 6 | 61 |
| 3 To 4 Years | 0 | 2 | 1 | 25 | 2 | 30 |
| 4 To 5 Years | 1 | 1 | 0 | 14 | 2 | 18 |
| 5 To 6 Years | 0 | 0 | 0 | 8 | 4 | 12 |
| 6 To 7 Years | 0 | 0 | 0 | 5 | 3 | 8 |
| 7 To 8 Years | 0 | 0 | 1 | 2 | 4 | 7 |
| 8 To 9 Years | 1 | 0 | 0 | 4 | 3 | 8 |
| 9 To 10 Years | 0 | 0 | 0 | 2 | 0 | 2 |
| More Than 10 Years | 0 | 1 | 0 | 4 | 12 | 17 |
| Total | 7 | 10 | 10 | 223 | 38 | 288 |

*Includes cases without a planned-end-date entered into OTS.

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Segregation Housing Utilization and Population Dissemination, and Institution Population
*December 31, 2012*

| Parent Facility | Housing Availability Report (OERHP101) as of 12/31/12 | | Inmates with a Segregation Assignment as of 12/31/12 | | | Inmates with a Segregation Assignment as of December 31, 2011 | Difference from 12/31/11 to 12/31/12 | Institution Population as of 12/31/12 |
|---|---|---|---|---|---|---|---|---|
| | Beds | Inmates | Disciplinary Segregation Inmates | Administrative Detention Inmates | Total Inmates | | | Inmates |
| *Closed Maximum Security* | | | | | | | | |
| Tamms CC | 0 | 0 | 0 | 0 | 0 | 199 | -199 | 0 |
| *Maximum Security* | | | | | | | | |
| Dwight CC | 127 | 109 | 54 | 0 | 54 | 57 | -3 | 976 |
| Menard CC | 390 | 348 | 307 | 13 | 320 | 344 | -24 | 3,664 |
| Pontiac CC | 914 | 760 | 709 | 120 | 829 | 659 | 170 | 1,937 |
| Stateville  CC | 220 | 197 | 127 | 5 | 132 | 99 | 33 | 3,879 |
| *Maximum Security Total* | *1,651* | *1,414* | *1,197* | *138* | *1,335* | *1,159* | *176* | *10,456* |
| *Medium Security* | | | | | | | | |
| Big Muddy River CC | 60 | 50 | 34 | 0 | 34 | 28 | 6 | 1,914 |
| Centralia CC | 54 | 50 | 30 | 0 | 30 | 43 | -13 | 1,552 |
| Danville CC | 87 | 57 | 27 | 0 | 27 | 30 | -3 | 1,811 |
| Dixon CC | 179 | 139 | 57 | 1 | 58 | 74 | -16 | 2,413 |
| Graham CC | 60 | 52 | 27 | 0 | 27 | 37 | -10 | 1,958 |
| Hill CC | 111 | 100 | 53 | 0 | 53 | 56 | -3 | 1,827 |
| Illinois River CC | 59 | 57 | 8 | 0 | 8 | 22 | -14 | 2,070 |
| Lawrence CC | 142 | 124 | 109 | 0 | 109 | 118 | -9 | 2,375 |
| Lincoln CC | 11 | 10 | 0 | 0 | 0 | 0 | 0 | 1,011 |
| Logan CC | 106 | 65 | 18 | 0 | 18 | 4 | 14 | 1,771 |
| Pinckneyville CC | 231 | 191 | 143 | 0 | 143 | 169 | -26 | 2,474 |
| Shawnee CC | 112 | 100 | 58 | 0 | 58 | 81 | -23 | 2,065 |
| Sheridan CC | 48 | 28 | 11 | 0 | 11 | 6 | 5 | 1,914 |
| Western Illinois CC | 108 | 83 | 51 | 0 | 51 | 37 | 14 | 2,071 |
| *Medium Security Total* | *1,368* | *1,106* | *626* | *1* | *627* | *705* | *-78* | *27,226* |
| *Minimum Security* | | | | | | | | |
| Decatur CC | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 697 |
| East Moline CC | 48 | 31 | 10 | 0 | 10 | 12 | -2 | 1,405 |
| Jacksonville CC | 19 | 10 | 0 | 0 | 0 | 0 | 0 | 1,603 |
| Robinson CC | 15 | 10 | 9 | 0 | 9 | 8 | 1 | 1,206 |
| Southwestern Illinois CC | 8 | 7 | 1 | 0 | 1 | 4 | -3 | 683 |
| Taylorville CC | 14 | 8 | 1 | 0 | 1 | 3 | -2 | 1,200 |
| Vandalia CC | 66 | 36 | 25 | 0 | 25 | 5 | 20 | 1,654 |
| Vienna CC | 32 | 30 | 8 | 0 | 8 | 11 | -3 | 1,925 |
| *Minimum Security Total* | *218* | *132* | *54* | *0* | *54* | *43* | *11* | *10,373* |
| **Total** | **3,237** | **2,652** | **1,877** | **139** | **2,016** | **2,106** | **-90** | **48,055** |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| December 2011 Stats | **3,834** | **2,759** | **1,969** | **137** | **2,106** | | | **47,163** |
| *Difference* | *-597* | *-107* | *-92* | *2* | *-90* | | | *892* |

