**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| HENRY DAVIS, DOUGLAS COLEMAN, AARON FILLMORE, JEROME JONES, DESHAWN GARDNER, and PERCELL DANSBERRY on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Case No. 3:16-cv-0600-SCW |
| Plaintiffs, | ) ) | Hon. Stephen C. Williams |
| v. | ) ) | |
| JOHN BALDWIN, Acting Director of the Illinois Department of Corrections, | ) ) ) ) | |
| Defendant. | | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR, ALTERNATIVELY, TO SEVER THE COMPLAINT**

Defendant's Motion to Dismiss or, Alternatively, to Sever the Complaint is not well-founded and should be denied. Failing to pay even lip-service to the rule that well-pleaded factual allegations must be treated as true for purposes of a Rule 12(b)(6) motion, Defendant asks the Court to draw multiple inferences in his favor, and then concludes that Plaintiffs' claims should be dismissed with prejudice. Defendant, however, is not entitled to these inferences. The facts alleged in great detail in the Complaint demonstrate that the Illinois Department of Corrections ("IDOC") frequently and capriciously imposes excessive periods of extreme isolation under horrific conditions in violation of the Constitution.

Whether under the guise of Disciplinary Segregation, Administrative Detention, or Investigative Status, IDOC's use of extreme isolation "exact[s] a terrible price" and "bring[s] [prisoners] to the *edge of madness, perhaps to madness itself*." *Davis v. Ayala*, 135 S. Ct. 2187, 2209-10 (2015) (Kennedy, J., concurring) (emphasis added). It is exactly these types of practices for which the Seventh Circuit cautioned "both prison officials and judges to be alert." *Kervin v.*

*Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (stressing the "psychological damages that [modern prison segregation] can inflict"). Defendant Baldwin and his predecessors unfortunately have not heeded these admonitions. To the contrary, they have promulgated and enforced policies that inflict unnecessary pain and mental anguish on thousands of people locked in Illinois prisons. Defendant's Motion to Dismiss or, Alternatively, to Sever the Complaint, therefore, should be denied.

## I.    FACTS

IDOC's policies and procedures routinely and arbitrarily subject prisoners to long periods of extreme isolation in violation of the constitutional mandates of the Eighth and Fourteenth Amendments. (*See* Compl. ¶¶ 212-217.) While in extreme isolation, whether in Disciplinary Segregation, Administrative Detention, or Investigative Status, IDOC's prisoners are "involuntarily confined to their cells for upwards of 22 to 24 hours a day, given only extremely limited or no opportunities for direct and normal social contact with other persons (*i.e.*, contact that is not mediated by bars, restraints, security glass or screens, and the like), and afforded extremely limited if any access to meaningful programming of any kind." (Compl. ¶ 2.) In addition to denial of almost all kinds of social interactions, IDOC places these inmates in "tiny, often windowless cases that are often smaller than even the already small general population cells." (Compl. ¶ 5.) As an additional form of torture, IDOC frequently deprives prisoners of "access to nourishment and edible food, exercise, showers, bedding, and personal effects (including their clothing)." (*Id.*) This kind of "[s]olitary confinement literally ***drives men mad***." (Compl. ¶ 20. (emphasis added).)

***Plaintiff Henry Davis.*** Henry Davis ("Davis") is currently in Disciplinary Segregation at Lawrence Correctional Center ("Lawrence"). (Compl. ¶¶ 64-65.) He previously spent more

than two years in extreme isolation after being issued a disciplinary report charging him with "allegedly holding a leadership position in an STG." (Compl. ¶ 66.) That report was subsequently expunged, yet Davis remained in Disciplinary Segregation for an additional 31 days before being transferred to Administrative Detention. (*Id.*) He did not receive any hearings or notice of the reasons why he was subjected to 31 additional days in Disciplinary Segregation and then placed in Administrative Detention. (Compl. ¶¶ 66-67.) A few months after his release from Administrative Detention, Davis received another disciplinary report for "leadership in a STG." (Compl. ¶ 68.) At the hearing for that disciplinary report, Davis was unable to call any witnesses to refute the charge against him, and he was sentenced to another six months in Disciplinary Segregation. (*Id.*)

Davis is currently locked in his cell for "23 to 24 hours a day." (Compl. ¶ 72.) Communication with neighboring inmates is near impossible due to constant noise and his cell "door [being] covered in a plexiglass." (*Id.*) He is only allowed "no contact" visits that are "limited to one hour" and "held behind a glass wall." (Compl. ¶ 69.) He is "not permitted any phone calls" and his mail is "extremely delayed." (*Id.*) Davis is "only allowed outside in the yard approximately two hours each week." (Compl. ¶ 72.) Moreover, he has been "unable to finish his G.E.D. preparation program" and has "not been permitted to attend any…religious classes or services." (Compl. ¶ 70.) Davis's "food portions in extreme isolation are very small" and his cell is "bug-ridden" and "freezing cold in the winter."

