IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HENRY DAVIS, DOUGLAS COLEMAN, )
AARON FILLMORE, JEROME JONES, )
DESHAWN GARDNER, and PERCELL )
DANSBERRY, )
                                           ) Case No. 16-cv-600-SCW
                Plaintiff, )
                                           )
vs. )
                                           )
JOHN BALDWIN, )

                Defendants.

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

On June 2, 2016, Plaintiffs Henry Davis, Douglas Coleman, Aaron Fillmore, Jerome Jones, Deshawn Gardner, and Percell Dansberry filed a class action complaint for declaratory and injunctive relief, alleging unconstitutional conditions of confinement resulting from what they characterize as "extreme isolation" during their times in extended segregation and for due process violations associated with their placement in segregation. This matter is before the Court on Defendant John Baldwin's motion to dismiss (Docs. 22 and 23). Plaintiffs have filed a response (Doc. 31) in opposition to the motion. Defendant has filed a reply (Doc. 36). Based on the following, the Court **DENIES** Defendant's motion to dismiss.

**FACTUAL BACKGROUND**

Plaintiffs filed their purported class action complaint on June 2, 2016 seeking declaratory and injunctive relief for conditions of confinement, including deprivation of basic human needs and disproportionate punishment by placement in "extreme isolation" sentences in segregation. Plaintiffs also allege that their placement in segregation violated the due process clause. The five individual purported class representatives are all currently serving time in IDOC prisons. Some of the five are currently in segregation while the others were previously in segregation and, as Plaintiffs' complaint alleges, are at risk of being placed back in segregation given their backgrounds and reasons for being placed in segregation initially.

Plaintiff Henry Davis is currently serving time in segregation at Lawrence Correctional Center (Doc. 1, p. 5). Davis was previously sentenced to six months disciplinary segregation for alleged gang leadership (that sentence was later expunged) and, at the time of the filing of the complaint, was serving an additional six month sentence for gang leadership (*Id*. at p. 5-6). Defendant notes in his motion that Davis' segregation term was set to end on September 11, 2016. Davis alleges that he has been in some form of "extreme isolation" on various occasions since 2011 (*Id*. at p. 23-25) and during his time in disciplinary segregation he was subject to limited, no contact visits and had limitations placed on his phone calls, delays with his mail, interruption of his GED program, was unable to participate in religious activities and courses, and was only provided access to a law library that contained torn and tattered books and no inmate

helpers (*Id*. at p. 25). While in disciplinary segregation he was subjected to smaller food portions, cells with bugs and freezing cold temperatures, and an inability to visit the commissary (*Id*. at p. 26). He spends 23 to 24 hours a day in his cell and for the majority of the time he has been single celled. He is unable to communicate with individuals outside of the cell and the addition of an air-blowing machine makes any communication difficult (*Id*.). He is only allowed access to a yard for two hours each week, usually on the same day (*Id*.).

Plaintiff Douglas Coleman is currently housed in "X house" in Stateville Correctional Center and has been subject to approximately fourteen months of disciplinary segregation (Doc. 1, p. 26-27). While in various disciplinary segregations, his cells were filthy, sometimes infected with bugs and rodents, he had little air circulation, and his food portions were smaller (*Id*. at p. 27-28). He was only permitted yard privileges once a week (*Id*. at p. 27). In the winter months, the cells were extremely cold and his cell in F-House segregation at Stateville had a broken window pane, allowing additional cold air into his cell (*Id*. at p. 28). Coleman had little communication with other inmates, was confined for twenty-four hours a day, and at one point was housed with a mentally ill inmate (*Id*. at p. 28-29). While in F-House, Plaintiff, who suffered from a stroke and is confined to a wheelchair, was denied use of his wheelchair (*Id*. at p. 29). Plaintiff had limited yard privileges and was unable to access the yard many times due to being denied a wheelchair, was not allowed phone calls, and had little access to programs including religious and psychological services (*Id*.

at p. 30). He was subject to no contact visits (*Id.*).

