**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| HENRY DAVIS, DOUGLAS COLEMAN, ) <br> AARON FILLMORE, JEROME JONES, ) <br> DESHAWN GARDNER, and PERCELL ) <br> DANSBERRY on behalf of themselves and all ) <br> others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOHN BALDWIN, Acting Director of the ) <br> Illinois Department of Corrections, ) <br> ) <br> Defendant. | Case No. 3:16-cv-0600-SCW <br><br> Hon. Stephen C. Williams |

## DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION

### I.    PARTIES' AGREED-TO TERMS

Pursuant to Federal Rule of Civil Procedure 26 and Principle 2.01 of the Seventh Circuit Electronic Discovery Pilot Program ("7th Cir. Pilot Program"), Plaintiffs Henry Davis, Douglas Coleman, Aaron Fillmore, Jerome Jones, DeShawn Gardner, and Percell Dansberry and Defendant John Baldwin (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "Discovery Plan").

### A.    SCOPE

1.     This Discovery Plan shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Principles Relating

to the Discovery of Electronically Stored Information (the "Principles") of the 7th Cir. Pilot Program.

3. Nothing in this Discovery Plan shall supersede the provisions of any subsequent Stipulated Protective Order.

4. The Parties identify the following categories of ESI most relevant to the Parties' claims or defenses in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a Party's right to request additional ESI, or any Party's right to object to production, the following represent the categories of ESI most likely to result in the production of information most relevant to the issues in the case to the best of the Parties' knowledge at this time.

5. E-discovery will be limited to ESI in the Parties' custody, possession, or control created on or after January 1, 2007.

6. Discoverable Custodians and Non-Custodial Data Sources. The parties have reached an agreement regarding custodians. *See* Exhibit to Protocol. Prior to the entry of this order, Plaintiffs will also provide a list of non-custodial data repositories, whose reasonably accessible ESI will be searched for relevant information. Custodians shall be identified by name, title, dates of employment by the Party, and a brief description of employment duties. To the extent Defendant identifies reasonably accessible ESI that it does not intend to collect and produce, it will disclose to Plaintiffs the sources and nature of those files. There is the understanding that no custodian or data source is located outside the United States.

7. Identification of Potentially Relevant Electronic Data That is Not Reasonably Accessible. In the event that electronic data that the producing party believes may contain relevant information is not reasonably accessible due to undue burden or cost, the producing

party shall identify any such data, by source, category or type. The identification shall provide the information in the 2006 Advisory Committee Note to Fed. R. Civ. P. 26(B)(2)(B).

8. **Inadvertent Production.** The inadvertent production of any material constituting or containing attorney-client privileged information or work product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Protective Order entered in this action, (D.I. 80), and any subsequent Court orders.

9. The Parties identify the following Third Parties likely to have ESI relevant to this matter:

- Vera Institute of Justice; and

- Any personal email accounts of IDOC identified custodians. Defendant shall notify Plaintiffs if such responsive information exists, such that the parties can meet and confer to discuss any collection and production of that information.

10. The collection of ESI by the Parties can be done in sequential collections.

11. The case currently contemplates limited ESI. In the event the ESI search results in the identification of over 7,500 documents, the parties will meet and confer within 5 business days of the time the issue is identified to make adjustments to the ESI protocol necessary to execute reasonable and proportionate discovery. For purposes of this paragraph, "document" shall mean ESI on the child level (for example, an email with seven attachments is eight documents). If the parties cannot come to an agreement within 10 business days, the parties will notify the Court to schedule a hearing using the Court's procedures by contacting the clerk within 20 days of the impasse.

12.     The parties anticipate that the proposed search terms, in combination with the number of custodians being searched and the time period being used, could result in a burdensome number of documents being found in the search with a low relevancy rate. In the even the ESI search using search terms results in the identification of over 7,500 documents, Defendant will notify Plaintiffs' counsel and will conduct a review of no less than 500 documents to determine the percentage of relevant documents found by the search terms. The parties will meet and confer within 5 business days of the time the percentage of documents is determined to make adjustments to the ESI protocol necessary to execute reasonable and proportionate discovery. For purposes of this paragraph, "document" is defined as stated in paragraph 11, above. If the parties cannot come to an agreement within 10 business days, the parties will notify the Court to schedule a hearing using the Court's procedures within 20 days of the impasse.

