```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2
    HENRY DAVIS, et al.,             )
 3                                   )
                        Plaintiff,   )
 4                                   )
          vs.                        ) No. 16-cv-00600-SCW
 5                                   )
    JOHN BALDWIN,                    )
 6                                   ) May 9, 2017
                        Defendant.   )
 7

 8         TRANSCRIPT OF DISCOVERY DISPUTE CONFERENCE
            BEFORE THE HONORABLE STEPHEN C. WILLIAMS
 9               UNITED STATES MAGISTRATE JUDGE

10                        APPEARANCES

11  FOR PLAINTIFF:              Kimball R. Anderson, Esq.
                                Reid Smith, Esq.
12                              Joanna F. Cornwell, Esq.
                                Alyssa E. Ramirez, Esq.
13                              Winston & Strawn
                                35 West Wacker Drive
14                              Chicago, IL  60601-9703
                                (312) 558-5858
15
                                Alan S. Mills, Esq.
16                              Uptown People's Law
                                4413 N. Sheridan
17                              Chicago, IL  60640
                                (773) 769-1411
18

19  FOR DEFENDANTS:             Laura K. Bautista, Esq.
                                Lisa A. Cook, Esq.
20                              Melissa A. Jennings, Esq.
                                Illinois A.G.'s Office
21                              500 South Second St.
                                Springfield, IL  62706
22                              (217) 557-0261

23                              Gary S. Caplan, Esq.
                                Illinois A.G.'s Office
24                              100 W. Randolph, 12th Floor
                                Chicago, IL  60601-3175
25                              (312) 814-5661
```

1

2

3      **REPORTED BY:**                Laura A. Esposito, RPR, CRR
                                       Official Court Reporter
4                                      U.S. District Court
                                       750 Missouri Avenue
5                                      East St. Louis, IL  62201
                                       (618) 482-9481
6                                      Laura_Esposito@ilsd.uscourts.gov

7

        Proceedings recorded by mechanical stenography;
8      transcript produced by computer-aided transcription.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        *(Court convened)*

2            **THE COURT:**  Good morning, everyone.  This is

3    Judge Williams.  We're here for a discovery dispute

4    telephone conference, *Davis, et al. vs. Baldwin*, Case

5    16-600-SCW.

6            We've got Alan Mills, Alyssa Ramirez,

7    Joanna Cornwell, Kimball Anderson, and Reid Smith for the

8    plaintiffs.  And for the defense we've got Laura Bautista,

9    Gary Caplan, Lisa Cook, and Melissa Jennings.

10           So we've got dueling ESI protocols.  That's majorly

11   complicated by the parties' agreement to use native format,

12   and so that's what we're left with.  We're dealing with that

13   complication, and here we go.

14           So let's talk about the search term period.  First

15   off, there's agreement that it's going to be January 1st,

16   2007, so that's dealt with.  That was issue number one in

17   Mr. Anderson's letter.

18           As it relates to custodians, so the -- we've got a

19   list of agreed-to custodians, but then as to -- hang on.

20   I'm skipping.  All right.  So the issue with respect to

21   running custodians' e-mails, the defense indicates, *Look, we*

22   *can't do these one at a time.  We need to just run one*

23   *search and we'll use the names of the identified custodians*

24   *in that search so that we're encompassing all of the*

25   *e-mails.*

1            Mr. Anderson, do you want to add to your argument

2       in response to what the defense has said?

3            **MR. ANDERSON:**  I can make it pretty simple.  I

4       think the procedure, the logical protocol is, first we

5       identify the custodians and then they search each

6       custodian's records pursuant to the agreed search term.

7       Where the custodian is self-evident from a document -- for

8       example, the e-mail, an e-mail -- we don't need any further

9       custodian information, but where the custodian is not

10      self-evident, a report or some other document, then we need

11      the custodian identified.

12           It is not satisfactory for the defendant to say, as

13      they did in their letter, that the acting IDOC director is

14      the custodian of all these items.  Our request is driven by

15      a practical concern, Judge.  We want to know who we should

16      depose.  We want to know who's most knowledgeable about

17      these documents.  So it's a very practical request, and

18      that's -- and we don't understand why the department is

19      screaming and kicking against producing custodian

20      information.

21           **THE COURT:**  I'm mostly talking about e-mails right

22      now, but -- so let me first address the e-mail issue because

23      it sounds like you don't disagree with what has been set

24      forth in the letter from Ms. Bautista, that's what I'm

25      hearing, and so we don't need separate identification of

1    custodians.  And that answers your concern, Ms. Bautista, I

2    believe, because the information's going to be there when

3    you provide the native format file.  It's going to have who

4    sent and received the e-mails, right?

5            **MS. BAUTISTA:**  Yes, Judge.

6            **THE COURT:**  Okay.  So your language, excluding the

7    specific identifier of custodian as it relates to e-mails,

8    is fine.

9            Okay.  And then as it relates to who the custodians

10   are of these non-ESI documents, they've identified them, and

11   if you don't like the answer, well, I don't know what to

12   tell you.  That's -- they've identified them as the

13   custodian.  That is -- on a request to produce, they

14   produced these documents.  The rules don't require anything

15   more than that.  So the fact that, you know, an ESI, a

16   sample ESI protocol somewhere may mention that as to hard

17   copies of documents doesn't mean that it's unsatisfactory.

18   It's satisfactory.  It's a fair question to ask and they've

19   agreed to give you that information and they've given it to

20   you.  And if you're going to -- if you need further

21   identification of persons most knowledgeable, presumably

22   you're going to be doing a 30(b)(6) deposition.

23           So that answers that question.  Next up?

24           **MR. MILLS:**  Judge, can I just -- this is

25   Alan Mills.  I think the confusion may be, we're talking

1    about ESI but not e-mail ESI.