Prepared by Planning and Research

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Segregation Sentence Imposed Compared to the Actual Length of Stay in Segregation**
*Segregation Assignment as of December 31, 2012*

| Length of Stay in Segregation | Segregation Sentence Imposed | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 Year or Less | 1 to 2 Years | 2 to 3 Years | 3 to 4 Years | 4 to 5 Years | 5 to 6 Years | 6 to 7 Years | 7 to 8 Years | 8 to 9 Years | 9 to 10 Years | More than 10 Years* | Total |
| 3 months or less | 1,068 | 49 | 9 | 2 | 1 | 1 | 3 | 1 | 0 | 2 | 117 | 1,253 |
| 3 to 6 months | 240 | 49 | 11 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 35 | 336 |
| 6 months to 1 year | 74 | 65 | 20 | 12 | 4 | 3 | 3 | 1 | 1 | 1 | 13 | 197 |
| 1 to 2 years | 0 | 31 | 27 | 17 | 5 | 5 | 3 | 1 | 5 | 1 | 6 | 101 |
| 2 to 3 years | 0 | 0 | 11 | 6 | 7 | 9 | 3 | 3 | 2 | 4 | 5 | 50 |
| 3 to 4 years | 0 | 0 | 0 | 5 | 4 | 2 | 5 | 2 | 2 | 1 | 13 | 34 |
| 4 to 5 years | 0 | 0 | 0 | 0 | 2 | 3 | 0 | 1 | 3 | 1 | 3 | 13 |
| 5 to 6 years | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 1 | 0 | 6 | 10 |
| 6 to 7 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 3 | 5 |
| 7 to 8 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 4 |
| 8 to 9 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 |
| 9 to 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 |
| More than 10 years | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 5 |
| Total | 1,382 | 194 | 78 | 42 | 23 | 24 | 19 | 10 | 15 | 12 | 217 | 2,016 |

| Segregation Sentences Imposed Greater than 1 Year by Facility | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Dixon | Dwight | Hill | Lawrence | Menard | Pinckneyville | Pontiac | Stateville | Vandalia | Total |
| 1 To 2 Years | 3 | 8 | 2 | 1 | 25 | 1 | 142 | 11 | 1 | 194 |
| 2 To 3 Years | 1 | 5 | 0 | 0 | 1 | 0 | 69 | 2 | 0 | 78 |
| 3 To 4 Years | 0 | 0 | 0 | 0 | 1 | 0 | 41 | 0 | 0 | 42 |
| 4 To 5 Years | 0 | 0 | 0 | 0 | 0 | 0 | 23 | 0 | 0 | 23 |
| 5 To 6 Years | 0 | 0 | 0 | 0 | 0 | 0 | 23 | 1 | 0 | 24 |
| 6 To 7 Years | 0 | 1 | 0 | 0 | 1 | 0 | 17 | 0 | 0 | 19 |
| 7 To 8 Years | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 |
| 8 To 9 Years | 0 | 0 | 0 | 0 | 0 | 0 | 15 | 0 | 0 | 15 |
| 9 To 10 Years | 0 | 0 | 0 | 0 | 0 | 0 | 12 | 0 | 0 | 12 |
| More Than 10 Years* | 1 | 1 | 0 | 0 | 7 | 0 | 199 | 9 | 0 | 217 |
| **Total** | **5** | **15** | **2** | **1** | **35** | **1** | **551** | **23** | **1** | **634** |

| Length of Stay for Inmates Serving More Than 1 Year in Segregation by Facility | | | | | |
|---|---|---|---|---|---|
| | Dixon | Dwight | Menard | Pontiac | Stateville | Total |
| 1 To 2 Years | 2 | 3 | 3 | 92 | 1 | 101 |
| 2 To 3 Years | 0 | 2 | 1 | 47 | 0 | 50 |
| 3 To 4 Years | 1 | 0 | 1 | 32 | 0 | 34 |
| 4 To 5 Years | 0 | 0 | 0 | 13 | 0 | 13 |
| 5 To 6 Years | 0 | 0 | 0 | 10 | 0 | 10 |
| 6 To 7 Years | 0 | 0 | 0 | 5 | 0 | 5 |
| 7 To 8 Years | 0 | 0 | 1 | 3 | 0 | 4 |
| 8 To 9 Years | 0 | 0 | 0 | 5 | 0 | 5 |
| 9 To 10 Years | 0 | 0 | 0 | 3 | 0 | 3 |
| More Than 10 Years | 0 | 1 | 0 | 4 | 0 | 5 |
| **Total** | **3** | **6** | **6** | **214** | **1** | **230** |

*Includes cases without a planned-end-date entered into OTS.