***Plaintiff Douglas Coleman.*** Douglas Coleman ("Coleman") is currently at Stateville Correctional Center ("Stateville"). Despite being confined to a wheelchair, he has endured extreme isolation sentences totaling approximately 14 months. (Compl. ¶¶ 75-76, 81.) The "hearings" that Coleman received occurred right outside of his cell. (Compl. ¶¶ 88-89.) He was

not able to call relevant witnesses, and he was quickly found guilty, despite offering an explanation for his alleged infractions. (*Id.*)

Throughout his many months in extreme isolation, Coleman was "confined to his cell approximately 24 hours a day." (Compl. ¶ 84.) Visits were "significantly decreased" and only allowed "through a thick glass wall" with "[n]o physical contact." (Compl. ¶ 86.) When allowed access to his wheelchair, Coleman was allowed yard time only "one day a week." (*Id.*) He "had little to no access to religious programs…or his psychologist or social worker." (*Id.*) With "[s]olid plexiglass cover[ing] the bars on [his] cell," he "had to scream to get anyone's attention outside of his cell." (Compl. ¶¶ 83-84.) In addition, roaches, mice, and birds infested both his cell and the surrounding unit. (Compl. ¶ 82.) His cell was also "unbearably cold" in the winter due to "broken/missing window panes." (*Id.*) At one point, "there was ice on the inside of Mr. Coleman's F-House cell wall" yet he "was not allowed to cover the broken/missing panes with a blanket." (*Id.*; *see also* Compl. ¶ 102.) He was also frequently denied access to his wheelchair and showers. (Compl. ¶¶ 85, 87; *see also* ¶¶ 91-101.)

***Plaintiff Aaron Fillmore.*** Aaron Fillmore ("Fillmore") is currently in Administrative Detention at Lawrence. He has been in extreme isolation for the "past ***17 years***." (Compl. ¶ 107 (emphasis added).) Reviews of his seemingly never-ending placement in extreme isolation, often occur without notice to Fillmore and/or without Fillmore's attendance. (Compl. ¶¶ 124-131.) For several years, Fillmore has been "locked in a tiny, dirty cell for almost 24 hours a day" and has had "little to no physical contact with other human beings." (Compl. ¶¶ 108, 112.) The size of his cell "barely gives him enough room to pace back and forth" and results in "[h]is toilet, sink, and bed [being] located within inches of one another." (Compl. ¶ 112.) His cell has "no access to natural light" as "[a] metal box covers the one and only window to his cell." (*Id.*)

There is also no air circulation because his cell is covered by "a solid steel door" and "bird feces prevents Mr. Fillmore from opening his window." (*Id.*) Moreover, Fillmore endures "constant noise" and "putrid smell[s]." (Compl. ¶¶ 112-113.) His cell is located near IDOC's "crisis cells" where mentally ill inmates "often throw feces, urine, and spoiled food or milk." (Compl. ¶ 113.) These same inmates also "constantly yell, scream, and bang on their cell doors." (*Id.*) In addition, he is allowed only "two 'no contact' visits per month…behind a glass partition" and "a maximum of one phone call per week for a maximum of third (30) minutes." (Compl. ¶ 116.) He is afforded only "an hour or two of yard time each week," which takes place in "a barren, single 'dog cage' with a concrete floor, no exercise equipment, and no games or activities of any kind." (Compl. ¶ 117.) Fillmore has had "absolutely no access to any of IDOC's programming, including educational programs" and has been "denied access to the law library," religious programs, and other personal property. (Compl. ¶¶ 118, 121.)

*Plaintiff Jerome Jones.* Jerome Jones ("Jones") is currently at Menard Correctional Center ("Menard"). He recently endured two-and-a-half years in extreme isolation at Lawrence without receiving prior notice or a hearing. (Compl. ¶¶ 133-137, 147.) In fact, it was not until approximately seven to eight months later that Jones was informed that "he was put in Administrative Detention due to his active involvement in a gang or STG." (Compl. ¶ 135.) For those two-and-a-half years, Jones was "confined to a small, dark cell almost 24 hours per day." (Compl. ¶ 138.) The "window to his cell was covered by a steel shield" and his toilet "could only be flushed in 15-minute intervals." (*Id.*) While in Administrative Detention, Jones was "only permitted 'no contact,' pre-approved two-hour visits 'as security measures allow[ed].'" (Compl. ¶ 139.) During these visits he was "shackled and chained to the floor" and could only speak to his visitor "through a glass partition." (*Id.*) He was allowed a maximum of "one 30-

minute phone call per week." (Compl. ¶ 140.) In addition, his yard time occurred in "a fenced-in concrete slab." (Compl. ¶ 141.) Jones was "not allowed to attend religious services" and even "denied religious materials." (Compl. ¶ 143.) He was also "denied access to both the general and law libraries," as well as his personal property." (Compl. ¶ 144.)