Plaintiff Aaron Fillmore is currently incarcerated at Lawrence Correctional Center and has been in various forms of segregation for the past seventeen years (Doc. 1, p. 38). Plaintiff Fillmore originally spent approximately five years in disciplinary segregation at Tamms Correctional Center (*Id.* at p. 39). When Tamms closed, Plaintiff was transferred to Lawrence Correctional Center, where he remains in isolation almost twenty-four hours a day (*Id.*). Plaintiff has no access to natural light, his one window is covered by a metal box, and a large amount of bird feces is directly outside the window preventing him from opening the window to allow air circulation (*Id.*). The constant noise outside the cell makes it difficult to communicate with any other inmates on the wing (*Id.* at p. 40). Plaintiff rarely leaves his cell, only for meetings with his attorneys, an annual tuberculosis vaccination, and a weekly ten-minute shower (*Id.*). Plaintiff only is allowed two no contact visits a month and in disciplinary segregation he is not allowed to make phone calls (*Id.*). In administrative segregation he is only allowed one, thirty-minute phone call per week (*Id.* at p. 40-41). Fillmore alleges that he is only allowed one or two hours of yard each week and the yard consists of a barren concrete floor with no equipment, games, or activities (*Id.* at p. 41). He has no access to programs at the prison, including education programs, and he has been denied access to reading materials from the library as well as access to his personal property (*Id.*). Fillmore alleges that he is not allowed to present evidence or call witnesses when he is charged with disciplinary actions which cause him to be placed in segregation and that

he is subject to "sham hearings" (*Id*. at p. 43).

Plaintiff Jerome Jones is currently incarcerated at Menard Correctional Center. While at Stateville and Lawrence Correctional Centers in 2013 through 2015, Plaintiff was placed in administrative detention for having involvement in a gang or STG (Doc. 1, p. 46). Although he was told the segregation was for "non-disciplinary" purposes, he had many rights and privileges that are afforded general population inmates taken away from him (*Id*. at p. 47). He was confined to a dark cell for almost 24 hours a day, his toilet was on a timer, and he was completely isolated from general population, including being served meals in his cell (*Id*.). The portion size of his meals was smaller than those served in general population (*Id*.). Jones only was permitted no contact two-hours visits while in administrative detention and his phone privileges were limited (*Id*. at p. 47-48). Plaintiff received access to the yard only three times a week and "yard" consisted of a concrete slab with no access to weights, phone, or other materials and activities (*Id*. at p. 48). He shared his small cell with a second inmate for almost a year (*Id*.). He was not allowed to attend religious services, was denied religious materials, denied access to the general and law libraries, and denied access to his personal property (*Id*. at p. 48-49). Jones was released from administrative detention on February 3, 2016 but fears being arbitrarily placed back in isolation (*Id*. at p. 49).

Plaintiff DeShawn Gardner is currently housed in administration detention at Lawrence Correctional Center (Doc. 1, p. 49-50). He was initially housed at Tamms Correctional Center from 2006 to 2012 and was transferred to Menard Correctional

Center in 2012 (*Id*. at p. 50). Plaintiff, while at Stateville Correctional Center, was placed in investigative status on November 19, 2013 and did not receive a disciplinary ticket or told the reason for his placement in investigation (*Id*.). He was transferred to Lawrence Correctional Center twenty-six days later and placed in administrative detention (*Id*. at p. 51). Plaintiff remains in administrative detention, although he has progressed from Phase I to Phase III allowing him additional privileges than what are allowed in Phases I and II (*Id*. at p. 51). In Phase III Plaintiff has no access to rehabilitative programs, educational programs, the law library, or religious services (*Id*.). He has restricted phone privileges and his mail access is delayed (*Id*. at p. 51-52). He is housed in a small cell, with toilets that are on a timer, and housed near the mentally ill wing where inmates scream and throw feces (*Id*. at p. 52). He has limited communications with inmates outside of his cell (*Id*.). He is limited to yard privileges which consist of two hour, three times a week access to a cage that contains no activities (*Id*.). His meal portions are smaller than general population and he is only allowed four no contact visits a month (*Id*.).