**B.     SEARCHING**

1.     <u>CASES INVOLVING LIMITED ESI</u>

a.     The Parties agree that relevant ESI may be identified for production by the following means:

(1)     The use of search terms, so long as: (1) a party using search terms uses a reliable, sound, and auditable search and retrieval tool; (2) the search is conducted by a person disinterested in the litigation who is experienced in the use and rules of the search tool; (3) is overseen by the Department of Innovation and Technology and managed by the ESI liaisons for the Defendant; and (4) the party uses sound collection methods that do not alter the document or metadata as it exists in the ordinary

course of business, with the exception that the retrieval process may create its own metadata (as long as it does not corrupt the original metadata of the documents); or

(2)     Targeted identification of responsive documents after a reasonable investigation from shared or central repositories of ESI, using sound collection methods that do not alter the document or metadata as it exists in the ordinary course of business, with the exception that the retrieval process may create its own metadata (as long as it does not corrupt the original metadata of the documents).  If emails identified through the use of search terms contain attachments that are not text searchable, these attachments will also be searched for responsiveness by this method.

b.     If a party intends to identify and collect documents from a source not contemplated by this section, the parties shall meet and confer to discuss the scope and methods of the identification and collection.

## C.    PRODUCTION FORMAT

1.    <u>CASES INVOLVING LIMITED ESI</u>

a.    Document Format Production

(1)     Electronically stored information derived, as outlined in Exhibit 1, from e-mail and other electronically created files (e.g. Microsoft Office files, Outlook files, WordPerfect files, or "Word" files) will be produced:

(a)     for documents without redactions, Defendant will produce in native format.  For electronically created files other than email, Defendant will identify the custodian of each document. Defendant

will not object to any bates-stamping or sequencing applied to production by Plaintiffs after the receipt of these emails. Plaintiffs agree to produce to Defendant any documents that were produced in native format that are bates-stamped by Plaintiffs;

(b)      as Bates-labeled single-page pdf images in text-searchable files pursuant to Exhibit 1 (2).  If emails are produced as pdfs, the family, children, and attachments will be maintained and produced for review purposes; and

(2)      <u>Web Pages and Social Media Information</u>.  Defendant will confirm whether or not the IDOC utilizes internal intranet webpages, social messaging, networking or social media data and other information not otherwise covered in subpart 1. above shall be produced as "screen shots" or "screen captures" unless the Parties agree to perform bulk exports of entire websites and social media accounts into native format.

(3)      <u>Redactions of ESI and Documents</u>.  The Producing Party shall produce the redacted file in a reasonably usable form.  Documents shall only be redacted in accordance with the Court's order (D.I. 80), the parties' agreed Protective Order, and any subsequent Court orders.  Any documents redacted based on security concerns shall be produced along with a general indication to the other party as to which documents are being redacted for that purpose. Documents being redacted or withheld from production on the basis of privilege must be listed in a separate privilege log.  Documents that are withheld from production based on

security concerns must also be listed in a privilege log. This paragraph applies equally to documents produced both before and after entry of this order. Any party producing a redacted file must keep a pristine, unaltered copy of the original file.

(4)     Pursuant to Rule 34, to the extent a redacted document was originally text searchable, Defendant will produce the document in a text searchable format.

**D.     THIRD-PARTY ESI**

1.     A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

2.     The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

3.     If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other Parties.

4.     However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

5.      If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

## E.      E-DISCOVERY LIAISON

1.      The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.

2.      Each e-discovery liaison will be or will have access to those who are knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

3.      The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

The Parties' respective e-discovery liaisons are:

Plaintiffs:

- Joanna Cornwell, Attorney for Winston & Strawn
- Reid Smith, Attorney for Winston & Strawn

Defendant:

- Laura K. Bautista, Assistant Attorney General, Attorney for John Baldwin

## F.      SEARCH TERMS

1.      The parties have agreed on a list of search terms, but such agreement does not itself prevent Plaintiffs from seeking additional search terms later subject to Defendant's agreement or the Court's intervention. The agreement also does not itself prevent Defendant from seeking relief from the Court in regards to the search terms.  *See* Exhibit to Protocol. During such discussions, the Producing Party shall retain the sole right and responsibility to

manage and control searches of its data files in accordance with this agreement, including the right to negotiate revisions to search terms or advanced-technology procedures in order to make them more accurate and cost-effective.