2           **THE COURT:**  Right.  I mean -- okay.  ESI, they've

3    agreed to give you the name of the custodian identified with

4    the non-e-mail ESI.  So when they do those searches of that,

5    that's not of e-mail, they're going to identify the

6    custodian, even though that's not how it's kept in the

7    ordinary course, and they're giving you native-plus in doing

8    so, but they've agreed to in their version, haven't they?

9           **MS. BAUTISTA:**  Yes, Judge.

10          **THE COURT:**  Okay.  So I don't know what the --

11   that's not what the argument was.  I don't know what the

12   argument is.

13          All right.  Next up, custodian searches.  This is

14   Section 3.  We've got a long list.  However, as it relates

15   to one category of individuals -- I'm sorry, this isn't one

16   category.  But several of the identified positions,

17   specifically Chief Information Officer, Chief of Performance

18   Based Standards, Chief of Intergovernmental Relations, Chief

19   Financial Officer, Chief of Programs, Support Service, Chief

20   Internal Auditor, and Deputy Director of Regional Positions,

21   the defense has indicated that they've got no expectation

22   that these folks are going to have anything as it relates to

23   the requested documentation.

24          In response to that, we've got the argument that

25   the Chief Information Officer may have things because of

 1    FOIA requests.  That's about how I see it summed up.

 2            Mr. Anderson, you want to add anything to that?

 3            *MR. ANDERSON:*  No.  I think that's about it.  I

 4    mean there's the additional issue of whether predecessors

 5    for some of these custodians should be searched.

 6            *THE COURT:*  That's the issue I'm articulating.  As

 7    it relates to those positions, they only -- the defense only

 8    wants to do the current one, and you're suggesting that the

 9    predecessors also should be.  I guess I didn't fully

10    articulate it.  You're suggesting that the predecessors also

11    should be searched.  That's -- the dispute is, it also

12    should be predecessors.  And their view is, they're not

13    going to have anything.  And, of course, their input is part

14    of the process, is they're not going to have anything so we

15    don't want to do the additional searches of all of the

16    predecessors.  Then the argument is, well, what about the

17    Chief Information Officer?  He's responding to FOIA

18    requests.  Anything else about the Chief Information Officer

19    that --

20            *MR. ANDERSON:*  No, I don't have anything else on

21    the Chief Information Officer, but there's been so much

22    turnover at the department that I'm not surprised that

23    people that came in the office, you know, in the last few

24    months might not have anything, but our concern is that the

25    predecessor files, wherever they are, need to be searched.

1          **THE COURT:**  All right.  But, Ms. Bautista, why --

2     when you say you have no expectation that these particular

3     positions that I've just articulated that are on page 2 of

4     Mr. Anderson's letter, why is it that you believe that the

5     predecessors won't have any information, any documents?

6          **MS. BAUTISTA:**  Because, Your Honor, they're not

7     involved in segregation issues.  Like if you take the Chief

8     Information Officer, for example, the alleged involvement

9     and FOIA request is based off a statement on IDOC's website.

10    I went to DOC and talked to the individual responsible for

11    responding to FOIA requests, and she said that, no,

12    there's -- you know, the Chief Information Officer, like

13    maybe they -- if that person will have information, that

14    person might be involved in the FOIA request, but it's not

15    like the Chief Information Officer is involved in every

16    single FOIA request, either responding to it or receiving

17    it.  That's just not how it works.

18         **THE COURT:**  So can I -- in other words, what you're

19    saying is, based upon your investigation of the flow of

20    information and who would have what, neither these persons

21    currently nor their predecessors would have any documents

22    that are responsive to the request and are relevant to the

23    case?

24         **MS. BAUTISTA:**  Correct, Judge.

25         **THE COURT:**  All right.  So I agree with the

1     defense.  Unless I have some indication that they're wrong

2     about that, this is an attempt at cooperatively identifying

3     who's going to have relevant information, and they're not

4     going to.  Now, they've agreed to do just the current ones

5     and throw them in the mix, so that's what you get.

6          **MS. BAUTISTA:**  Your Honor, this is Laura Bautista.

7     Can I ask a point of clarification?

8          **THE COURT:**  Yeah.

9          **MS. BAUTISTA:**  There was one additional position,

10    the administrative assistants, which defendants have agreed

11    to search one person, but Your Honor didn't address that

12    one.  Is that included?

13         **THE COURT:**  Yes.  You just go with the one you've

14    identified.

15         Okay.  Search terms.  Ms. Bautista, so your

16    objection to including the case names --

17         **MS. BAUTISTA:**  Yes, Judge.

18         **THE COURT:**  -- is that it's definitely going to be

19    privileged?

20         **MS. BAUTISTA:**  We believe that the likelihood of

21    searching the case names and numbers will result in

22    discovering privileged e-mails -- or, you know, those being

23    responsive to the search terms.

24         **THE COURT:**  Yeah, probably will, but I think their

25    point is, how can you say that there isn't, amongst those

1    things -- I mean, for example, if somebody just disseminates

2    widely a memo that was either drafted by counsel and went

3    out to a bunch of people who are arguably not covered by the

4    privilege, I don't want to get into the specifics of that

5    just yet, but -- or it was disseminated by someone else.   In

6    other words, this is a document and it's identified as

7    having this case name, then, you know, there's no way to

8    know for sure.

9         Now, I think what has to happen is, when you do the

10   search you're going to be able to -- well, maybe I'm wrong

11   about this, given what it appears to be the capabilities,

12   but you should be able to identify which documents are

13   hitting because of that search term, right?

14        **MS. BAUTISTA:**   You know, Judge, I don't know the

15   answer to that.   I believe that you're correct based on

16   previous work that I've done but I don't know specifically

17   now with DOIT being responsible for the searches.