# **Exhibit E**

## Memorandum of Understanding
## Between
## The Illinois Department of Corrections
## and
## The Vera Institute of Justice

This Memorandum of Understanding between the Vera Institute of Justice (Vera), with offices at 233 Broadway, 12th Floor, New York, NY 10279, and the Illinois Department of Corrections (IDOC), with offices at 1301 Concordia Court, Springfield, IL 62794, shall be effective from April 15, 2010 through April 14, 2013.

### PURPOSE

The IDOC currently houses more than 2800 inmates in some form of segregated housing. The use of solitary confinement has been an increasing trend in U.S. prisons over the past twenty years as a disciplinary and management tool, despite the budgetary and human costs of this form of incarceration. Between 1995 and 2000, there was a 40% increase of prisoners in segregation beds nationally, not including all supermax beds added during that period. In contrast, the prison population increased only 28% during the same time period.[1] There also has been a trend toward increasingly extreme conditions of isolation with the design of environments that nearly eliminate human interaction, not only in supermax prisons but also in segregation units in prisons and jails around the country.[2]

Research documents that long periods of time in isolating conditions may cause serious and sometimes lasting deterioration of prisoners' mental and physical health. These effects can lead to increased violence within prison facilities and greater recidivism rates once prisoners are released into the community. Beyond these human costs, the operational cost of a segregation cell is often 50% greater than the cost of cells in the general prison population. For these reasons, many states such as Illinois have begun to consider alternatives to housing large numbers of prisoners in segregation units.

This agreement outlines the terms under which Vera will assess the use of segregation units in the IDOC and assist the Department in reducing its reliance on these types of housing units. In order to accomplish this, Vera will build on innovations pioneered by Dr. James Austin in the Ohio and Mississippi prison systems, which safely reduced the numbers of prisoners in long-term segregation by approximately 80%[3]. This will be implemented in IDOC through research into best practices in other locales where

---

[1] The Commission on Safety and Abuse in America's Prisons. (2006). *Confronting Confinement*, p. 56. Available at www.prisoncommission.org.
[2] Haney, C., & Zimbardo, P. (1998). The Past and Future of U.S. Prison Policy: Twenty-Five Years After the Stanford Prison Experiment. *American Psychologist*, 53, 709; Human Rights Watch. (2000). *Out of Sight: Super-Maximum Security Confinement in the United States*. Available at http://www.hrw.org/reports/2000/supermax/.
[3] Ohio reduced its population in supermax confinement from roughly 800 to 100, and Mississippi reduced its population from roughly 1000 to 90.

segregation populations have been effectively reduced; review and quantitative analyses of IDOC's data and case files; interviews with prisoners; development of criteria for moving prisoners from various forms of segregation to general population; technical assistance as prisoners are moved; development of performance measures; and technical assistance to establish a system to evaluate the impact of reduction in the segregated population on institutional safety and costs over time.

## TERMS AND CONDITIONS

In mutual understanding of the purpose and goals of the parties to this MOU, the above named parties agree to the following:

### I. VERA

1. Vera will conduct a data diagnostic to enable it to design a research study of Illinois' prison population in segregation and administrative detention. In order to design the study, Vera will need to obtain a picture of the population, as well as policies and procedures that will be affected by new practices. To create that picture, Vera will determine: (1) how many people are in segregation or administrative detention; (2) characteristics of the people held in segregation; (3) why people are housed in segregated units; (4) how long a person typically remains in segregation; (5) what pathways are available to transfer out of segregation, and (6) how these pathways are utilized.

2. Vera will report the results of its data diagnostic to IDOC and will consult with IDOC staff as Vera uses the diagnostic to design its research.

3. Vera will conduct a best practices review of alternatives to long-term segregation nationally and methods of reducing the isolating conditions often associated with segregation units. Vera will then develop recommendations for the IDOC based on this comprehensive best practices review.

4. Vera will work with IDOC staff to develop new criteria and policies for segregation and administrative detention, beginning with the populations at the Tamms, Pontiac, and Dwight facilities that will allow IDOC to transition prisoners who can safely be moved from segregation into the general population.

5. Vera will work with IDOC to develop programs and interventions to safely move prisoners out of segregation into the general population and to reduce the isolating environment in its remaining segregation units.

6. Vera will work with IDOC staff to create a set of performance measures and to establish a system to evaluate the impact that reductions in the segregated populations have on institutional safety and costs over time.

7. Vera may refer on its website and elsewhere to its work with IDOC and may publish one or more reports based on its work for IDOC. However, any such

references or reports shall not quote or paraphrase anyone interviewed without that person's permission and shall contain only aggregate data.

## II.  IDOC

1. For the data diagnostic, IDOC will provide Vera and Dr. Austin access to internal data—including all relevant case files-- for review and analysis. For the research study, IDOC will also make available all appropriate staff for interviews, allow Vera to interview prisoners, and allow Vera access to all IDOC facilities.

2. IDOC administrators agree to meet with Vera and Dr. Austin to participate in discussions of Vera's recommendations and will make a good faith effort to implement all appropriate policy changes.