*Plaintiff Deshawn Gardner.* Deshawn Gardner ("Gardner") is currently in extreme isolation at Lawrence. (Compl. ¶ 149.) He has been in Administrative Detention for over two years "because of his [alleged] role within the Black Disciples Security Threat Group." (Compl. ¶¶ 159, 179, 181.) Gardner did not receive a hearing or any notice of the reasons for his placement in extreme isolation until approximately six to seven months after his initial placement in Investigative Status. (Compl. ¶¶ 155-159, 179.) During his time in extreme isolation, Gardner has had "no access to IDOC's rehabilitative programs…educational programs, the law library, or religious services." (Compl. ¶ 164.) He is only "allowed four visitations per month…behind glass and his hands are in chains." (Compl. ¶ 175.) He is "restricted to only three or four phone calls a month" and his yard time is "in a cage with no activities" that "reeks of urine and spit." (Compl. ¶¶ 166, 172.) In his "small, cramped cell," "[t]here is a constant stream of bugs" and Gardner's toilet "flushes at 15-minute intervals." (Compl. ¶¶ 168, 176.) Nearby, "mentally ill inmates constantly holler and scream and throw feces on the walls." (Compl. ¶ 169.)

*Plaintiff Percell Dansberry.* Percell Dansberry ("Dansberry") is currently at Menard. He suffered over two years in extreme isolation. After serving a three-month sentence in Disciplinary Segregation for "his alleged membership in an STG," Dansberry was placed in Administrative Detention without notice or a hearing. (Compl. ¶¶ 183-185.) He did not receive a hearing until five months after his initial placement and even then "IDOC continued to

withhold the reason(s) for his continued placement." (Compl. ¶ 186.) During his two years in Administrative Detention, Dansberry was locked in a "dark, cramped, and unsanitary" cell with "a solid steel door" and "metal boxes covering the windows." (Compl. ¶ 188.) His cell was so infested with "bugs, cockroaches, and mice" that he was "forced to plug the bottom of [his] cell doo[r]." (Compl. ¶ 189.) He also "stuff[ed] tissue in the cracks" of his window to prevent cold drafts from coming into his cell during the winter. (Compl. ¶ 190.) Dansberry was only allowed a handful of "no contact" visits per month and "one 30-minute phone call per week." (Compl. ¶¶ 193-194.) His yard time occurred only once or twice a week in a "fenced in cage with a concrete ground." (Compl. ¶ 187.) In addition, he was prohibited from "participat[ing] in any education opportunities" or "programming, including anger management programs, parenting classes, and communal church services." (Compl. ¶ 196.)

## II.    **APPLICABLE LEGAL STANDARD**

A Rule 12(b)(6) motion does not test the merits of a claim, but rather the sufficiency of the complaint. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations need only be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). These facts need only state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). As this Court has previously recognized, "notice pleading is still all that is required" in the wake of *Twombly*. *Currie v. Cundiff*, No. 09-866, 2012 WL 2711469, at *2 (S.D. Ill. Jul. 8, 2012) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). A plaintiff, therefore, "must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he

is entitled to relief." *Tamayo*, 526 F.3d at 1083. Moreover, when ruling on a motion to dismiss, "the District Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." *Currie*, 2012 WL 2711469, at *2.

## III.   ARGUMENT

### A.   The Claims of Plaintiffs Coleman, Fillmore, and Jones Are Not Barred by Res Judicata.

Defendant seeks to bar the claims of Coleman, Fillmore, and Jones under the doctrine of *res judicata*. The doctrine of *res judicata*, however, has no application unless the defendant demonstrates: "(1) an identity of the parties or their privies; (2) identity of the cause of action; and (3) a final judgment on the merits." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008); *see also Smith v. Potter*, 513 F.3d 781, 784 (7th Cir. 2008). Here, Defendant has failed to meet his burden.

Defendant argues that the dismissal in *Coleman,* No. 15-5596*,* N.D. Ill., precludes the claims of Coleman, Fillmore, and Jones. Defendant is mistaken. That dismissal was entered ***without prejudice***. There is no final judgment on the merits. *See Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011) ("Because the dismissal of the present suit was without prejudice, res judicata (claim preclusion) will not bar a future suit based on identical grounds."); *Am. States Ins. Co. v. Capital Associates of Jackson Cty., Inc.*, 392 F.3d 939, 940 (7th Cir. 2004) ("Dismissals without prejudice are canonically non-final."). Moreover, in § 1983 cases such as this, courts have routinely held that a dismissal without prejudice does not have a res judicata effect. *See, e.g.*, S*mith v. Mercer*, 266 F. App'x 906, 908 (11th Cir. 2008) (district court erred in applying *res judicata* to current action when prior action was dismissed without prejudice); *Smith v. Missouri Dep't of Corr.*, 207 F. App'x 736, 737 (8th Cir. 2006) (same); *Vincze v. Robinson*, 103 F. App'x 152, 153 (9th Cir. 2004) (same).