Plaintiff Percell Dansberry is currently housed at Menard Correctional Center (Doc. 1, p. 54). In August 2013, Dansberry was sentenced to three months in disciplinary segregation while at Pontiac Correctional Center for membership in an STG. He was transferred to Menard Correctional Center on December 4, 2013 and placed in administrative detention where he remained for two years until November 2015 (*Id*.). Dansberry alleges that he did not receive notice prior to his placement in administrative

detention or notice of any charges against him (*Id.*). He alleges that he has never been provided a reason for his placement in administrative detention during the two years he was housed there (*Id.*). He was granted an informal hearing in April 2014 but was never given a reason for his continued placement; he was only told he was being kept in administrative detention (*Id.* at p. 54-55). While in administrative segregation, he was treated the same as disciplinary segregation inmates (*Id.* at p. 55). He was only given access to a barren yard once per week for five hours (*Id.*). In Phase II and III he was only allowed access to the yard twice a week (*Id.*). Most of the cells had metal boxes covering the windows and the doors were solid steel with only a chuck hole and small window (*Id.*). He was only given one small cup of watered-down disinfectant to clean his cell and the cell was infested with bugs and rodents (*Id.*). The cell was drafty in winter and in the summer was very hot and had little air circulation (*Id.* at p. 55-56). The food portions were smaller than general population (*Id.* at p. 56). His visits were limited; he was only allowed two 1-hour visits per month in Phase I, three 2-hour visits in Phase II, and five 2-hour visits in Phase III, all of which were no contact visits (*Id.*). He was permitted only one 30-minute phone call per week (*Id.*). In Phase I, Plaintiff also lost his audio-visual privileges and he could not participate in any educational and religious opportunities or other IDOC programming during his entire stay in administrative detention (*Id.* at p. 56-57).

      Defendant has filed a motion to dismiss seeking to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant initially argued that

the claims filed by Coleman, Fillmore, and Jones were barred by the doctrine of *res judicata* but has since withdrawn that argument (*See* Doc. 36). Defendant, however, continues to argue that Plaintiffs have failed to statement a claim for unconstitutional conditions of confinement and due process. Defendant also argues that the claims of Coleman, Jones, and Dansberry are moot as they are not currently in disciplinary segregation or administrative detention and that the there is no jurisdiction to award injunctive relief as they are not currently confined to any type of segregation or detention. Defendant also argues that Plaintiffs Davis, Fillmore, and Gardener possess no liberty interest in avoiding placement in administrative detention. In the alternative, Defendant seeks to sever the Plaintiffs' claims.

## LEGAL STANDARDS

Defendant brings his motion pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, **910 F.2d 1510, 1520 (7th Cir. 1990).** In assessing a complaint or count under Rule 12(b)(6), the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *Tricontinental Indus., Ltd. v. PriceWaterhouseCooper, LLP*, **475 F.3d 824, 833 (7th Cir. 2007);** *Marshall v. Knight*, **445 F.3d 965, 969 (7th Cir. 2006);** *Corcoran v. Chicago Park Dist.*, **875 F.2d 609, 611 (7th Cir. 1989).** Courts must determine whether the factual allegations in a complaint plausibly suggest an entitlement to relief. *Munson v. Gaetz*, **673 F.3d 630, 633 (7th Cir. 2012) (citing** *Ashcroft v. Iqbal*, **556 U.S. 662, 681 (2009)).**

Dismissal is warranted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago*, **670 F.3d 810, 813 (7th Cir. 2012) (quoting** *Thomas v. Guardsmark, Inc.*, **381 F.3d 701, 704 (7th Cir. 2004)).** For purposes of a Rule 12(b)(6) motion, the allegations of a *pro se* complaint, which this case was originally filed as, are to be liberally construed. *See Haines v. Kerner*, **404 U.S. 519, 520–21 (1972);** *Kaba v. Stepp*, **458 F.3d 678, 681 (7th Cir. 2006);** *Jones v. Phipps*, **39 F.3d 158, 162 (7th Cir. 1994).**

ANALYSIS

A. **Conditions of Confinement**

Defendant argues that Plaintiffs' complaint fails to state a claim for unconstitutional conditions of confinement. Specifically, Defendant argues that Plaintiffs fail to allege that their placement in segregation or detention deprives them of basic human needs or that Baldwin was aware of the issues alleged by Plaintiffs.