2.     The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by applicable privilege or immunity, that it is governed by applicable privacy law or regulation, or that the Protective Order or (D.I. 80) entered in this Action allows the file to be withheld.

3.     Defendant has represented that the use of search terms to search shared drives is not a reasonable option but will provide an affidavit on why this is not possible.  (Dkt. 83).  The search terms will therefore be applied to email.  Defendant will conduct an investigation to identify any other relevant source of responsive information or documents.  To the extent Defendant believes he can use the agreed upon search terms to identify responsive documents from electronic, non-email sources, Defendant will notify Plaintiffs and the parties will meet and confer about the need to do so.

4.     Nothing in this section shall limit a Party's right reasonably to seek agreement from the other Party or a court ruling to modify previously agreed-upon search terms or procedures for advanced search and retrieval technologies.

## G.     OTHER

1.     In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper

documents should be logically unitized[1]).  In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.  The Parties will make their best efforts to unitize the documents correctly.

2.     All scanned paper documents shall be produced in accordance with Exhibit 1. Each pdf file should have a unique file name which shall be the Bates number of that page.

3.     With respect to ESI, a Party shall not engage in the degradation of the usefulness of ESI pursuant to Federal Rules of Civil Procedure Rule 34.

4.     This Discovery Plan shall have no effect on any producing Party's right to seek relief from the Court.  Pursuant to FRCP 26, Plaintiffs offer to meet and confer regarding cost-sharing upon a reasonable, good faith showing by Defendant that the discovery is burdensome or not reasonably accessible.  Absent any party agreement, it is in the sole discretion of the Court to determine whether or not cost sharing should be allowed.

5.     Nothing in this Discovery Plan should require ESI and other tangible or hard copy documents that are not text-searchable to be made text-searchable.  Nevertheless, counsel or the Parties are encouraged to discuss cost sharing for optical character recognition ("OCR") or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each Party.  If a producing Party creates OCR of paper documents or non-text-searchable

---

[1] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents.  Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.  *See* The Sedona Conference Glossary, cited at note 2 *supra*.

electronic images it produces for its own use, that producing Party should consider providing OCR to other Parties willing to pay a reasonable share of the cost of OCR.

6.      Nothing in this Discovery Plan shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

7.      Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

8.      Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

Dated: May 17, 2017

*/s/ Stephen C. Williams*
U.S. Magistrate Judge

<u>**EXHIBIT 1**</u>

1.  **IMAGES:**
    - Image resolution at least 300 DPI
    - Black and white unless color is necessary to understand the meaning
    - File naming convention: match Bates number
    - Original document orientation shall be retained
    - Emails will be produced in native format, unless redactions are required

2.  **ESI PRODUCTION METADATA FIELDS**
    With respect to production of native files, the following metadata fields will be produced as a result of the production of the native file to the extent it exists in the ordinary course of business. The Custodian of the ESI will be provided as agreed to in Section I(C)(1)(a)(1)(a) regardless of the format of production (e.g., native format or PDF). The custodian of the ESI is not considered to be metadata. With respect to redacted ESI, metadata will be produced pursuant to the Court's decision. All limitations on redacted data as to security threats will be followed in accordance with (D.I. 80). Plaintiffs request the following fields:
    - **BegBates**: Beginning Bates number
    - **EndBates**: Ending Bates number
    - **BegAttach**: Beginning Bates number of the first document in an attachment range of parent in a family
    - **EndAttach**: Ending Bates number of the last attachment in a family
    - **Custodian**: Name of the Custodian of the File(s) Produced – last name, first name format
    - **FileName**: Filename of the original digital file name
    - **NativeLink**: Path and filename to produced Native file
    - **EmailSubject**: Subject line extracted from an email message
    - **Title**: Title field extracted from the metadata of a non-email document
    - **Author**: Author field extracted from the metadata of a non-email document
    - **From**: From field extracted from an email message
    - **To**: To or Recipient field extracted from an email message
    - **Cc**: CC or Carbon Copy field extracted from an email message
    - **BCC**: BCC or Blind Carbon Copy field extracted from an email message
    - **DateRcvd**: Received date of an email message (mm/dd/yyyy format)
    - **DateSent**: Sent date of an email message (mm/dd/yyyy format)
    - **DateCreated**: Date that a file was created (mm/dd/yyyy format)
    - **DateModified**: Modification date(s) of a non-email document