18        **THE COURT:**   Well, that's what should be the case is

19   that those documents could be identified separately and --

20   you know, take a look.   As a group there may be a vast

21   majority -- and we can talk about, you know, adjusting, if

22   necessary, the responsibilities related to logging all of

23   that.   We just don't know what the burden's going to be.

24   It's impossible to know without actually doing the search.

25   But it's clearly relevant.   The only question is, how much

1    of it's going to be privileged and how much isn't?  And I

2    think it's too soon to just cut that out and say, well, it's

3    all going to be privileged, therefore, we're not going to do

4    it.  So I'm agreeing with the plaintiffs on that one.

5            All right.  Litigation holds.  From what the Court

6    sees so far, I don't have -- in fact, I've got reason to

7    believe that significant efforts have been put into

8    preserving ESI, and I'm not going to require discovery on

9    litigation holds at this point.  That's without prejudice to

10   reconsidering that at any point in time during the

11   litigation, but for now we're not going down that road.  I

12   hope we never have to, but if we need to, we will.

13           Did I skip -- no, I didn't skip search terms.

14           All right.  Next up, document repositories.  As it

15   relates to the -- and I realize I also skipped one area

16   relating to the limitation on searches, which we'll go back

17   to, but in terms of document repositories, counsel's going

18   to have -- if we're relying on the old method essentially,

19   or the traditional method of getting with custodians, having

20   them search their files, this is essentially the same as,

21   *I'm going to go look at my paper files.*  You have to

22   interview them when they hand you the documents and say,

23   *Hey, where did you look?  How did you go about finding this*

24   *stuff*, in order to know that they're complying with their

25   discovery obligations and you're doing your job as counsel.

1    If that question isn't being asked, then counsel's not

2    performing their obligations.

3           So the only extra piece here is, do we report on

4    the source of information?  And when it comes to ESI, the

5    answer is, yes, we do that.  It is a minimal extra check

6    that's available when the defense or the plaintiffs are

7    going about deposing people to have been told, all right,

8    here's the three places, this shared drive, here's another

9    drive, these are the places I had access to and where I

10   stored things, and that's where I searched.  And I'm not

11   saying it's no extra burden, but you just are going to have

12   to write that down anyway when you talk to these

13   individuals.  So it's just a matter of, when you forward the

14   documents that are associated with that particular

15   custodian, adding to it a couple of lines that indicate the

16   drives that were searched or the repositories that were

17   searched.

18          Now, Ms. Bautista, what -- maybe I'm missing

19   something.

20          **MS. BAUTISTA:**  Your Honor, I don't disagree with

21   your proposal.  Looking at the ESI protocol that the

22   plaintiffs submitted to the Court along with their letter,

23   they've added language requiring defendants to, prior to

24   entry of the ESI order, to provide a list of all custodial

25   and noncustodial repositories.  And I think it makes more

1    sense to do it the way Your Honor is proposing, which is, as

2    the custodians search, for defense counsel to talk to them

3    and ask, *Well, where you have you looked?  What other places*

4    *can you look?  What else do you have access to?  Have you*

5    *looked there*, rather than at the beginning trying to

6    determine every place that any custodian could look.  I

7    don't see that being feasible.

8         **THE COURT:**  Well, now, let's distinguish between

9    the places that search terms -- point me in the -- which

10   paragraph are we talking about?

11        **MS. BAUTISTA:**  This is paragraph A6 on page 2 of

12   plaintiffs' proposed ESI protocol, and it's the second

13   sentence of that paragraph.

14        **THE COURT:**  So I think we need to distinguish --

15   and I'm not clear that paragraph 6 wasn't intended to.  Have

16   you -- you've identified those sources or repositories that

17   you think you can search, correct?

18        **MS. BAUTISTA:**  Your Honor, search terms -- that's

19   not correct because search terms can only be used for

20   e-mail.  We've discussed with DOIT and that's in the

21   affidavit provided by Mike Delcomen [phonetic], I believe.

22        **THE COURT:**  That's what I'm saying.

23        **MS. BAUTISTA:**  Terms can't be used on any of DOC's

24   drives.  I mean they can be used to search the titles of

25   documents.  They've stated that they don't want that, which

 1   is understandable.  The title of the document probably won't

 2   be a helpful way to search.  So custodians for all -- for

 3   any drives, for their personal drives, for hard drives, for

 4   shared drives, search terms can't be used.

 5        **THE COURT:**  Well, I won't, since that's already

 6   been established, and I understood that, though I guess I

 7   didn't appreciate that that was the case for every single

 8   thing other than e-mails.

 9        **MS. BAUTISTA:**  Yes, Judge.

10        **THE COURT:**  Okay.  So is there only one place --

11   there's only one place you're getting e-mails from?

12        **MS. BAUTISTA:**  Well, as I understand it, DOIT is

13   performing the e-mail searches, and they can do that all at

14   once on the servers that they have, so they don't have to --

15   it's not like they have to go into individual people's

16   e-mails to search them.  They can do it globally with a list

17   of identified people to search and run one search all at one

18   time.

19        **THE COURT:**  I'm looking at your alternative

20   proposal for paragraph 6 -- or I'm looking for it, rather.

21        **MS. BAUTISTA:**  It is on page -- it's also on page

22   2.  It doesn't include anything regarding data repositories,

23   Your Honor, because plaintiffs inserted that language.  It

24   looks specifically in the proposal to the Court.  That

25   wasn't in prior exchanges between the parties.