## III. Protection of Confidentiality

1. Vera acknowledges that all data and files transferred to it by IDOC are confidential and will exercise due diligence and take all reasonable measures to protect the confidentiality of the data

2. Vera will protect the data and individual identities of the participants from public disclosure.

3. All project analysis outside of IDOC will be conducted on Vera premises.

4. Access to IDOC data will be limited to a small group of Vera researchers. Vera will provide IDOC with the names of all staff who have permission to access these data.

5. Vera will safely store all data received from IDOC or newly collected. Electronic databases and electronic interview notes will be stored on Vera computers under password protection.

6. Electronic data will be stripped of all identifiers (including name, date of birth and agency-ID numbers) once all necessary merging of the files has been completed. A file with identifiers will be stored separately from the data files on a secure, password-protected part of the Vera network, accessible only to staff trained to maintain the confidentiality of the data.

7. For all interview data, Vera will only use unique numeric identifiers during the actual interview. The list linking interviewee names to the numeric identifiers will be stored separately from the notes in a locked file cabinet on Vera premises.

8. To ensure that all staff on the project are properly trained and understand issues of human subjects protection and the importance of confidentiality, all project staff will: (a) complete the National Institutes of Health web-based training course, "*Protecting Human Research Participants*," (b) provide a Certification of

Completion to Vera documenting the successful completion of that training, and (c) review and sign a copy of the *"Vera Institute of Justice Confidentiality Protocol"* before beginning work on the project.

**Signatures**

*Vera Institute of Justice*

Authorized Signature: _Karen Goldstein_
Karen Goldstein
Vice President and General Counsel

Date: _5/7/10_

*Illinois Department of Corrections*

Authorized Signature: _Michael Randle_

Name: _Michael Randle_

Title: _Director_

Date: _5/11/10_

# Exhibit F

## Reducing Prisoner Isolation: An Innovative Approach to Classification and Management of Segregation, Control Units, and Supermax

**Statement of the Problem**

While conducting research for *Confronting Confinement*, the report of the *Vera Commission on Safety and Abuse in America's Prisons*, Vera staff learned that, since the mid-1980s when the country's first supermax prisons were built, the trend has been toward increased reliance on isolation of prisoners in segregation units and in supermax prisons as a disciplinary and management tool. Between 1995 and 2000, there was a 40% increase of prisoners in segregation beds, and this does not include all supermax beds added during that period. In contrast, the prison population increased only 28% during those years.[1] With the design of environments that nearly eliminate human interaction, there has also been a trend toward increasingly severe conditions of isolation, not only in supermax prisons but also in segregation units in prisons and jails nationally.[2]

Extreme isolation has unquestionably severe consequences for individuals. Extensive research in the fields of psychology and social psychology documents dramatically negative effects of isolation on individuals, and on prisoners in particular.[3] Long periods of time in isolating conditions can cause serious and sometimes lasting deterioration of prisoners' mental

---

[1] The Commission on Safety and Abuse in America's Prisons. (2006). *Confronting Confinement*, p. 56. Available at www.prisoncommission.org.

[2] Haney, C., & Zimbardo, P. (1998). The Past and Future of U.S. Prison Policy: Twenty-Five Years After the Stanford Prison Experiment. *American Psychologist*, 53, 709; Human Rights Watch. (2000). *Out of Sight: Super-Maximum Security Confinement in the United States*. Available at http://www.hrw.org/reports/2000/supermax/.

[3] Haney, C. (2003). Mental Health Issues in Long-Term Solitary and 'Supermax' Confinement. *Crime & Delinquency*, 49(I), 124-156.

health. Studies also demonstrate significantly higher rates of suicide in segregation and other forms of "solitary confinement" than in the general prison population.[4]

There also is evidence that long-term segregation has negative consequences for institutional and public safety by increasing prisoner-on-staff and prisoner-on-prisoner assaults as well as recidivism rates post-release, although we do not know enough about these outcomes or about the consequences of holding large numbers of prisoners in long-term segregation over time. The small amount of existing evidence on the impact of isolation on the behavior of prisoners, once they are released, suggests that long periods in isolating conditions within a prison or jail may increase recidivism among prisoners who are released directly from segregation.[5] Other evidence suggests that working in long-term segregation can be a highly stressful environment for corrections staff due to high rates of prisoner-on-staff assaults.[6]

In addition to human costs, the monetary costs of the use of isolating confinement are significant. On average, the operating costs for supermax cells are over 50% greater than general population cells.[7] Systems that run supermax facilities justify the higher costs by theoretical savings to the rest of the system that would otherwise absorb a population of prisoners thought to be difficult to manage. However, meaningful cost-benefit analyses that look at the system-wide impact of long-term segregation on costs to a state have not yet been conducted.