Furthermore, Defendant fails to appreciate that "[r]es judicata does not bar a suit based on claims that accrue after a previous suit was filed." *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008). "The filing of a suit does not entitle the defendant to continue or repeat the unlawful conduct with immunity from further suit." *Id.* Here, Coleman, Fillmore, and Jones all have continuing claims. (Compl. ¶¶ 105, 131, 148.) Under these circumstances, Defendant is not entitled to dismissal on *res judicata* grounds.[1]

**B.** **The Eighth and Fourteenth Amendment Claims of Plaintiffs Coleman, Jones, and Dansberry Are Not Moot.**

Defendant Baldwin argues that he is entitled to dismissal of the claims asserted by Coleman, Jones, and Dansberry on mootness grounds. Specifically, Defendant Baldwin argues that "Coleman, Jones, and Dansberry do not allege that they are currently in disciplinary segregation nor administrative detention" and "[their] failure to allege that they are currently experiencing unconstitutional conditions of confinement warrants dismissal of their claims." (Mot. at 7; *see also* Mot. at 12 (same).) Defendant again is mistaken.

Dismissal on mootness grounds is appropriate only when the defendant makes "*absolutely* clear that [Plaintiffs' placement and confinement in extreme isolation] could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (emphasis added). The Seventh Circuit has held that "[t]he burden of proving that the behavior cannot be reasonably expected to recur is a 'heavy' one that lies with the party seeking a determination that the case is moot." *Ruiz v. Adamson*, No. 10-1632, 2012 WL 832986, at *4 (N.D. Ill. Mar. 8, 2012) (citing *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658

---

[1] Defendant's reliance on cases such *Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 780 (7th Cir. 1986), *Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1073 (7th Cir. 2006), and *Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) (*see* Mot. at 17-18) is misplaced because these cases do not apply the doctrine of *res judicata* in the context of a dismissal without prejudice or in the context of plaintiffs with claims that accrued after dismissal of the prior lawsuit.

F.3d 710, 719 (7th Cir. 2011)). In *Ruiz*, for example, the Court allowed the plaintiff to proceed on his claim for equitable relief relating to the altering of his religious designation even where IDOC redesignated his membership. *Ruiz*, 2012 WL 832986, at *5; *see also Crowder v. Lariva*, No. 14-202, 2016 WL 4733539, at *6 (S.D. Ind. Sept. 12, 2016) (finding that defendant did "not sho[w] or argu[e] that the complained-of behavior might not resume"). Similarly, the D.C. Circuit recently found the voluntary cessation exception to apply where it had been years since any of the plaintiffs were housed in segregation. *See Aref v. Lynch*, No. 15-5154, 2016 WL 4409356, at *5 (D.C. Cir. Aug. 19, 2016) (noting "the likelihood of redesignation from general population to [segregation]"). Here, Plaintiffs Coleman, Jones, and Dansberry allege a likelihood of being placed back in extreme isolation.

Once again, Defendant's cases are not helpful to his cause. The first case cited by Defendant Baldwin involved the dismissal of an inmate's "request for less restrictive custody" after his release from administrative segregation. *See Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir. 1992). The Seventh Circuit in *Forbes* did not dismiss the inmate's remaining claims, which included a claim that the disciplinary hearing that he received "violated his due process rights." *Id.* at 315. In the second case cited by Defendant Baldwin, *Black v. Brown*, the district court dismissed the complaint only where "subsequently adopted prison regulations mooted plaintiff's claim for injunctive relief." 513 F.2d 652, 653-54 (7th Cir. 1975).

Here, Plaintiffs are not requesting a temporary transfer to less restrictive custody. Instead, they seek an overhaul of Defendant's extreme isolation policies. (Compl. at "Requests for Relief.") Plaintiffs Coleman, Jones, and Dansberry have not obtained this relief and, therefore, their claims are not moot. *See Aref*, 2016 WL 4409356, at *5 ("[A]ppellants are challenging the procedure used for [segregation] designation – so even if new information would

be needed to return them to the unit, they have not obtained all the relief they seek in their complaint with respect to the [segregation] designation process.") (internal quotes omitted).

Moreover, in contrast to Defendant's cases, Coleman, Jones, and Dansberry allege a risk of ongoing harm. (Compl. ¶¶ 202-208.) Specifically, they "previously spent time in extreme isolation" and "are at particular risk of being subjected to further extreme isolation sentences." (Compl. ¶ 204.) This imminent risk is demonstrated by the circumstances surrounding their time in extreme isolation. Plaintiff Coleman, for example, received two disciplinary tickets for actions associated with the ongoing effects of his stroke; effects that will most certainly continue to cause issues with IDOC's officers in the future. (Compl. ¶ 88.) Further, Plaintiff Jones was placed in Administrative Detention for gang affiliation nearly four years after formally retiring from a gang. (Compl. ¶ 136.) Prior to that he has "an almost spotless disciplinary record for almost 20 years." (Compl. ¶ 148.) Such detention likely will occur in the future based on Defendant's policy and practice of isolating even former gang members. Likewise, Plaintiff Dansberry suffered nearly two years in extreme isolation because of alleged gang membership, even though he has not been a member of a gang since 2004. (Compl. ¶¶ 183-84.) These facts sufficiently state "a substantial risk of harm." *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012); *see also Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (substantial risk of harm "directly traceable to IDOC's system-wide practice of housing non-smoking inmates with smokers").