The Eighth Amendment requires a minimum standard for treatment of prisoners including that prisoners are provided with humane conditions of confinement. *Farmer v. Brennan*, **511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing** *Helling v. McKinney*, **509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)).** Inmates must be provided with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. **(citations omitted).** In order to succeed on a claim for inhumane conditions of confinement, an inmate must establish: (1) that he was housed under conditions that were "'sufficiently serious' so

that 'a [jail] official's act or omission results in the denial of the minimal civilized measure of life's necessities'", and (2) the defendant was deliberately indifferent to that risk. *See Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008);** *Grieveson v. Anderson*, **538 F.3d 763, 775 (7th Cir. 2008).** In order to prove deliberate indifferent, the plaintiff must show that the officials actually knew of the condition but refused to take reasonable steps to resolve it. *Townsend*, **522 F.3d at 773;** *Grieveson*, **538 F.3d at 775.**

Here, the Court finds that Plaintiffs have stated a claim for unconstitutional conditions of confinement. Defendant argues that Plaintiffs have not alleged that being subject to "extreme isolation" deprived them of their basic needs and cites to ***Wilkinson v. Austin,* 545. U.S. 209, 214, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)** to support his position. Defendant notes that the Supreme Court in *Wilkinson* found that inmates in Ohio's supermax prison were deprived of environmental and sensory stimuli and human contact, noting that the "cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area [and] [o]pportunities for visitation are rare and in all events are conducted through glass walls." *Wilkinson*, **545 U.S. at 214, 125 S.Ct. 2384, 162 L.Ed.2d 174.** All true. However, *Wilkinson* did not deal with 8th Amendment claims and it therefore does not control this Court's analysis. *Wilkinson*, **545 U.S. at 218, 125 S.Ct. 2384, 162 L.Ed.2d 174.** Nevertheless, the allegations raised in Plaintiffs' complaint are very similar to those Defendant points to in *Wilkinson*. Plaintiffs allege that they were housed in small

cells behind a solid steel door with only a chuck hole and a small window, making communication with inmates outside the cell difficult. Windows to the outside were often covered with a metal box. The named Plaintiffs were provided with limited opportunities to have outside visitation and even then, they were only allowed no contact visits with family. They were provided with limited access to the yard, only once or twice a week or one to two hours a week and the "yard" was a barren concrete slab with no access to recreational activities. They also allege that they were provided with smaller meal portions, exposed to bugs, rodents and other vermin, and exposed to harsh temperatures. The Court finds that these allegations certainly establish the denial of the "minimal civilized measure of life's necessities." *See Townsend*, **522 F.3d at 773.** *See also Delaney v. DeTella*, **256 F.3d 679, 683-84 (7th Cir. 2001)(deprivation of exercise);** *Gray v. Hardy*, **826 F.3d 1000, 1005-1006 (7th Cir. 2016) (cell infested with roaches and birds flying in through broken window).**

The Court, additionally, finds that Plaintiffs have adequately alleged the requisite state of mind for Defendant Baldwin. As Plaintiffs point out, their complaint alleges that Plaintiffs filed numerous grievances which were reviewed by Baldwin. Further, Plaintiffs allege that Defendant had studies and data in his possession showing that IDOC's policies regarding segregation and detention caused "pain, suffering, mental deterioration, and physical injury." (Doc. 1, p. 21). Thus, the Court finds that Plaintiffs' complaint adequately alleges deliberate indifference on Baldwin's part. As such, the Court **DENIES** Defendant's motion to dismiss.