 1          I think perhaps on page 9 of our proposal in number

 2    4, the last sentence kind of addresses -- and this was

 3    deleted from plaintiffs' proposed ESI protocol where the

 4    beginning part of the paragraph discusses how to use search

 5    terms for e-mails, what custodians are expected to do in

 6    regards to their own searches, and what the expectations are

 7    in regards to e-mails versus non-e-mail sources.

 8          **THE COURT:**  Well, all right.  So there has to be --

 9    in this proposal, paragraph 4 on page 9, the last sentence

10    that you've added is kind of contradictory to the notion

11    that, well, we're going to do our independent search and

12    then if defense can identify certain ways in which

13    non-e-mail sources can be searched with terms, then they're

14    going to meet and confer.  And then you've said, *But we're*

15    *not required to do it if we've already looked at them using*

16    *traditional methods*, which is, *Okay, I'm just going to go*

17    *find the stuff that's responsive.*  So we've already

18    established that that's how -- you're not going to, absent

19    them coming up with some reason.

20          That being the case, you just will have to

21    understand that when you provide the documents and the

22    source of information, if you don't want to do it on the

23    front end and they say, *Wait a minute, why can't you run a*

24    *search there* -- and I actually don't know why, nobody's told

25    me, but I'm going just assume that you all have vetted this.

 1   But if it turns out not to be true, you know, it's possible

 2   we'll have to talk about, well, now you've got to run a

 3   search.

 4         Now, if you want to put that -- if you don't want

 5   to run that risk and you want to front load that issue, then

 6   we can.  Am I making sense or am I missing the point?

 7         *MS. BAUTISTA:*  Judge, I think that I am missing

 8   what you are saying.

 9         *THE COURT:*  Well, you don't want to identify the

10   drives that they're looking at until they've already

11   searched through them.  That's what you just told me, right?

12         *MS. BAUTISTA:*  Yes, Judge.

13         *THE COURT:*  I'm not sure I know why that's the

14   case, but if you're going to do it that way, the order that

15   you've proposed contemplates, once you've identified all of

16   those drives, the possibility that they're going to come

17   back and say, *Wait a minute.  We think that that's something*

18   *that can be searched via terms.*  And if it can, it might be

19   something we need to revisit.

20         *MS. BAUTISTA:*  I understand that, Judge.

21         *THE COURT:*  So that last sentence, paragraph 4 on

22   page 9, doesn't really make sense in light of that reality.

23         *MS. BAUTISTA:*  Okay.

24         *THE COURT:*  It might be that you don't have to do

25   any more, but if you're all contemplating an additional

1    meet-and-confer as a possibility then it may mean that

2    you're going to have to do a manual search and a search term

3    search.

4         **MS. BAUTISTA:**  I understand.

5         **THE COURT:**  But so let -- Mr. Anderson, anything

6    you want to add?

7         **MR. ANDERSON:**  Well, I don't want them to have to

8    do searches over again.  I don't want to take depositions

9    over again.  I'm trying to cut through all these ongoing

10   endless meet-and-confers.  And I don't understand why they

11   can't identify the drives they're going to search up front

12   and let's get this done now, not six months from now and

13   have a do-over.

14        **THE COURT:**  Okay.  Ms. Bautista, what's the -- what

15   is the issue with meeting with them before they've done

16   their collection effort?

17        **MS. BAUTISTA:**  Your Honor, over 130 custodians have

18   been identified.  I do not know and DOC headquarters does

19   not know all of the drives that these people have access to.

20        **THE COURT:**  Okay.  All right.  We're going to do

21   it -- because I want to get the searches under way, we're

22   going to adopt the defense version on that, with the

23   exception of that added sentence that there's -- that

24   precludes there being any additional searches.  I'm not

25   assuming that the Court's going to order any additional

1    searches using search terms of shared drives, but I guess

2    that's still a possibility.  I really don't -- again, I

3    don't know why that's not -- you can't do it that way,

4    but --

5           All right.  Then there was an issue with respect to

6    paragraph 11 on page 3 of the defendant's proposal.  I'm

7    going with the defendants on this one.  It doesn't make

8    sense to say, in an ESI protocol, if in the end after you've

9    done everything, you've produced over 7,500 documents, well,

10   maybe we'll reconsider the process.  By then the process is

11   done.  This is supposed to -- we're just going with the

12   plaintiffs' -- or the defendant's proposal on that because

13   that's the only one that makes sense.  I don't know if 7,500

14   is a good number or not but that's the one we're using

15   because that's the only one that's been proposed.

16         **MR. ANDERSON:**  Wait a minute, Judge.  I'm totally

17   confused.  Why does it make sense to abandon the process

18   after you have 7,500 hits?  That's what the defendants are

19   suggesting.  I'm not following you at all.

20         **THE COURT:**  What I'm saying is, you're suggesting

21   that we only meet and confer if there's going to be 7,500

22   documents produced.  That's in your plan.  In paragraph

23   11 --

24         **MR. ANDERSON:**  That was at their suggestion early

25   on, Your Honor.

1          **THE COURT:**  Well, it's in your -- the dispute

2     between these two documents is, in the event the document

3     production implicates over 7,500 documents, the parties will

4     meet and confer within five business days of the time the

5     issue is identified.  So the distinction is between

6     production and hits.  As you say in your letter, if we're

7     talking about production, if you get 7,500 hits, you may not

8     have to produce 7,500 documents.  That's true.  The purpose

9     of having some limitation on this is to reduce the burden of

10    review.

11          Now, the Court isn't -- I'm not making any

12    assumptions about how many hits there's going to be, and

13    once we get all of the hits, it could be 10,000.  That

14    doesn't mean that it has to be adjusted.  This just

15    triggers, well, we're going to have to talk about what those

16    hits are, but if you're -- if this is only triggered when

17    they've made the determination that the production is going

18    to be 7,500, that process has already been exhausted.