---

[4] Hayes, L. M., & Rowan, J.R. (1988). *National Study of Jail Suicides: Seven Years Later.* National Center on Institutions and Alternatives. Available at http://nicic.org/Library/006540.
[5] *See*, Lovell, D., Johnson, L.C., & Cain, K.C. (2007). Recidivism of Supermax Prisoners in Washington State. *Crime Delinquency*, 53, 633; Lovell, D., & Johnson, L.C. (2004). *Felony and Violent Recidivism Among Supermax Prison Inmates in Washington State: A Pilot Study*. University of Washington. Available at http://www.son.washington.edu/faculty/fac-page-files/Lovell-SupermaxRecdivism-4-19-04.pdf.
[6] Austin, J., & Irwin, J. (2001). *It's about time: America's imprisonment binge*. (3rd ed.) Belmont, CA: Wadsworth; Rhodes, L. (2004). *Total Confinement: Madness and Reason in the Maximum Security Prison.* Berkeley: University of California Press.
[7] Mears, D. (2006). *Evaluating the Effectiveness of Supermax Prison.* Urban Institute.

In sum, there is growing empirical evidence of negative effects of segregation on individuals, institutional safety, and community safety after release, and dangerous gaps in our knowledge about the ways that segregation is being used and its overall behavioral and monetary costs.  Despite this, the trend in the United States is toward increasing reliance on its use.

**Project Design and Implementation**

Given these concerns, Vera believes that a promising path toward enhancing applicable knowledge in this area and reversing the increase in the use of long-term segregation is through demonstrations of innovative alternatives and measuring the impact these changes have on institutional safety, public safety, and costs.

Corrections departments and state governments are reluctant to risk significant change, despite compelling arguments about the costliness of segregation units—both monetarily, as well as foreseeable future costs.[8] However, litigation has motivated a number of state departments of correction, particularly Ohio's Department of Rehabilitation and Correction (DRC) and Mississippi's Department of Corrections (DOC), to test creative alternatives. Their efforts have resulted in massive reductions in the number of prisoners held in long-term segregation settings with no apparent significant negative effects.[9]

Currently we have an exciting invitation to build on their successes by working with Dr. James Austin to (a) adapt the strategies employed in Ohio and Mississippi for the State of Maryland's Department of Public Safety and Corrections Services (DPSCS) and the State of Illinois's Department of Corrections (DOC), (b) research innovative approaches to lessen isolation for prisoners who must remain in segregation units, and (c) measure outcomes of the demonstration project overall. The Maryland DPSCS and the Illinois DOC are eager to have us

---

[8] Gawande, A. (2009, March 30). Hellhole. *The New Yorker*.

3

assist them in addressing what they see as serious problems arising from over-reliance on long-term segregation to manage their populations.

**Project Description**

*The Vera Institute of Justice proposes to demonstrate an innovative and replicable approach to the safe reduction of prisoners held in long-term segregation* (any unit or facility, such as a control unit or supermax, where prisoners are held for weeks, months, or years and locked down at least 21 hours a day). This will be done in partnership with the Ohio DRC, Mississippi DOC, Maryland DPSCS, and Illinois DOC by building on recent innovations pioneered by Dr. Austin in the Ohio and Mississippi prison systems, which safely reduced the numbers of prisoners in long-term segregation by approximately 80%[10] and significantly changed the environment in long-term segregation in ways that lessened the isolation experienced by prisoners who remained in those units. Dr. Austin will work directly with Vera as we evaluate these successes and apply this promising approach to the Maryland and Illinois prison facilities.

**Approach**

The project will use a five-pronged approach to develop unique knowledge and demonstrate a critical innovation to the corrections field. During a three-year period:

**I.**   Vera staff will collaborate closely with Dr. Austin to formally evaluate methods and outcomes of the significant reduction of prisoners in long-term segregation by the Ohio DRC and the Mississippi DOC, based on the new classification and management approach.

**II.**   Vera staff also will conduct a comprehensive review of innovative practices in other state prisons and jails that have sought to lessen the use or mitigate the isolating effects of long-

---

[10] Ohio reduced its population in supermax confinement from roughly 800 to 100, and Mississippi reduced its population from roughly 1000 to 90.

term segregation, transition prisoners out of isolation, and repurpose space within segregation units in order to identify successful, replicable models for use in facilities nationally.

**III.**   At the same time, Vera and Dr. Austin will assess how Maryland's DPSCS and Illinois's DOC currently use long-term segregation and establish baselines on conditions in those systems.

**IV.**   Based on effective practices in Ohio, Mississippi, and elsewhere, Vera then will work with Maryland's DPSCS and Illinois's DOC to design and implement a replicable approach to reduce both states' use of isolating confinement by reducing the numbers of prisoners in long-term segregation and providing programming to prisoners who must remain in those units. This will involve the design and implementation of a classification tool modeled after those used in Ohio and Mississippi, as well as helping Maryland and Illinois to implement one or more best practice programs or strategies for prisoners in facilities who remain in long-term segregation.

**V.**   Finally, Vera will work with Maryland's DPSCS and Illinois's DOC to develop performance measures and provide technical assistance as they establish a system for collecting standardized data to evaluate the impact that reduction in their segregated population has on institutional and public safety in Maryland and Illinois, as well as on overall costs to the states. These five prongs are described below.