C.      **The Claims of Plaintiffs Coleman, Jones, and Dansberry for Prospective Injunctive Relief Do Not Implicate Eleventh Amendment Concerns.**

Defendant also erroneously argues that "the Court lacks subject matter jurisdiction to award retrospective injunctive relief to Offenders Coleman, Jones, and Dansberry in relation to their former placements in segregation and administrative detention." (Mot. at 16.) The cases

cited by Defendant Baldwin, however, involved challenges to policies that had been formally amended or no longer existed. *See Green v. Mansour*, 474 U.S. 64, 69 (1985) (noting formal amendments to the federal program); *Al-Amin v. Gramley*, 926 F.2d 680, 688 (7th Cir. 1991) (concluding that based on a fully-developed record, there was "no justification for the entry of injunctive relief that transcended even the constitutional violations found"). Here, Plaintiffs' Complaint challenges IDOC's *current* policies and procedures. These policies and procedures, as authorized by current IDOC regulations, cause present and ongoing constitutional violations. (Compl. ¶¶ 45-60, 212-217.) Defendant Baldwin has not established through a fully-developed record that the accused policies and procedures have been formally amended or officially changed in any respect. Therefore, the Defendant's jurisdictional concerns have no basis. *See Scoby v. Neal*, 734 F. Supp. 837, 840 (C.D. Ill. 1990) (finding no sovereign immunity concerns where "the invalid strip searches are capable of repetition" and where "the state has not changed its unconstitutional policy").

> **D. Plaintiffs Have Stated a Claim For Cruel and Unusual Punishment Under the Eighth Amendment.**
>
> > 1. Plaintiffs' Conditions of Extreme Isolation Constitute a Serious Deprivation of Basic Human Needs.

Defendant seeks dismissal of Plaintiffs' Eighth Amendment claims because "Plaintiffs' allegations...do not rise to the level of being objectively serious." (Mot. at 8.) Defendant is plainly wrong. Many courts have sustained claims for deprivation of basic human needs based on conditions similar to those alleged by Plaintiffs. *See*, *e.g.*, *French v. Owens*, 777 F.2d 1250, 1251-55 (7th Cir. 1985) (finding claim where the inmates were double-celled "up to 20 to 23 hours per day" in "dirty and odorous" cells with poor air circulation and lighting); *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (finding claim where prisoners are "confined in a cell at so low a temperature as to cause severe discomfort"); *Delaney v. DeTella*, 256 F.3d 679, 683

(7th Cir. 2001) (finding exercise to be "a necessary requirement for physical and mental well-being"); *Bentz v. Hardy*, 638 Fed. App'x 535, 536-37 (7th Cir. 2016) (finding claim where prisoner was confined in a cell with a cracked window that let in the cold and rain, an infestation of cockroaches and earwigs, and general "filth"); *Allah v. Bartkowski*, 574 Fed. App'x 135, 138-139 (3d Cir. 2014) (finding claim where prisoner was "allowed a 10-minute shower every day and a 90-minute yard period every second or third day" and "confined to a small cell in a cell block that held mentally ill inmates who banged and kicked on the cell doors throughout the day…[and] smelled of urine and excrement"); *Ashker v. Brown*, No. 09-5796, 2013 WL 1435148, at *5 (N.D. Cal. Apr. 9, 2013) (finding claim where prisoner suffered prolonged social isolation and lack of environmental stimuli for at least 11 years). And this Court in *Sanders v. Justice* recently found "the denial of cleaning supplies, exposure to contaminated food, and a two-year denial of exercise opportunities" to "satisfy the objective component of Plaintiff's [Eighth Amendment] claims." No. 15-0142, 2015 WL 1228830, at *3 (S.D. Ill. Mar. 16, 2015); *see also Crouch v. Wooley*, No. 15-01372, 2016 WL 192650, at * 7 (S.D. Ill. Jan. 15, 2016).

Here, the facts alleged by Plaintiffs give rise to constitutional concerns at least as serious as those recognized in the cases cited above.[2] All six Plaintiffs have been locked in cramped, filthy cells for almost 24 hours a day. (Compl. ¶¶ 71-72, 84, 112, 138, 168, 188.) Their cells are infested with bugs and rodents (including their excrements). (Compl. ¶¶ 71, 82, 84, 112, 169, 176, 189.) Exposed to the constant smell of urine and feces from neighboring mentally ill inmates, Plaintiffs are given little to no cleaning supplies. (Compl. ¶¶ 113, 169, 189.) Their toilets, which are located right next to their beds, only flush according to a timer. (Compl. ¶¶ 84,

---

[2] Moreover, even if these conditions, standing alone, are insufficient to raise serious constitutional concerns, federal courts have found extreme isolation alone to warrant scrutiny under the Eighth Amendment. *See*, *e.g.*, *Ashker v. Brown*, No. 09-5796, 2013 WL 1435148, at *5 (N.D. Cal. Apr. 9, 2013); *Wilkerson v. Stadler*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007); *Shoatz v. Wetzel*, No. 13-0657, 2014 WL 294988, at *4 (W.D. Penn. Jan. 27, 2014).