## B. Due Process

In raising a procedural due process claim, an inmate must show that "(1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1052 (7th Cir. 1994)). "An essential component of a procedural due process claim is a protected property or liberty interest." *Domka v. Portage Cnty, Wis.*, 523 F.3d 776, 779 (7th Cir. 2008) (internal citations omitted). It is well-established that a transfer from one prison to another with more adverse conditions of confinement generally does not affect a protected liberty interest. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2543, 49 L.Ed.2d 451 (1976). A protected liberty interest arises only if the transfer "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223, 125 S.Ct. 2384, 162 L.Ed. 2d 174 (2005) (quoting *Sandin v. Connor*, 515 U.S. 472, 484, 116 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). The Supreme Court has noted that the baseline for determining whether conditions of confinement are atypical or constitute a significant hardship are difficult because courts are inconsistent in applying a formula. *Wilkinson*, 545 U.S. at 223, 125 S.Ct. 2384, 162 L.Ed. 2d 174. In *Wilkinson*, the Supreme Court noted that the conditions in Ohio State Penitentiary (OSP), Ohio's super max prison, met any plausible baseline for atypical and significant hardship due to the conditions that inmates were subjected to. Those conditions included limited human contact, no permitted conversations with other

inmates, lights on in cells for twenty-four hours, and only one hour of exercise per day in a small, indoor gym. *Id.* **at 223-24, 125 S.Ct. 2384, 162 L.Ed.2d 174.** Further, the Court noted that placement in the OSP was indefinite and only reviewed on an annual basis. *Id.*

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty-four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell,* **418 U.S. 539, 563–69 (1974);** *Cain v. Lane,* **857 F.2d 1139, 1145 (7th Cir. 1988).**

Defendant takes issue with Plaintiff Davis' allegation that he was housed in segregation for six months, arguing that the six month term would not implicate a procedural due process right. Defendant also argues that neither Fillmore nor Gardner can allege a liberty interest in their placement in administrative segregation. But as Plaintiffs point out, there is no hard rule that a six month term of segregation does not implicate a liberty interest. *Kervin v. Barnes,* **787 F.3d 833, 836 (7th Cir. 2015) ("[T]his need not imply that a rigid six-month period of inhuman confinement is a condition precedent to a deprivation of a prisoner's constitutionally protected liberty.").** The Seventh Circuit has noted that "considerably shorter period[s] of segregation may,

depending on the conditions of confinement and on any additional punishments, establish a violation." *Kervin*, 787 F.3d at 836 (collecting cases). And while Defendant relies on *Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008) for the proposition that there is no liberty interest in discretionary segregation, more recent Seventh Circuit cases have found that other forms of detention beyond disciplinary segregation can implicate a liberty interest, depending on the length of and conditions in detention. *Compare Townsend*, 522 F.3d at 722 ("established position that inmates have no liberty interest in avoiding placement in discretionary segregation") *with Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (distinguishing from *Townsend* case noting that it involved a relatively short period of segregation); *Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (although finding that inmate's placement on suicide watch did not implicate a liberty interest, the Seventh Circuit noted that when an inmate is placed in more restrictive conditions, whether through protective custody or discretionary administrative segregation, "his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time.").

Instead, the Court must look at both the duration and the conditions presented while in segregation to determine whether a liberty interest arises. *Marion*, 559 F.3d at 697. Plaintiffs' complaint alleges significant periods of detention and segregation which the named Plaintiffs were subjected to. As Plaintiffs point out, they have alleged periods of time in isolation ranging from six months to seventeen years. And as

previously stated, Plaintiffs have alleged that they were subject to extreme isolation with many privileges and basic life necessities allegedly denied to them during those time periods. Such conditions state a claim for an "atypical and significant hardship" at this stage of the case.

Further, Plaintiffs' complaint alleges that Defendant failed to provide them with their due process protections. Plaintiffs allege that they did not have advance notice or an opportunity to be heard before placement in detention, were not provided with an explanation for the detention while housed in isolation, and subjected to "sham" hearings. As such, the Court finds that Plaintiffs' have adequately alleged a due process claim. Defendant's motion as to this claim is also **DENIED**.