19    You've already gone through and reviewed everything.

20          So if there's going to be any limitation it has to

21    be before there's an actual identification of how many

22    documents are going to be produced; otherwise, there's no

23    point in having limitation at all because, once that has

24    happened, there's nothing left to do other than send them.

25          **MR. ANDERSON:**  Right.  I don't have any quarrel

 1    with that.

 2            **THE COURT:**  So, yeah, the issue -- we're going --

 3    we'll see what happens.  And if you meet and confer and you

 4    can't agree, then we're going to have a quick conference

 5    just on that very limited issue, and I'll be told.  If the

 6    defense wants a further limitation, then I'm going -- and

 7    you don't agree with what they're telling you, then

 8    obviously we're going to have to come to the Court.  It

 9    makes sense to have something like this in the protocol.

10    That's standard.

11            All right.  What else do we need to address that

12    the Court hasn't addressed?  I've addressed all of the broad

13    topics raised in the letters.  If you want, I can go through

14    the proposal paragraph-by-paragraph.

15            **MR. ANDERSON:**  Well, one area that remains unclear

16    to us was -- is that the defendants attempt to have each

17    custodian conduct their own search and then just accept that

18    or will there be some non-custodial supervision of the

19    search?  We're concerned about just relying on the custodian

20    to say, *Oh, yeah, I didn't find anything responsive.*

21            **THE COURT:**  Well, what is it that you think they

22    should do?  I mean the lawyer has to go talk to them.  So

23    when you represent someone, Mr. Anderson, I don't know what

24    your process is, but if -- let's just take the example of,

25    there's no ESI.  And back in the days of a file cabinet you

1   go and you say, *This is what we need,* and the owner of the
2   company or his people come back and say, *Here's the stuff.*
3   And it requires interaction with counsel, telling them what
4   their obligations are, but ultimately the -- if they can't
5   use search terms then they have to rely on the custodian
6   saying, *Oh, these are the things that I have after an*
7   *interview with them,* right?

8           **MR. ANDERSON:**  Yes.  The department here has -- the
9   IDOC has the Department of Innovation and Technology that
10  manages ESI protocols for the defendant.  Our ask of the
11  department was to have a disinterested -- a person
12  disinterested in the litigation and experience, with the use
13  of search tools, oversee the process.

14          **THE COURT:**  I thought everyone agreed that they
15  can't use search terms to do anything on anything except for
16  e-mail.  Again, I don't know why that is, but that's what
17  I'm being told.

18          **MR. ANDERSON:**  Yeah, that's what we've been told
19  too.  We don't understand it either.

20          **THE COURT:**  Okay.  Ms. Bautista, can you explain
21  why you can't search a shared drive using terms?

22          **MS. BAUTISTA:**  Well, shared drives can be searched
23  using shared terms but it only searches the title of the
24  document, so if the title of the document doesn't have the
25  term that's being searched for, it won't be responsive even

1    if the term is within the document itself.  It's my

2    understanding that's simply the technological capability of

3    the State of Illinois to search drives.

4         **THE COURT:**  Okay.  And hang on second.  The

5    affidavit from Mr. Delcomen, am I -- is that how he

6    pronounces his name?

7         **MS. BAUTISTA:**  Yes, Judge.

8         **THE COURT:**  I don't think he addressed this, did

9    he?

10        **MS. BAUTISTA:**  We're looking at it now, Judge.

11        You're correct.  I misstated and said that it was

12   in his affidavit, and it is not, but we provided an

13   affidavit stating that.

14        **THE COURT:**  Yeah, he's just talking about e-mails.

15   So, you know, it's a fair question and I think they are

16   deserving of an explanation.  And so does anyone on the call

17   for the defense know why the shared drives can't be searched

18   with terms?

19        **MS. BAUTISTA:**  Your Honor, my understanding is the

20   technological capabilities of the State of Illinois allows

21   us to search the titles of documents but it doesn't search

22   the contents of the documents.

23        **THE COURT:**  Yeah, I got that part.  And you and I,

24   as obvious laymen in this process, understand one another

25   fully, but that obviously doesn't answer the question

```
 1    either.  So we need another affidavit.  I'm going to accept
 2    the representation, but they get to know why that is.  I
 3    mean that's part and parcel of this, what's supposed to have
 4    been an interactive process.
 5         And here's an example of something that -- you
 6    know, I get their frustration.  Now, maybe they know better
 7    than I do, but I don't know why, other than, well, because
 8    they say it's so.  So there's got to be a more sophisticated
 9    response that can be made that incorporates the capabilities
10    of the technology in some way that explains why the search
11    doesn't go beyond the title of the document.  You know, why
12    can't -- if I got all these things sitting on the drive and
13    I can do a search that scans the titles of the documents --
14    in other words, you're talking about the title that somebody
15    gave it when they saved it, or if they didn't put a title on
16    it, you know, it will say the first, you know, sentence or
17    something, .wpd or whatever because that's how it got saved.
18              **MS. BAUTISTA:**  Yes, Judge.
19              **THE COURT:**  The answer they need to have, and the
20    Court would want this too, is, why can't you do something
21    that allows you to search the documents themselves?  And the
22    other, I guess, question I have that I skipped over is, if
23    one of those documents is attached to an e-mail, I believe
24    your guy said that then it will get searched?
25              **MS. BAUTISTA:**  Yes, Judge, because e-mail searches
```

```
 1    can search terms within e-mails, and as long as the
 2    attachment is text searchable, also searches the attachment
 3    for search terms.
 4         THE COURT:  Again, I'm accepting the
 5    representation, but you'll need to provide an affidavit from
 6    Mr. Delcomen or someone else from that office that explains
 7    this in more detail.
 8         MS. BAUTISTA:  Yes, Judge.
 9         THE COURT:  How much time do you want to produce
10    that?
11         MS. BAUTISTA:  Your Honor, could I have a week for
12    that?  I just don't know Mike Delcomen's availability.
13         THE COURT:  Yeah, you have one week.
14         What else do we need to address that's in the
15    protocol before you give me your final version?
16         MR. ANDERSON:  I don't have anything else but I do
17    have a scheduling issue I'd like to raise with Your Honor at
18    the appropriate time.  This is Kimball Anderson speaking,
19    for the record.
20         THE COURT:  Let's finish up on this and then we'll
21    come back to that for sure, Mr. Anderson.
22         Ms. Bautista or Mr. Caplan, anything else?  Or is
23    this -- have I given you enough in the way of rulings on all
24    of these broad issues to address the specifics that are
25    still in dispute in the ESI protocol?
```

 1          **MS. BAUTISTA:**  Your Honor, I think one additional

 2     issue that was raised by plaintiff in their proposal was

 3     regarding the obligations when documents are redacted.

 4          **THE COURT:**  Okay.

 5          **MS. BAUTISTA:**  And this is on page 6 of their

 6     proposal, paragraph 3.

 7          **THE COURT:**  Let's go off of your proposal.  Where

 8     on yours would be eliminating it?  Same paragraph?

 9          **MS. BAUTISTA:**  So our proposal -- the same

10     paragraph.  So also page 6, paragraph 3.  And ours is based

11     off of a prior agreement with plaintiffs' counsel that we

12     would just include language stating that whatever the Court

13     orders is what the parties will do.

14          **MR. ANDERSON:**  Your Honor, this is Mr. Anderson.

15          Just to frame the issue, our view is that if

16     they're going to redact something, they have to provide us

17     with a log explaining why they redacted it.  We don't know

18     whether they're going to redact it because of privilege or

19     some other reasons, but if they're going to redact

20     information, we believe the rules require them to tell us

21     why they redacted it; not the content of privileged

22     information, obviously, but they need --

23          **THE COURT:**  Whether it's work product,

24     attorney-client privilege, or security, I mean those are the

25     three categories we have in this case.

1          **MR. ANDERSON:**  Yes, Your Honor.  That's been our

2     standing request, and the department has resisted it.

3          **THE COURT:**  I mean how do they go about challenging

4     the designations if they don't know if the redaction's based

5     upon security or attorney-client privilege?

6          **MS. BAUTISTA:**  I understand, Judge.  I mean what

7     we've been doing is, when tendering documents, we've said

8     the redactions contained within are for safety and security

9     concerns rather than doing a formal redaction log with

10    specific Bates page numbers on it.  I think those number of

11    redactions have been very limited, and based on the Court's

12    prior order, many of those documents will soon be produced

13    in unredacted attorneys' eyes only form.  So we're not

14    talking about a lot here, at least not now.

15         **THE COURT:**  Okay.  And so then the question is --

16    so you're indicating you're giving an indication of all

17    things that are redacted for security reasons?

18         **MS. BAUTISTA:**  Yes, Judge.

19         **THE COURT:**  But then what about if you're going to

20    withhold it on the basis of attorney-client privilege?

21         **MS. BAUTISTA:**  We certainly would do a log for

22    attorney-client privilege redactions, Judge.

23         **THE COURT:**  Okay.  So --

24         **MR. ANDERSON:**  All right.  Then --

25         **THE COURT:**  I think that satisfies that,

1    Mr. Anderson.  You'll either be told, *In this group we've*

2    *got, the redactions are all for security*, and then if it's

3    an attorney-client privilege, you'll get the more specific

4    log saying, *Here's who it came from, who it went to, and*

5    *it's legal advice, or it's work product.*

6         **MR. ANDERSON:**  Okay.  That's all we've been asking

7    for, Your Honor.

8         **THE COURT:**  Okay.  So let's just make sure that the

9    final version is reflective of that.  And the only caveat

10   that I'm allowing for is because I agree with plaintiff that

11   we could arbitrarily be eliminating relevant documents that

12   are not privileged if we had not included those case search

13   terms.  I'm going to allow for revisiting the issue of

14   logging depending on the results.

15        You know, if there's a number of individualized

16   hits that come up as a consequence of that term -- in other

17   words, these are documents that wouldn't have otherwise come

18   up, and it's a big trove, and we looked at them, *Judge, and*

19   *there's, you know, 500, and they're clearly all*

20   *attorney-client privilege*, all right, you know, that's the

21   kind of thing.  And I'm not -- I'm just using hypotheticals

22   here, but, obviously, that's when we revisit this topic.

23        Ms. Bautista, do you understand what I'm saying?

24        **MS. BAUTISTA:**  Yes, Judge.

25        **THE COURT:**  Okay.  Setting that issue aside, we're

 1    going to -- we've resolved the redaction identification.

 2          Okay.  What else?  Anything else?

 3          *MS. BAUTISTA:*  Just one second, Judge, and let me

 4    make sure there's nothing else.

 5          Your Honor, I don't see anything else that needs to

 6    be addressed.  Thank you.

 7          *THE COURT:*  Okay.  Mr. Anderson, you wanted to talk

 8    about scheduling issues?

 9          *MR. ANDERSON:*  Yes, Your Honor.

10          Under the Court's current case scheduling order --

11    I believe it was entered on September 7, 2016 -- we have a

12    case schedule that now is not going to be attainable.  We

13    obviously had hoped at the time Your Honor entered this case

14    schedule order in September of 2016 that we would have the

15    defendant's documents, you know, within 30 days or so.  That

16    hasn't happened.  This process took much, much longer than

17    certainly I anticipated, and so we have a series of dates

18    coming up here now, including a May 26 deadline for taking

19    the depositions of the plaintiffs and the defendants, so I

20    think we need to talk about resetting some of these dates.

21    I have some suggestions for Your Honor.

22          *THE COURT:*  Let me hear your suggestions.

23    Obviously, I agree with you on everything you've said so

24    far, so let's hear your suggestions.

25          *MR. ANDERSON:*  My suggestion is that nonexpert

1    depositions be completed by February 16, 2018.  Second

2    point, plaintiffs' motion for class certification and

3    opening expert reports, March 16, 2018.  Third entry,

4    plaintiffs' expert depositions to be completed by May 11th,

5    2018.  Defendant's opposition to class certification and

6    opposition expert reports would be due May 14th, 2018.

7           *THE COURT:*  What was your date for filing and then

8    their date for opposition?  Can you tell me that again?

9           *MR. ANDERSON:*  Yes.  Our filing of our expert

10   report, opening expert report, would be May -- I'm sorry,

11   March 16th, 2018.  And then I propose that their opposition

12   would be due May 14th, 2018, basically two months later.

13          *THE COURT:*  Did you say you'd give them a report

14   and your motion at the same time or were those staggered?

15          *MR. ANDERSON:*  No.  I proposed the same time,

16   Your Honor.  I propose that the plaintiffs' motion for class

17   certification and opening expert report would be due

18   March 16, 2018, and I propose that the defendant's

19   opposition to class certification and expert report would be

20   due May 14th, 2018.

21          *THE COURT:*  I'm sorry.  Does the defense have any

22   objection to those proposals?

23          *MR. ANDERSON:*  I have two more dates to propose

24   if --

25          *THE COURT:*  Okay.  Go ahead.

1          **MR. ANDERSON:**   Okay.   Then I would propose that the

2     defendant's expert depositions be completed by June 22,

3     2018, and I would propose that the plaintiffs, our clients'

4     class certification reply brief and reply expert reports be

5     due on June 25, 2018.

6          That completes -- well, I got one more.   I'm sorry.

7     It was on the next page.   And then the plaintiffs' expert

8     reply report depositions to be completed by July 20, 2018.

9     So that completes my list.

10          **THE COURT:**   Okay.   Does did defense have any

11     objection to those?

12          **MR. CAPLAN:**   Your Honor, it's Gary Caplan.

13          I don't think we have objections to the dates.   I

14     think -- we wouldn't agree at this time that they need a

15     reply expert, or reply expert report.   I think that's

16     premature.

17          **THE COURT:**   We'll call it "if any", right?   I mean

18     that's an open question.   Replies are disfavored but they're

19     allowed if you can make the case.   That's by local rule.   So

20     we'll just put "reply, if any".

21          **MR. CAPLAN:**   That's fine.

22          **THE COURT:**   I'm not presuming anything on that yet.

23          Okay.   So then the Court will adopt all those with

24     just that one additional caveat, and -- but I think in the

25     near term we need some targets.

1         All right.  So what I want is the final version of

2    the protocol given to me, you know, in a week at the latest.

3    So that gives us 'til next Wednesday.  That's also when

4    you're going to provide the affidavit to the defense.  May

5    as well send it to the Court, too, when you send along the

6    final version.

7         **MR. ANDERSON:**  Your Honor, this is Mr. Anderson

8    again.

9         The dates that I proposed have one additional

10   obvious caveat, and that is, not only do we get the protocol

11   in place but the defendants thereafter promptly produce the

12   documents.  I don't know.

13        **THE COURT:**  That's what I'm getting to.

14        **MR. ANDERSON:**  Okay.

15        **THE COURT:**  That's why I said "in the near term".

16   First things first.  We got -- I think we're there on the

17   protocol but, obviously, I'm relying on the parties to take

18   the Court's rulings, do those final tweaks.  Shouldn't even

19   take a week, but that's the most is a week from today I get

20   that final version, allowing for the fact that you all have

21   some other cases too.  So that's May 16th.

22        And then, so let's talk about getting this

23   production underway, getting these searches -- you know,

24   there's going to be searches of e-mails.  You've got

25   custodians identified.  You've got to start doing a rolling

1     production.

2          So give me some ideas from defense's end on the

3     first deadline.  And I'm going to be checking in with you

4     all to make sure we're on target.

5          **MS. BAUTISTA:**  Your Honor, I don't know how long an

6     e-mail search will take but I'd like to propose 30 days.

7     We've certainly been working on a rolling production.  I

8     think we're over 16,000 pages at this point that have been

9     produced.  We are taking it seriously and we expect to

10    continue to do that.

11         **THE COURT:**  Yeah.  I mean -- well, certainly 30

12    days.  I mean --

13         **MR. CAPLAN:**  This is Mr. Caplan.

14         I was going to suggest 60 days.  I think

15    Ms. Bautista was more optimistic than I.  I know DOIT has

16    a --

17         **THE COURT:**  Yes, I agree.  There's no way you're

18    going to get this whole thing done in 30 days.  It's just

19    not going to happen.

20         **MS. BAUTISTA:**  No, Judge, I didn't -- I'm sorry if

21    that's what you took that to mean.  I thought you wanted a

22    preliminary deadline or a deadline to check in, and that's

23    what I was trying to give the Court.

24         **THE COURT:**  Yeah, we'll have a check-in date, and

25    the Court's -- and I was going to check in with you all in

1    about 30 days.  We'll make the production deadline 60 days.

2         **MR. CAPLAN:**  I think that's probably a little

3    ambitious, Judge.  This is Gary Caplan.

4         I know DOIT -- I think 60 days will be okay if we

5    tell DOIT, run this production tomorrow.  That doesn't

6    happen with them.  They have a large queue and I think we'll

7    do our best to jump the queue, but nonetheless, I don't

8    anticipate us getting the results from DOIT for a number of

9    weeks.

10        **THE COURT:**  All right.  So what are you -- if 60

11   days --

12        **MR. CAPLAN:**  I think if we did 90 days for

13   production from today's date, Your Honor, that would still

14   give plaintiffs a lot of time to meet their February 16th

15   deadline.

16        **THE COURT:**  Okay.  But you're going to be producing

17   stuff starting much sooner than that, right?

18        **MR. CAPLAN:**  That's our belief and hope.

19        **THE COURT:**  Okay.  All right.  So 90 from today --

20   March, April, May, June, July, August 9.  And I'm going to

21   check in with you all -- I'm going to let you have that

22   date, but the Court's expectation is that there's going to

23   be substantial rolling production.  Let's face it, that is

24   the only way this is going to be successful.  So I'm going

25   to check in the week of -- why don't we say -- I'm looking

1    for a time the week of the 16th, so I'm just going to start

2    throwing out some dates to check in on this.  June 16th in

3    the afternoon or June 21st pretty much all morning.

4           **MS. BAUTISTA:**  Your Honor, this is Laura Bautista.

5           June 21st works for me.  The 16th I'm on vacation.

6           **THE COURT:**  Mr. Anderson, June 21st work for you?

7           **MR. ANDERSON:**  I am out of town on business.

8           **THE COURT:**  Until when?  It doesn't have to be the

9    21st, but I want to have it in that vicinity, so if a later

10   day is better, that's fine.  The 19th and the 20th I've

11   got -- right now I've got a trial with AG's office and it's

12   still set, so --

13          **MR. ANDERSON:**  All right.  Well, why don't you go

14   ahead and set it for the afternoon of June 16.  If I can't,

15   one of my capable -- I'm sorry, the afternoon -- I'm sorry.

16   I misspoke.

17          **THE COURT:**  I was saying the morning of the 21st.

18   I can't do it in the afternoon but I can -- let me just look

19   at the next date.  Unless you want me to go ahead and go

20   with the morning of the 21st; otherwise --

21          **MR. ANDERSON:**  That's what I was going to say,

22   Your Honor, that why don't you go ahead and set it for then.

23   It seems to be convenient, and if I can break free, I will

24   join you; if not, one or more of my capable colleagues will.

25          **THE COURT:**  Let me correct something now.  I

1    apologize.  So I thought that the afternoon was out and it's

2    actually the morning.  So we just -- I was just notified

3    that something that was scheduled for the afternoon actually

4    got moved to the morning of the 21st, so we're back to the

5    afternoon of the 21st.  Is that still okay, Mr. Anderson?

6         **MR. ANDERSON:**  Yes, Your Honor.

7         **THE COURT:**  Okay.  And that works for you,

8    Ms. Bautista?

9         **MS. BAUTISTA:**  Yes, Judge.

10        **THE COURT:**  Okay.  So we'll say 2:30 p.m. on

11   June 21st.

12             Now, let me address one thing.  I may as well do it

13   now because it's been raised and we haven't really addressed

14   this, but it's the issue of the -- you all have agreed to

15   produce native format plus some additional data, and I'm not

16   going to disrupt that agreement.  But how are we going to go

17   about addressing this issue of, *Hey, I've got to look at the*

18   *native format document.*  In order to review it, they don't

19   have -- you know, everybody -- IDOC doesn't have the

20   capabilities to produce a TIFF and then do the review.

21             So have you all figured out how we're going to deal

22   with, *Hey, Laura Bautista looks at the document and now it*

23   *says Laura Bautista just viewed this thing two days ago, and*

24   *that changes it,* but she looked at it to do a privilege

25   review.  And this is something that Mr. Anderson raised at

 1    at our last conference.  It's still a concern, I believe.

 2         *MR. ANDERSON:*  It is a concern.  There are software

 3    tools available to avoid that problem, and they're free of

 4    charge, I am informed.  We'd be happy to share those with

 5    Ms. Bautista.

 6         *THE COURT:*  Great.  Thank you.  Sounds like we've

 7    got a solution.

 8         All right.  I'll talk to you all on the --

 9    Mr. Anderson, can you have someone send our proposed orders

10    in-box, in Word format, those proposed dates just listed,

11    and then we'll enter that new proposed schedule that you all

12    gave us?

13         *MR. ANDERSON:*  Yes, Your Honor.

14         *THE COURT:*  Thank you.

15         And then the other thing is, we are going to be

16    sending, Mr. Anderson, to you, and, Ms. Bautista, to you --

17    oh, we already did this morning.  Okay.  We sent you those

18    letters that I had talked about the last time, and we got

19    another one too.  So there's three letters from inmates.

20         *MR. ANDERSON:*  Yeah, we received those shortly

21    before the 10:00 call today, Your Honor -- or the 9:00.

22         *THE COURT:*  All right.  I'll talk to you all on the

23    21st then.  Thank you very much.

24    *(Proceedings adjourned at 10:09 a.m)*

25                          *  *  *  *

1                    **REPORTER'S CERTIFICATE**

2

3          I, Laura A. Esposito, RPR, CRR, CCR(MO), Official Court
   Reporter for the U.S. District Court, Southern District of
   Illinois, do hereby certify that I reported in shorthand the
4  proceedings contained in the foregoing 35 pages, and that
   the same is a full, true, correct, and complete transcript
5  from the record of proceedings in the above-entitled matter.

6          Dated this 5th day of July, 2017.

7

8      *Laura A Esposito*            Digitally signed by Laura
                                     Esposito
                                     Date: 2017.07.05 13:44:33
9      _____      -05'00'
       LAURA A. ESPOSITO, RPR, CRR, CCR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25