## I.  Evaluation – Macro Effects of Isolating Forms of Confinement on Behavior and Costs

As noted, the Ohio DRC and the Mississippi DOC have made dramatic strides in reducing the number of prisoners they hold in long-term segregation—from roughly 800 to 100 in Ohio and 1000 to 90 in Mississippi—without apparent significant negative effects, and significantly changed the environment in segregation through innovative efforts. Although the reforms in Ohio and Mississippi apparently were successful without raising levels of violence in the states' prisons, and by some accounts have reduced *both* violence and costs, these outcomes must be

formally confirmed and evaluated to provide persuasive evidence to other jurisdictions that it is possible to achieve reductions in long-term segregation and reduce overall costs without raising levels of violence in the facilities. Processes associated with successful—as well as unsuccessful—outcomes also must be rigorously documented and evaluated to adapt and replicate these approaches in other corrections systems.

Reductions in the number of prisoners in long-term segregation also may lower recidivism rates for prisoners, who otherwise would spend long periods of time in isolating conditions that damage their mental health and ability to subsequently adjust to normal social environments and interactions. This possibility also has not been evaluated. Vera will complete a comprehensive evaluation of the methods and outcomes in Ohio and Mississippi, which will include a cost-benefit analysis and tracking recidivism outcomes for prisoners who have been released.

In this part of the project, Vera research staff will work with the Ohio DRC, the Mississippi DOC, and Dr. Austin to conduct an in-depth documentation and evaluation of methods and outcomes, in order to measure the long-term effects of significant reductions in the use of long-term segregation on institutional safety, fiscal costs of incarceration, and recidivism rates.[11] Among the dimensions assessed will be: (a) the impact that the release of large numbers of prisoners from long-term segregation has had on system-wide levels of violence and other dynamics in Ohio and Mississippi prisons; (b) the impact these changes have had on fiscal costs system-wide; and (c) the impact, if any, those changes have had on individual outcomes for prisoners who were released.

---

[11] See, Lawrence, Sarah and Daniel P. Mears, "Benefit-Cost Analysis of Supermax Prisons: Critical Steps and Considerations," Urban Institute Justice Policy Center, August 2004, http://www.urban.org/publications/411047.html.  There are few examinations of the costs of supermax incarceration but this resource from the Urban Institute raises important questions that will guide our inquiry.

As part of this effort, Vera will convene an interdisciplinary focus group to include corrections professionals, researchers, and advocates from within and outside of Ohio and Mississippi to develop variables and values for a cost-benefit analysis of each state's reforms. Although the project's timeframe does not allow for the completion of a long-term recidivism study, we will put standardized data collection tools into place in order to launch a recidivism study in both Ohio and Mississippi and will be able to collect preliminary recidivism data in Ohio, which began to reduce its segregated population more than seven years ago.

Results of this evaluation will provide support to leaders in other states and counties who would like to find alternatives to large-scale reliance on segregation and isolation but who have not been confident enough of the benefits of an alternative approach. The evaluation also will inform the demonstration projects we develop for Maryland and Illinois, which will become replicable models for innovative change nationally. Vera will produce Brief Reports and publish results of this evaluation before the end of the project, and will make presentations at conferences and to other audiences as requested in order to share findings. Evaluation findings will be packaged in user-friendly formats suitable for a variety of stakeholders and target audiences and made readily accessible through web-links, announcements in trade publications, and other mechanisms.

## II.  Best Practices Review – Alternative Methods and Their Outcomes

Vera has been collecting national information informally prior to this proposal on innovative programs in segregation units designed to lessen isolation and provide opportunities for prisoners to "step down" into lower security environments. For example, the Hampden County Sheriff's Office has undertaken significant changes in its segregation unit following its review of the recommendations made in *Confronting Confinement*. Hampden County's classification staff

7

worked to reduce the number of prisoners who end up in segregation and significantly shortened the periods of time they spend there. Program and mental health staff introduced new programs, structured times to get prisoners out of their cells more and engage them in physical activity, and developed other strategies to mitigate the damage to mental health that is endemic in isolating environments.[12] Vera also has begun to study other types of alternative programming, such as those in New York and Iowa for mentally ill prisoners who are ill suited to segregation units but difficult to manage in the general population.

For this project, Vera will conduct a rigorous review of alternatives to long-term segregation nationally in order to identify best practices and supplement lessons learned through the evaluation of Ohio's and Mississippi's efforts. Vera will produce a Brief Report on its best practices review approximately 18 months into the project.

### III. and IV.  Research and Pilot Demonstration – Reducing Reliance on Isolation-Segregation in the Maryland DPSCS and the Illinois DOC

In this stage of the project, Vera will partner with both Maryland's DPSCS and Illinois's DOC to demonstrate that it is possible to *adapt and replicate* the innovations pioneered in Ohio and Mississippi to create positive change in the absence of litigation. The key aspects of this demonstration are described below.

#### Research Questions to be Answered – How Many, Who, Why, and How Long?

During the first six months of the project, while formal evaluations are being conducted in Ohio and Mississippi, Vera will begin a preliminary assessment in Maryland and Illinois to learn: (a) how many people are being held in long-term segregation, (b) characteristics of those prisoners, (c) why they are housed in long-term segregation, (d) how long they typically remain

---

[12] Conversation with Richard McCarthy, Hampden County Sheriff's Office.  Also, see, http://www.hcsdmass.org/SegHousingUnit.htm.

there, (e) what pathways are structurally available to transfer out of segregation, and (f) how those transfer pathways are utilized, and under what conditions.[13] Vera also will establish a baseline for violent incidents and other relevant measures for long-term segregation and other security levels in Maryland's and Illinois's facilities. Vera and Dr. Austin will work closely with both the Maryland DPSCS and Illinois DOC to gather administrative data, including admission and release profiles for prisoners in long-term segregation as well as on policies governing the use of long-term segregation. Once these data are gathered, Vera will conduct analyses to obtain a picture of the populations involved and of policies and procedures that will be affected by implementation of new practices.

**Development and Implementation of New Classification Instrument**

When these analyses are completed, Vera and Dr. Austin will work with Maryland DPSCS and Illinois DOC staff to develop classification criteria similar to those used in Mississippi and Ohio, tailored to Maryland's and Illinois's unique populations and needs. We will then examine the case files of every prisoner currently held in long-term segregation in each state and score them, based on new classification criteria, to develop models that identify who would be transferred and who would remain in segregation if the new classification instruments were implemented. These models will give Maryland DPSCS and Illinois DOC staff an opportunity to make adjustments to the instruments to ensure that the outcomes are appropriate and the systems can accommodate the populations that will transition out of long-term segregation. We also will

---

[13] The Illinois Department of Corrections recently conducted a review of its Closed Maximum Security Unit at the Tamms Correctional Facility, which has received a great deal of news attention due to the long terms prisoners are spending there and concerns about conditions. This project would partner Vera with the Illinois DOC in its efforts to reduce the numbers of prisoners at Tamms, reduce the lengths of stay at Tamms, and to improve conditions there.  However, the Illinois DOC has asked us to do this as part of a larger review of all of the prisoners in long-term segregation system-wide.

work with the Maryland DPSCS and Illinois DOC to help them develop policies to implement their new classification instruments. Actual implementation will begin approximately fourteen to sixteen months into the project.

### Reducing Isolating Conditions in Segregation - Implementation of Innovative Programs and Strategies

Although we expect to make significant reductions in Maryland's and Illinois's segregated populations through the implementation of the new classification instruments, this will not address all of the concerns arising from reliance on long-term segregation. If a prison system's infrastructure is designed to house a certain number of prisoners in segregation, removing prisoners from those units will inevitably create strain on other facilities or units in the system. Significantly reducing an agency's reliance on segregation requires a re-purposing of space. Perhaps more importantly, there will be a significant portion of prisoners who might be moved out of long-term segregation safely, but not without alternative interventions or some kind of transition. There also will be prisoners who must remain segregated.

When new classification criteria are agreed upon by Maryland DPSCS and Illinois DOC staff and shifts that will occur as a result become more clear (how many prisoners will be released from segregation, how many may transition out over the course of a year or more, and how many and who will remain in long-term segregation), Vera will develop recommendations for Maryland and Illinois based on Vera's comprehensive best practices review and what has been learned from the experiences of the Ohio DRC and Mississippi DOC during Prongs I and II. Vera will make these recommendations within the first eighteen months of the project.

During the project's second and third year, Vera will work with the Maryland DPSCS and Illinois DOC to accomplish one or more of the following: (a) implement strategies for repurposing segregation units, (b) develop programs to manage segregated prisoners in less

isolating environments, and/or (c) create programs and interventions to safely move prisoners out of segregation and help them succeed in the general population, depending on the characteristics and capacities of the facilities involved, types of populations, best practices in other locales, and conversations with Maryland and Illinois staff.

## V.  Data Collection and Performance Measures

Finally, Vera will work with Maryland's DPSCS and Illinois's DOC to develop a set of performance measures for the project that allows them to evaluate the impact that reductions in the segregated populations have on institutional and public safety and overall costs to the state. In this component, Vera will provide technical assistance to DPSCS and DOC research staff as they establish a system for collecting standardized data to track key performance measures.

Although proponents of segregation argue that they can show declines in violence in some systems as a result of efforts to segregate the most disruptive prisoners, ***we believe Maryland and Illinois will be able to demonstrate that alternatives to segregation can work and provide significant benefits without serious compromises in safety in jurisdictions where they are implemented thoughtfully***. The Maryland and Illinois Demonstration Projects will give us the opportunity to assess whether systems with fewer prisoners in long-term segregation are not merely "as safe as" those with large portions of the population under tight control, but safer: whether reducing the use of segregation can reduce violence and stress on staff, improve reentry outcomes and long-term recidivism rates, and also save money.

Vera's technical assistance also will help Maryland's DPSCS and Illinois's DOC to create standardized data collection instruments that track sets of performance measures over time and allow them to assess the impact of the changes they implement on (a) system-wide violence and other relevant dynamics; (b) individual prisoners and outcomes related to them, including longer-

11

term recidivism rates; and (c) costs and cost-savings associated with de-populating their long-term segregation units. During the second and third years of the project, Vera will work closely with the Maryland DPSCS and Illinois DOC to help them begin tracking these data—most of which they already collect for other purposes—and will monitor their analyses through the first 18 months of implementation of the new classification instruments.

Vera will produce a Brief Report describing initial results from these evaluations and will make initial findings more widely available at the discretion of the Maryland DPSCS, Illinois DOC, and the funder. For example, such information could be presented at relevant professional conferences and to jurisdictions interested in adapting and implementing these model approaches. Maryland's DPSCS and Illinois's DOC will be prepared to continue to evaluate their progress against the performance measures long after the project's conclusion and will be able to track the impact of the changes implemented on longer-term recidivism rates.

**Vera's Capabilities and Competencies**

Vera is in a unique position to work with Maryland's DPSCS, Illinois's DOC, as well as with the Ohio DRC and Mississippi DOC, because of the relationships that Vera and the Commission on Safety and Abuse in America's Prisons have developed with corrections administrators across the country. We also will be able to reach prisons and jails nationally to answer fundamental questions about their uses of isolation and the effects of these efforts and to report on successful alternatives. Vera staff is highly experienced in these kinds of technical assistance and research, is a trusted voice in the corrections world, and will be well positioned to encourage other jurisdictions to replicate the model approach developed and tested in Maryland and Illinois.

Throughout the project, Vera will work closely with Dr. James Austin, who has a proven track record of success in Ohio and Mississippi and an excellent reputation as someone who works well with corrections administrators and understands the immense pressures on corrections directors and the systems in which they work. We believe that his success in dramatically reducing the numbers of prisoners held in long-term segregation in Ohio and Mississippi and his willingness to help Vera adapt his classification instrument to other state systems positions us to help Maryland and Illinois significantly reduce the number of prisoners in segregation and create replicable models that can be adapted for use in many other jurisdictions.

Vera has more than forty-five years of experience conducting program evaluations and highly sophisticated research on mechanisms and outcomes in large criminal justice systems. We have also created a dedicated Cost-benefit Analysis Center at Vera, which will enhance this critical piece of the evaluation. We look forward to working with the states of Maryland, Illinois, Ohio, and Mississippi in taking advantage of this important and timely opportunity.

# Exhibit G

## IDOC Segregation Study
## Major Findings

1. The current system is based predominantly on punishment and degraded conditions of confinement, which assumes that current levels of punishment are <u>deterring</u> subsequent behavior.

2. The conduct exhibited by prisoners admitted to DS and ADS warrants sanctions, but it is not clear that the types of placement and lengths of stay are <u>proportionate</u> to prior and current negative behavior.

3. Prisoners in <u>minimum custody</u> who receive a major ticket receive DS rather than a change in custody.

4. There appears to be no formal policy standardizing wardens' authority to <u>reduce</u> the amount of time in DS for good behavior based on an agreed-upon plan with the prisoner, nor is there a structured "<u>re-entry</u>" process for prisoners returning to the general population from DS.

5. The <u>conditions of confinement</u> in DS are not acceptable with respect to recreation, showers, mental health treatment, or contacts with clinical-services staff, and are not in line with best or standard practices in other systems.

6. The use of the Step Down Program from ADS is extremely limited. In part, this <u>maintains</u> the size of the ADS population and contributes to long stays. Pontiac has achieved positive outcomes in their ADRMP Step Down Program and believes they can successfully serve more participants in the program.

7. There are <u>wide disparities</u> in depth and adequacy of services across facilities. <u>Menard and Stateville</u> both express needs for more mental health coverage, dedicated housing, space for treatment groups, services, and programming. Tamms visits also raise concerns about the availability of adequate mental health care for long-term prisoners there.

8. There is a need to <u>standardize</u> key policies and program attributes for DS and ADS across the system. This could be facilitated by policy revision, training, and requirements for uniform application.

9. The proportion of women in DS is almost twice that of men. There are also a limited number of general population beds for women after they complete DS.

10. A significant portion of the DS population has segregation time that <u>exceeds</u> their time left to serve.

11. A significant number of segregation prisoners who are <u>high-risk</u> are approaching their prison release dates.

12. There is a lack of coordination between DOC, parole supervision, and law enforcement on the <u>release</u> of high-risk prisoners from ADS/DS to the community.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Plaintiffs hereby certifies that on this 1st day of September, 2016, she caused a copy of the foregoing EXHIBIT LIST TO COMPLAINT to be served via CM/ECF to all parties and counsel of record.


DATED:  September 1, 2016          By:   /s/ Alyssa E. Ramirez
                                         One of Plaintiffs' Attorneys

                                         Alyssa E. Ramirez
                                         Winston & Strawn LLP
                                         35 W. Wacker Drive
                                         Chicago, IL 60601
                                         312-558-5600 (tel)
                                         312-558-5700 (fax)
                                         aramirez@winston.com