112, 168.) Showers and personal property are also habitually denied. (Compl. ¶¶ 85, 87, 103, 118, 196.) Although not providing natural light or air circulation, the windows in Plaintiffs' cells frequently expose them to the harsh temperatures of Illinois winters. (Compl. ¶¶ 72, 102, 112, 190-91.) Under these harsh conditions, Plaintiffs are denied meaningful human contact, yard time, and access to IDOC's programming. (Compl. ¶¶ 69-70, 86, 116-17, 139-41, 143-44, 164, 171-72, 175, 187, 193-96.) Double-celling in these circumstances only adds to Plaintiffs' daily despair and aggravation. (Compl. ¶¶ 21, 83, 120, 142, 162, 177, 197.) As a result, Plaintiffs suffer from various physical and mental ailments including depression, anxiety, paranoia, anger issues, allergies, sleep deprivation, severe headaches, and weight loss. (Compl. ¶¶ 105, 113, 119, 122, 145, 173, 198.)

Defendant's reliance on the Supreme Court's decision in *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005), is misplaced. (Mot. at 10.) As Defendant readily concedes, the Eighth Amendment claims in *Wilkinson* were "resolved, or withdrawn, by settlement in an early phase of th[e] case." (Mot. at 10.) Moreover, Plaintiffs' current claims, which have not been settled, mirror those brought in *Wilkinson*. (Compl. ¶¶ 69 (no contact visits), 84 (solid plexiglass door), 112 (solid steel door), 116, 131 (indefinite isolation), 138-39 (steel door and no contact visits), 175 (no contact visits), 188 (solid steel door).) In other respects, the conditions alleged by Plaintiffs here are worse than those in *Wilkinson* because Plaintiffs are not allowed an hour of recreation time *every day*. (Compl. ¶¶ 72 (only once or twice a week), 86 (one day a week), 117 (one to two hours per week), 141, 172, 187.) Additionally, Plaintiffs' "yard" consists of a fenced-in concrete slab with zero activities and no room to run. (*Id.*)

In addition, Defendant's argument that "Plaintiffs have not alleged that the Director has disregarded these conditions, or that the policies and customs he allegedly enforces have

plausibly sanctioned these conditions" is belied by the facts alleged in Plaintiffs' Complaint and undermined by established case law. (Mot. at 11.) Plaintiffs allege not only that they filed countless grievances ignored by Defendant (Compl. ¶¶ 66-68, 90-104, 123-28, 134-37, 178-80, 200-201), but also that Defendant has statistical data and studies in his possession that show the "unnecessary pain" and "unjustified risk of harm" caused by "arbitrary, inconsistent, and grossly disproportionate extreme isolation sentences." (Compl. ¶¶ 56-58.) Despite this knowledge and with full authority, Defendant has refused to revamp IDOC's policies pertaining to extreme isolation. This conduct evidences deliberate indifference. *See Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) ("Deliberate indifference can be established by inference from circumstantial evidence, including evidence that the risk was so obvious that a jury may reasonably infer actual knowledge on the part of the defendants."); *see also Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Williams v. Schueler*, 436 Fed. App'x 687, 689-90 (7th Cir. 2011); *Arrieta v. Lemke*, No. 15-2576, 2016 WL 3227301, at *3 (N.D. Ill. Jun. 13, 2016).

2. Plaintiffs Have Suffered Disproportionate Punishment.

In addition to a conditions of confinement claim, Plaintiffs allege that extreme isolation is disproportionate punishment for the violation of often minor internal IDOC rules. The Eighth Amendment's mandate prohibits prison officials from meting out seriously disproportionate punishments for violations of prison rules. *See Adams v. Carlson*, 488 F.2d 619, 635-36 (7th Cir. 1973). When determining whether a prison's disciplinary measures are disproportionate to the alleged infraction, courts consider "the circumstances surrounding the segregation decision, including, first, the circumstances surrounding the offense, second, the prisoner's disciplinary record, and, third, the offense for which [the inmate] originally was incarcerated." *Maydun v. Franzen*, 704 F.2d 954, 961 (7th Cir. 1983) (internal quotes omitted).

Here, Plaintiffs have alleged periods of extreme isolation that are grossly disproportionate

to the underlying violation. All six Plaintiffs suffered many months, in some cases multiple years, of extreme isolation for unsubstantiated, nonviolent offenses. (Compl. ¶¶ 68, 81, 88, 129, 135-36, 179, 183.) Plaintiff Coleman, for example, endured a total of eight months in extreme isolation for possession of alcohol, falling in the shower, and dropping a pitcher. (Compl. ¶¶ 81, 88.) This sentence was imposed even though Coleman was confined to a wheelchair. (Compl. ¶¶ 80, 85.) These allegations sufficiently state a claim of disproportionate punishment.[3] *See Chapman v. Pickett*, 586 F.2d 22, 28 (7th Cir. 1978) (seven months in segregation was manifestly disproportionate); *Black v. Brown*, 524 F. Supp. 856, 858 (N.D. Ill. 1981) (18 months of isolation was grossly disproportionate); *Westefer v. Snyder*, 725 F. Supp. 2d 735, 752 (S.D. Ill. 2010) (stressing the continuing "psychic toll" caused by extreme isolation), vacated and remanded on different grounds by *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012).

E.    **Defendant's Use of Extreme Isolation Violates Plaintiffs' Due Process Rights Under the Fourteenth Amendment.**

Plaintiffs have also stated a claim under the Fourteenth Amendment for violations of their due process rights. Defendant argues "Plaintiffs do not have a liberty interest in avoiding segregation." While that may be generally true, it is equally true that a Fourteenth Amendment claim arises when extreme isolation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In making this determination, courts should "analyz[e] the *combined* import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis added); *see also Toston v. Thurmer*, 689 F.3d 828, 832 (7th Cir. 2012) (vacating dismissal of plaintiff's due process

---

[3] Notably, international authorities consider any term of isolation longer than 15 days to constitute torture. (Compl. ¶ 29.) Similarly, the United Nations' Standard Minimum Rules for the Treatment of Prisoners limit the use of extreme isolation for greater than 15 days to extreme circumstances, and even then, only under the supervision of a health care professional. (Compl. ¶ 30.)

claims). The Seventh Circuit recently cautioned against the imposition of a time minimum when analyzing a prisoner's due process rights. *See Kervin*, 787 F.3d at 836 (finding error in the imposition of a time minimum). In doing so, the Court stated that "[s]ix months is not an apt presumptive minimum for establishing a violation" and "[j]udges who lean toward such a presumption may be unfamiliar with the nature of modern prison segregation and the psychological damage that it can inflict." *Id.* at 837; *see also Arrieta*, 2016 WL 3227301, at *3 (warning against "a rigid focus on the mere length of confinement at the pleadings stage"). Furthermore, "a liberty interest may arise" regardless of whether it is "imposed for administrative, protective, or investigative purposes." *Marion*, 559 F.3d at 697-98; *see also*, *Arrieta*, 2016 WL 3227301, at *3 (finding a liberty interest where plaintiff spent two-and-a-half years in administrative detention); *Wilkerson v. Goodwin*, 774 F.3d 845, 852 (5th Cir. 2014) ("The Supreme Court never indicated that the liberty interest analysis was different when addressing…administrative custodial determination, as opposed to a punitive disciplinary action"); *Fludd v. Fischer*, 568 Fed. App'x 70, 72-73 (2d Cir. 2014) (Summary Order) (finding "administrative segregation status" to implicate a liberty interest).

Here, Plaintiffs have alleged a protectable liberty interest in avoiding extreme isolation. All six plaintiffs have spent at least six months in extreme isolation.[4] (Compl. ¶¶ 65-68 (two-and-a-half years), 81 (more than one year), 107 (17 years), 147 (two-and-a-half years), 155 (two-and-a-half years), 183 (two years).) Indeed, most of them have endured multiple *years* of extreme isolation. (*Id.*) Remarkably, Plaintiff Fillmore has continuously been subjected to

---

[4] Aggregation of periods of confinement is appropriate where the multiple periods "were based on the same administrative rationale" and "the conditions of…confinement were, for all practical purposes, identical." *Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001); *see also Kervin*, 787 F.3d at 836 (finding error where the district court judge "fail[ed] to assess the aggregate punishments inflicted"); *Wilkerson*, 774 F.3d at 857 (noting that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands") (citing *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976)).

extreme isolation for almost two decades. (Compl. ¶ 107.) During that time, Plaintiffs had absolutely no access to IDOC's programming. (Compl. ¶¶ 70, 118, 143, 164, 196.) They were only allowed "no contact" visits and limited telephone calls. (Compl. ¶¶ 69, 86, 116, 139, 193.) Their yard time was spent on a fenced-in concrete slab and limited to once or twice a week for a couple of hours total. (Compl. ¶¶ 72, 86, 117, 141, 172, 187.) Prohibited from all meaningful activities, Plaintiffs were forced to remain in their infested, cramped cells, exposed to putrid smells and harsh Illinois winters. (Compl. ¶¶ 71, 82, 84, 112-13, 138, 169, 188-91.) These conditions for these long periods of time imposed an "atypical and significant hardship" on Plaintiffs compared to the general population. *See Westefer v. Snyder*, 422 F.3d 570, 589-90 (7th Cir. 2005).

Having established a protectable liberty interest, Plaintiffs have also adequately alleged that IDOC's policies and procedures, both on their face and as applied, inadequately safeguard that interest. As Defendant admits, due process requires at the very least "(1) written notice of the charge against the prisoner at least twenty-four hours in advance of the hearing; (2) the opportunity to appear in person before an impartial tribunal; (3) the opportunity to call witnesses and to present physical and documentary evidence; and (4) a written statement of the fact-finder of the evidence relied on and the reasons for the disciplinary action." (Mot. at 13; *see also Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) ("Due process requires that [an inmate] receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decision-maker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken.").

Plaintiffs have alleged numerous ways that Defendant has failed to provide minimal due process protections. Davis, for example, was placed in Administrative Detention for six months

without any advanced notice or opportunity to appear in person at an impartial hearing. (Compl. ¶¶ 66-67.) Nor did IDOC provide him with the reason for his placement. (Compl. ¶ 67.) In addition, Davis was arbitrarily held in Disciplinary Segregation for 31 days without explanation. (Compl. ¶ 66.) The remaining Plaintiffs suffered similar abuses, including lack of advanced or detailed notice of the reasons for their placement (Compl. ¶¶ 131, 133-35, 155-59, 185-86) and "sham" hearings (Compl. ¶¶ 88-89, 124, 130, 179). Drawing all reasonable inferences in Plaintiffs' favor, these facts allege valid claims arising out of IDOC's policies and procedures.

In addition, Plaintiffs have alleged a clear nexus between these violations and the policies and procedures that are authorized and maintained by Defendant Baldwin. Plaintiffs' Complaint details IDOC's policies and procedures relating to the various types of extreme isolation. (Compl. ¶¶ 33-44.) Plaintiffs clearly state how these policies and procedures deprive them, as well as the class, of due process. (Compl. ¶¶ 45-53.) For instance, Plaintiffs allege that "IDOC's policies permit and encourage extreme isolation sentences for behavior that demonstrates no risk of harm to the general prisoner population or to IDOC's employees." (Compl. ¶ 45.) Plaintiff Coleman's extreme isolation for six months because he allegedly possessed alcohol is but one example of the unconstitutional application of Defendant's policies. (Compl. ¶ 81.)

### F. Defendant's Request for Severance Should Be Denied.

Finally, Defendant Baldwin mistakenly argues that Plaintiffs' claims should be severed because "the allegations asserted against the Director are not premised upon a single, centralized claim against him." (Mot. at 17.) Notwithstanding Defendant's argument to the contrary, Fed. R. Civ. P. 20 is not so narrow. Rule 20 allows joinder when the plaintiffs "jointly" seek relief "(A)…with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Here, Plaintiffs jointly seek relief through the mechanism of

Rule 23 class treatment. And, their claims arise out of the same series of transactions or occurrences, namely repeated extreme isolation, and their claims raise a common question of fact or law, specifically whether Defendants' policies and procedures that allow such repeated extreme isolation contravene constitutional norms. (Compl. ¶¶ 209-17.)

Under these circumstances, joinder is plainly proper under Rule 20(a)(1). As stated in *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 744 (N.D. Ill. 2007), in denying a motion to sever in a class action case:

> [Defendant's] argument [for severance] is really an argument about the appropriateness of class certification, which is not the issue before [the court]. The standard for permissive joinder under Rule 20 is liberal; it requires only that [Plaintiffs] have (a) a right to relief arising from a single occurrence or series of occurrences and (2) a single common question of law or fact.

(internal citations omitted).

Furthermore, "[f]ederal policy favors joinder, as the purpose of Rule 20 is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Smith v. Ne. Ill. Univ.*, No. 98-3555, 2002 WL 377725, at *1-3 (N.D. Ill. Feb. 28, 2002) (internal citations omitted) (denying motion to sever); *see also U.S. ex rel. Finks v. Huda*, 205 F.R.D. 225, 228-29 (S.D. Ill. 2001) (same). To the extent that different policies or procedures govern IDOC's different facilities (as Defendant seems to suggest), this Court may later consider dividing the class into subclasses pursuant to Rule 23(c)(5). *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 368-69 (7th Cir. 2012). At this time, however, class certification is premature and severance of Plaintiffs' claims is contrary to the policy goals of Rule 20, Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Defendant's Motion to Dismiss or, Alternatively, to Sever the Complaint.

DATED: October 3, 2016                    Respectfully Submitted,


By:    /s/ Kimball R. Anderson
       Counsel for Plaintiffs

       Kimball R. Anderson
       Alyssa E. Ramirez (admitted *pro hac vice*)
       Joanna F. Cornwell (admitted *pro hac vice*)
       Winston & Strawn LLP
       35 W. Wacker Drive
       Chicago, IL 60601
       312-558-5600 (tel)
       312-558-5700 (fax)
       kanderso@winston.com
       aramirez@winston.com
       jcornwell@winston.com

       Alan S. Mills
       Uptown People's Law Center
       4413 North Sheridan Road
       Chicago, IL 60640
       773-769-1411 (tel)
       773-769-2224 (fax)
       alan@uplcchicago.org

<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned counsel for Plaintiffs hereby certifies that on this 3rd day of October, 2016, he caused a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO SEVER THE COMPLAINT to be served via CM/ECF to all parties and counsel of record.


DATED: October 3, 2016         By:   /s/ Kimball R. Anderson
                                    One of Plaintiffs' Attorneys

                                    Kimball R. Anderson
                                    Winston & Strawn LLP
                                    35 W. Wacker Drive
                                    Chicago, IL 60601
                                    312-558-5600 (tel)
                                    312-558-5700 (fax)
                                    kanderso@winston.com