## C. Mootness of Claims of Coleman, Jones, and Danberry

Defendant also argues that the conditions of confinement and due process claims brought by Coleman, Jones, and Danberry are moot because they are no longer being housed in any type of segregation or detention at their respective institutions. Defendant also argues that injunctive relief is improper for these three Plaintiffs under the Eleventh Amendment as there is no continuing violation since they are not currently housed in "extreme isolation".

Courts can only hear live controversies which must exist at all stages of the litigation process. *Brown v. Bartholomew Consol. School Corp.*, **442 F.3d 588, 596 (7th Cir. 2006) (citing** *Lewis v. Cont'l Bank Corp.*, **494 U.S. 472, 477-78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990);** *Jordan by & through Jones v. Indiana High Sch. Athletic Ass'n, Inc.*,

**16 F.3d 785, 787 (7th Cir. 1994)).** When an action seeks only injunctive relief "this requirement ordinarily means that, once the threat of the act sought to enjoined dissipates, the suit must be dismissed as moot." *Id.* **(citing** *Wernsing v. Thompson***, 423 F.3d 732, 744–45 (7th Cir.2005)).** However, a plaintiff's claims are not moot if he can show that the defendant's actions were capable of repetition yet evading review. This doctrine "applies only in exceptional circumstances, and generally only when the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *Higgason v. Farley***, 83 F.3d 807, 811 (7th Cir. 1996) (citing** *City of Los Angeles v. Lyons***, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)).** If a prisoner is transferred from the facility where he seeks injunctive relief, the request for injunctive relief is usually moot "unless he can demonstrate [with something more than mere speculation] that he is likely to be retransferred." *Id.* **(citing** *Moore v. Thieret***, 862 F.2d 148, 150 (7th Cir. 1988)).**

While Coleman, Jones, and Dansberry have been released from detention, either prior to the filing of this case or since the complaint was filed, Plaintiffs have alleged that there is a likelihood that they will be placed back in detention or segregation. Plaintiff's complaint alleges that each spent time in extreme isolation and are at particular risk of being placed back in or subject to extreme isolation sentences (Doc. 1, p. 59). Specifically, Coleman alleges that he received disciplinary tickets associated with effects of a stroke which he still suffers from, leaving him vulnerable to such tickets and a sentence in "extreme isolation" in the future (*Id*. at p. 31). Jones and Dansberry were

both placed in administrative detention for gang affiliations, which they both allege they were not currently involved in at the time of their detention (*Id.* at p. 46-49, 54-55). Thus, as Plaintiffs point out, it is likely that they could be placed in detention again for their prior gang affiliations. Accordingly, the Court finds that Plaintiffs have alleged that although they are not currently housed in segregation or some other type of detention there is a reasonable likelihood that they will be subject to said detention again and the Court finds that those allegations go beyond mere suspicion. Further, Plaintiffs' complaint challenges current policies or procedures and ongoing constitutional violations related to those policies; thus sovereign immunity does not apply. As such, Defendant's motion to dismiss the claims against Coleman, Jones, and Dansberry as moot or barred by the Eleventh Amendment are **DENIED**.

### D. Request to Sever Claims

In the alternative, Defendant seeks to sever the claims of the Plaintiffs, arguing that Plaintiffs have failed to provide a single, centralized claim and thus are improperly joined pursuant to Federal Rule of Civil Procedure 21. The Court **DENIES** that request. The Court notes that the named Plaintiffs have all alleged that they were subject to similar conditions during their respective stints in "extreme isolation" in segregation or detention. While these episodes took place at different facilities, Plaintiffs have alleged similar experiences and conditions such that the Court finds that their rights rise out of the same "series of transactions or occurrences" for purposes of joinder. Further, the Court notes that Plaintiffs bring a class action pursuant to Federal Rule of Civil

Procedure 23 and the determination as to whether such a class is appropriate in this case is not yet ripe. As Plaintiffs point out, to the extent that Plaintiffs' claims might vary, the Court may later consider dividing the class into subclasses, if the Court finds that class certification is proper at all. But at this time, the Court finds that Plaintiffs claims are properly joined.

## CONCLUSION

Accordingly, Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.
DATED:  March 10, 2017.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge