IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| HENRY DAVIS, DOUGLAS COLEMAN, AARON FILLMORE, JEROME JONES, DESHAWN GARDNER, and PERCELL DANSBERRY on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>JOHN BALDWIN, Acting Director of the Illinois Department of Corrections,<br><br>        Defendant. | Case No. 3:16-cv-0600-SCW |

**DEFENDANT'S ANSWERS TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION**

Defendant JOHN BALDWIN, by and through his attorney, Lisa Madigan, Attorney General of the State of Illinois, and pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and this Court's January 29, 2018 order, hereby answers Plaintiffs' First Set of Requests for Admission (Doc. 116), by stating as follows:

**REQUESTS FOR ADMISSION**

**REQUEST TO ADMIT NO. 1**

Admit that you did not "[r]evise the Administrative Directive to limit the use of DS and the amount of time given for each rule violation" including limiting the "[m]aximum amount of DS time for 100 level violations [to] 180 days," the "[m]aximum amount of DS time for 200 level violations [to] 90 days," the "[m]aximum amount of DS time for 300 and 400 level violations [to] 15 days," and "[i]nclud[ing] training for staff on changes to the Administrative Directives to ensure compliance with new internal policies" in accordance with Vera's recommendations made on or around February 2012 as part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

    (1) on or before June 2, 2016, or
    (2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 1: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of**

**F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant denies in part and admits in part.** On April 1, 2017, the amendments to Departmental Rule 504 were enacted (41 Ill. Reg. 3869). Included in the amendments was a new Table A which delineates the maximum penalties for disciplinary offenses. This new Table A reduced segregation time for nearly every offense, often reducing the segregation time further than recommended by Vera.

- a) Included within the amendments to Departmental Rule 504 were reductions in maximum segregation time for many 100-level offenses to six (6) months, as recommended by Vera, or less than six months.
    - a. Specifically, Defendant denies maximum segregation time for the following offenses were not reduced. Maximum time for the following offenses were reduced as follows:
        - i. 101. Arson offense was reduced from one (1) year to six (6) months;
        - ii. 102b. Assault and 102c. Assault of an Offender were created to differentiate from 102a. Assault with Injury. 102b. Assault and 102c. Assault of an Offender offenses were reduced from one (1) year to three (3) months.
        - iii. 103. Bribery & Extortion offense was reduced from one (1) year to six (6) months;
        - iv. 105. Dangerous Disturbance offense was reduced from one (1) year to six (6) months;
        - v. 107. Sexual Misconduct offense was reduced from one (1) year to six (6) months;
        - vi. 109. Electronic Contraband offense was reduced from one (1) year to six (6) months;
        - vii. 110. Impeding or Interfering with an Investigation offense was reduced from one (1) year to three (3) months;
    - b. Defendant admits maximum penalties for the remaining 100-level offenses were not changed with the April 1, 2017, amendments to Departmental Rule 504 and remain at either indeterminate or 1 year.
- b) Included within the amendments to Departmental Rule 504 were reductions in maximum segregation time for many 200-level offenses to three (3) months, as recommended by Vera, or even less than three months.
    - a. Specifically, Defendant denies maximum segregation time for the following offenses were not reduced. Maximum time for the following offenses were reduced as follows:
        - i. 201. Concealment of Identity offense was reduced from six (6) months to three (3) months;
        - ii. 202. Damage or Misuse of Property offense was reduced from six (6) months to three (3) months;
        - iii. 204. Forgery offense was reduced from four (4) months to one (1) month;
        - iv. 205. Security Threat Group or Unauthorized Organizational Activity offense was reduced from one (1) year to three (3) months;
        - v. 206. Intimidation or Threats offense was reduced from six (6) months to three (3) months;

  vi. **210. Impairment of Surveillance offense was reduced from six (6) months to three (3) months;**
  vii. **211. Possession or Solicitation of Unauthorized Personal Information offense was reduced from six (6) months to zero (0) days;**
  viii. **213. Failure to Reveal Assets offense was reduced from six (6) months to three (3) months;**
 b. **Defendant admits maximum penalties for the remaining 200-level offenses were not changed with the amendments to Departmental Rule 504 and remain at six (6) months.**

c) **Included within the amendments to Departmental Rule 504 were reductions in maximum segregation time for all 300-level offenses to less than the fifteen (15) days recommended by Vera.**
 a. **Defendant denies maximum segregation time for the following offenses were not reduced to fifteen days or less. Specifically, maximum segregation time was reduced for 300-level offenses as follows:**
  i. **301. Fighting offense was eliminated;**
  ii. **302. Gambling offense was reduced from one (1) month to zero (0) days;**
  iii. **303. Giving False Information to an Employee offense was reduced from three (3) months to zero (0) days;**
  iv. **304. Insolence offense was reduced from one (1) month to zero (0) days;**
  v. **305. Theft offense was reduced from three (3) months to zero (0) days;**
  vi. **306. Transfer of Funds offense was reduced from three (3) months to zero (0) days;**
  vii. **307. Unauthorized Movement offense was reduced from two (2) months to zero (0) days;**
  viii. **308. Contraband or Unauthorized Property offense was reduced from three (3) months to zero (0) days;**
  ix. **309. Petitions, Postings, and Business Ventures offense was reduced from three (3) months to zero (0) days;**
  x. **310. Abuse of Privileges offense was reduced from three (3) months to zero (0) days;**
  xi. **311. Failure to Submit to Medical or Forensic Tests offense was reduced from three (3) months to zero (0) days;**
  xii. **313. Disobeying a Direct Order offense was added, previously having been designated as offense 403 and was reduced from three (3) months to zero (0) days.**
 b. **All penalties for 300-level offenses were, therefore, reduced further than recommended by Vera.**

d) **Included within the amendments to Departmental Rule 504 were reductions in maximum segregation time for all 400-level offenses to less than the fifteen (15) days recommended by Vera.**
 a. **Defendant denies maximum segregation time for 400-level violations were not reduced to less than fifteen days. Specifically, maximum segregation time for the following offenses were reduced as follows:**

          i. **402. Health, Smoking or Safety Violations** offense was reduced from three (3) months to zero (0) days;
         ii. **403. Disobeying a Direct Order** offense was eliminated and replaced by 313. in the preceding section;
       iii. **404. Violation of Rules** offense was reduced from one (1) month to zero (0) days;
       iv. **405. Failure to Report** offense was reduced from one (1) month to zero (0) days;
        v. **406. Trading or Trafficking** offense was reduced from one (1) month to zero (0) days.
    b. **All penalties for 400-level offenses were, therefore, reduced further than recommended by Vera.**
e) **Defendant further denies IDOC did not train staff on changes to the Administrative Directives to ensure compliance with new internal policies.**

## REQUEST TO ADMIT NO. 2

Admit that you did not "[r]eview all current DS and ADS cases to determine if they comply with all segregation policy changes" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 2: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, despite reasonable inquiry, Defendant cannot admit or deny whether all current DS and ADS cases were reviewed to "determine if they comply with all segregation policy changes;" however, IDOC required prison wardens to constantly review who was being sent to segregation as well as prisoners already in disciplinary segregation in light of new practices. (Angela Brown Doc 12A-00084). Although prison wardens and administrative officials always had the ability to reduce segregation, it was emphasized in 2012. Restoration of good time and reduction of segregation terms were encouraged. In mid-2015, IDOC reviewed inmates already placed in Administrative Detention and those with indeterminate segregation and allowed administrative and operational staff to make recommendations and require facility wardens to decide whether continued placement was warranted. On April 1, 2017, the amendments to Departmental Rule 504 were enacted (41 Ill. Reg. 3869), which required the Director and Deputy Director to personally review, within six months of placement in segregation and no less frequently than once every 90 days, the placement of offenders in indeterminate disciplinary segregation or who have disciplinary segregation terms of greater than one year.**

**REQUEST TO ADMIT NO. 3**

Admit that you did not "[r]eview all DS sentences to ensure correspondence with revised guidelines for 100-600 violations" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 3: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant refers to his response to Request No. 2.**

**REQUEST TO ADMIT NO. 4**

Admit that you did not "[r]eview all males currently in long-term DS to see if they meet criteria for ADS; [and] if not, [modify] their sentence" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 4: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

**REQUEST TO ADMIT NO. 5**

Admit that you did not "[r]eview all current Tamms ADS prisoners to see if they meet the new ADS criteria; [and] if not, move to an appropriate status and facility/unit" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 5: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits Tamms inmates were not subject to additional review as Tamms was closed on January 4, 2013, and there were no longer any "Tamms ADS prisoners" to review.**

**REQUEST TO ADMIT NO. 6**

Admit that you did not "[r]evise policies regarding use of temporary confinement (TC)" including by "[issuing] Offender Disciplinary Reports [] within 24 hours" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 6: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

**REQUEST TO ADMIT NO. 7**

Admit that you did not "[r]evise policies regarding use of temporary confinement (TC)" including by "[holding an] [i]nitial hearing [] within 72 hours to determine if TC is necessary pending [an] Adjustment Committee or Program Committee hearing" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 7: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

**REQUEST TO ADMIT NO. 8**

Admit that you did not "[r]eplace use of TC by alternative strategies within the facility/unit whenever possible" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 8: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

**REQUEST TO ADMIT NO. 9**

Admit that you did not "[r]evise policies for placement in ADS to mirror policies in use by [the Department of Corrections] in Ohio and Mississippi" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 9: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, despite reasonable inquiry, Defendant cannot admit or deny whether IDOC policies mirror the policies in Ohio and Mississippi. Ohio is no longer considered a "Best Practice" by Vera. (Bates pages 11630-11646). It is not possible to conduct a one-for-one comparison of policies in this manner as each state has unique facilities and other differences.**

**REQUEST TO ADMIT NO. 10**

Admit that you did not "[r]evise policies for placement in ADS [by] [i]ncorporat[ing] promising practices from the Maryland Department of Public Safety and Correctional Services" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 10: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, despite reasonable inquiry, Defendant cannot admit or deny whether IDOC policies incorporate "promising practices" from the Maryland Department of Public Safety and Correctional Services. It is not possible to conduct a one-for-one comparison of policies in this manner as each state has unique facilities and other differences.**

**REQUEST TO ADMIT NO. 11**

Admit that you did not "[s]tandardize wardens' authority to reduce the amount of time served in DS based on an agreed-upon plan with the prisoner" and "draft and implement a formal policy for use" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 11:** Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied as to standardizing the wardens' authority to reduce time in segregation. Despite reasonable inquiry, Defendant cannot admit or deny whether IDOC drafted and implemented "a formal policy for use" as the recommendation of Vera is vague and unclear. IDOC did, however, make the following changes to reduce segregation time following the Vera study:

   a) **Improved transparency procedures for prisoners to assist in behavioral modification and return to general population through a tiered approach. (Angela Brown Doc 12A-00084);**
   b) **Implemented a "Long Term Segregation Incentive Program," which was designed to enable offender participants the opportunity to actively work to shorten their segregation time and to receive services and privileges as a direct result of good institutional adjustment. (Angela Brown Doc 12A-00084) (*See* Long Term Segregation Incentive Program Manual, IDOC Bates # 016180-016184). Resulted in successful completion of the program where implemented and a reduction in segregation. (See IDOC Bates #34214-34215; native file: Long Term Segregation Incentive Program Progress Report 3-13.docx).**
       a. **By November 6, 2012, the LTSIP program at Pontiac Correctional Center had the following results: 11 offenders successfully completed the six month program, resulting in a combined reduction of 3,127 days of segregation. The lowest number of segregation days awarded to an offender was 75, the largest was 765 days, and the average was 284 days. (See IDOC Bates #34214-34215).**
       b. **By March 13, 2013, 10 offenders successfully completed the LTSIP at Menard Correctional Center. Only one of those offenders had received an additional disciplinary ticket after completing the program (as of March 13, 2013). (See native file: Long Term Segregation Incentive Progress Report 3-13.docx).**
   c) **Reviewed and restored good time for prisoners in segregation to mitigate overall prison time served, based on behavior and current policies. (Angela Brown Doc 12A-00084)**
   d) **Reduced the number of cases being sent to disciplinary segregation for all facilities. (Angela Brown Doc 12A-00084)**
   e) **Enacted Administrative Directive 05.12.101 for Administrative Detention Placement procedures within IDOC on April 22, 2014, to put in place timelines for review and to give inmates a path to get out of Administrative Detention. (*see* 011159-011168).**
   f) **In mid-2015, reviewed inmates already placed in Administrative Detention and those with indeterminate segregation. Allowed administrative and operational staff to make recommendations and require facility wardens to decide whether continued placement warranted.**
   g) **On March 1, 2016, implemented pilot program at Stateville Correctional Center for segregation offenders who did not meet the criteria of the Long Term Segregation Incentive Program (LTSIP). The program is designed to afford those offenders who do not meet LTSIP requirements with an opportunity to receive restorations of all**

**types based on consistent positive behavior. (Native document 16-49 Warden's Bulletin -- Segregation Review & Restoration Program).**

h) **On March 18, 2016, offenders at Stateville Correctional Center were informed that the pilot program in the above paragraph was successful and would continue for those segregation status offenders who are housed at Stateville Correctional Center. Inmates can remain in this program until they are eligible for the LTSIP. Inmates would begin at Step 1 and can advance to Step 6. Restoration of segregation time is based on the following chart:**

| Step | Step IDR Free | Restoration/Cut Days |
|---|---|---|
| 1 | 90 | 30 |
| 2 | 90 | 60 |
| 3 | 90 | 90 |
| 4 | 90 | 90 |
| 5 | 90 | 120 |
| 6 | Discretionary | Discretionary |

i) **On April 1, 2017, the amendments to Departmental Rule 504 were enacted (41 Ill. Reg. 3869). These amendments included the following:**
   a. **Requiring the Director and Deputy Director to personally review within six months of placement in segregation (rather than within the first year) and no less frequently than once every 90 days (rather than once every 180 days) the placement of offenders in indeterminate disciplinary segregation or who have disciplinary segregation terms of greater than one year.**
   b. **Any offender in disciplinary segregation may seek a reduction in the segregation placement in accordance with Section 504.120 (rather than just those offenders in disciplinary segregation for an indeterminate term).**
   c. **Offenders who are denied a reduction in segregation placement are entitled to a written decision including the factual basis for the denial.**
   d. **Modifying the offense numbers and definitions in Appendix A.**
j) **Implemented the ADRMP program, which is designed to phase offenders out of administrative detention and back into general population.**
k) **Implemented the Long Term Segregation Incentive Program at Dixon and Logan Correctional Centers. (According to Native Doc: STA Segregation Out-Of-Cell time CJL and MH (2) (2) (2)).**

**As of the date of these responses, counsel for the Defendant is not aware of additional changes made in response to the Vera study; however, IDOC continues to review its policies and procedures in an effort to reduce the use of long-term segregation.**

**REQUEST TO ADMIT NO. 12**

Admit that you did not "[h]ouse all male prisoners assigned to long-term DS (90 days or more) at Pontiac Correctional Center guided by Vera's/IDOC's simulations" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 12: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits that not *all* long-term disciplinary segregation inmates are housed at Pontiac Correctional Center; however, nearly all inmates in long-term segregation are presently housed at Pontiac Correctional Center. It is not possible, due to security requirements to keep some inmates separate from others and other unique circumstances, to house every single inmate in long-term segregation, without exception, at one facility.**

**REQUEST TO ADMIT NO. 13**

Admit that you did not "[h]ouse all male prisoners assigned to ADS at Tamms Correctional Center with enhanced service delivery, programming, and Behavioral Modification in terms of incentives and privileges" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 13: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits it did not fulfill this recommendation of Vera as Tamms was closed on January 4, 2013, and there were no longer any "male prisoners assigned to ADS at Tamms."**

**REQUEST TO ADMIT NO. 14**

Admit that you did not "[r]equire the Regional Deputy Director and the Chief of Operations to approve all transfers to and from Pontiac" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 14:** Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits the Regional Deputy Director and the Chief of Operations does not approve all transfers to and from Pontiac. IDOC did, however, charge the Regional Deputy Director with constant oversight and monitoring of changes and implementation of Vera's recommendations. (Angela Brown Doc 12A-00084).

**REQUEST TO ADMIT NO. 15**

Admit that you did not "[r]evise Pontiac housing policies for DS prisoners to require that the warden and IDOC interdisciplinary team approve all within-facility transfers, with the assistance of the Transfer Coordinator's Office" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 15:** Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits the Transfer Coordinator's Office for IDOC does not approve within-facility transfers inside Pontiac. Defendant admits the Warden and/or the IDOC multi-disciplinary team do not "approve *all* within-facility transfers," but deny the Warden and/or the IDOC multi-disciplinary team is not involved in many within-facility transfers at Pontiac.

**REQUEST TO ADMIT NO. 16**

Admit that you did not "[p]lace all incoming DS prisoners [at Pontiac] in the West Wing (intermediate level) unless behavior is threatening to staff" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 16:** Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits that not all incoming prisoners at Pontiac are placed in the West Wing unless behavior is threatening to staff or other inmates, or for other security threats.

**REQUEST TO ADMIT NO. 17**

Admit that you did not "[t]ransfer prisoners [at Pontiac] to North Wing (most restrictive level) only for serious violations and disruptions while in DS upon approval of the warden and the IDOC multi-disciplinary team" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 17: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant refers to his Response to Request No. 15 as to the approval of the warden and IDOC multi-disciplinary team. In addition, Defendant admits inmates are not transferred to North Cell House only for violations committed while in segregation as inmates who commit serious violations and disruptions in general population or administrative detention are also housed in North Cell House. Defendant denies that the North Cell House is not utilized for inmates who have committed serious violations and disruptions requiring placement in a more restrictive environment.**

**REQUEST TO ADMIT NO. 18**

Admit that you did not "[t]ransfer prisoners [at Pontiac] to East Wing (least restrictive level) based on positive behavior" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 18: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant denies that Pontiac did not utilize the East Cell House to transfer inmates who exhibited positive behavior following the Vera study and recommendation; however, Defendant admits Pontiac does not presently utilize the East Wing for segregation or administrative detention inmates due to bed space issues upon the closing of a portion of Stateville Correctional Center.**

**REQUEST TO ADMIT NO. 19**

Admit that you did not "[c]reate wing-based housing program for ADS prisoners at Tamms that is similar to the Pontiac plan" that includes "mental health housing, programming space, and an expanded ADRMP Step Down Program for ADS prisoners" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 19: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied to the extent the Step-Down program was not utilized and expanded at Tamms. Admitted to the extent a "wing-based housing program" was not utilized at Tamms as Tamms was closed on January 4, 2013.**

**REQUEST TO ADMIT NO. 20**

Admit that you did not "[p]rovide all ADS and long-term (more than 30 days) DS prisoners a document outlining the rules, regulations, and behaviors required to reduce segregation time and obtain release to general population, including an expected release date from ADS or long-term DS status, given compliance" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 20: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied. Inmates receive documents "outlining the rules, regulations, and behaviors required to reduce segregation time and obtain release to general population." Defendant denies inmates in long-term determinate segregation do not receive notice of their expected release date, but admits inmates in administrative detention do not always have notice of an expected release date.**

**REQUEST TO ADMIT NO. 21**

Admit that you did not "[r]equire an IDOC multi-disciplinary segregation team to review [the document described in Request to Admit No. 20] in a face-to-face, out-of-cell meeting with the prisoner within the first 5 days of transfer to segregation status" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or

(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 21: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, despite reasonable inquiry, Defendant cannot admit or deny this request as the document described in Request to Admit No. 20 is a reference to "a document" and many documents are provided to inmates and reviewed. Defendant admits IDOC policy does not require a face-to-face meeting with inmates within five days of transfer to segregation status for the purpose of reviewing ways to be released from segregation; however, IDOC has increased the frequency of face-to-face meetings with inmates in administrative detention and long-term segregation and, pursuant to the *Rasho* litigation, inmates have a face-to-face contact with a mental health professional within seven days of placement in segregation.**

## REQUEST TO ADMIT NO. 22

Admit that you did not "[p]rovide face-to-face reviews every 60 days to all prisoners assigned to ADS and long-term DS" that "[i]ncluded assessment of progress, time reduction/release updates, and program plans" and "[p]rovide[d] prisoners copies of all relevant placement and review documents" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 22: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, Defendant admits IDOC does not require face-to-face reviews every 60 days of all prisoners in administrative detention or long-term segregation. Defendant admits, however, that the following changes have been made within IDOC since the Vera study:**
a) **IDOC required prison wardens to constantly review who was being sent to segregation as well as prisoners already in disciplinary segregation in light of new practices. (Angela Brown Doc 12A-00084). Although prison wardens and administrative officials always had the ability to reduce segregation, it was emphasized in 2012. Restoration of good time and reduction of segregation terms were encouraged.**
b) **Reviewed and restored good time for prisoners in segregation to mitigate overall prison time served, based on behavior and current policies. (Angela Brown Doc 12A-00084)**
c) **Reduced the number of cases being sent to disciplinary segregation for all facilities. (Angela Brown Doc 12A-00084)**
d) **Enacted Administrative Directive 05.12.101 for Administrative Detention Placement procedures within IDOC on April 22, 2014, to put in place timelines for review and to give inmates a path to get out of Administrative Detention. (*see* 011159-011168).**

e) In mid-2015, reviewed inmates already placed in Administrative Detention and those with indeterminate segregation. Allowed administrative and operational staff to make recommendations and require facility wardens to decide whether continued placement warranted.
f) On April 1, 2017, the amendments to Departmental Rule 504 were enacted (41 Ill. Reg. 3869). These amendments included the following:
   a. Requiring the Director and Deputy Director to personally review within six months of placement in segregation (rather than within the first year) and no less frequently than once every 90 days (rather than once every 180 days) the placement of offenders in indeterminate disciplinary segregation or who have disciplinary segregation terms of greater than one year.
   b. Any offender in disciplinary segregation may seek a reduction in the segregation placement in accordance with Section 504.120 (rather than just those offenders in disciplinary segregation for an indeterminate term).
   c. Offenders who are denied a reduction in segregation placement are entitled to a written decision including the factual basis for the denial.
   d. Modifying the offense numbers and definitions in Appendix A.
g) IDOC continues to review offenders placed in Administrative Detention no fewer than every 90 days as outlined in Departmental Rule 504.690.

**As of the date of these responses, counsel for the Defendant is not aware of additional changes made in response to the Vera study; however, IDOC continues to review its policies and procedures in an effort to reduce the use of long-term segregation.**

## REQUEST TO ADMIT NO. 23

Admit that you did not "[o]ffer recreation and showers to all prisoners in segregation in compliance with ACA standards" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 23: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied that prisoners in segregation have not been offered increased out-of-cell time, including an increase in recreation and shower time. Despite reasonable inquiry, Defendant cannot admit or deny whether the standards are in line with unspecified ACA standards.**

## REQUEST TO ADMIT NO. 24

Admit that you did not "[e]xpand use of ADRMP Step Down Program and other programs for prisoners being released [from] DS including [i] [g]raduated opportunities for monitored interaction with other prisoners near the end of a segregation sentence [and] [ii] [p]risoners being escorted but not cuffed for the last 30 days of their time in DS or ADS given

good behavior" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 24: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, defendant admits prisoners are cuffed while escorted in segregation and administrative detention. Defendant denies the remainder of this request.**

### REQUEST TO ADMIT NO. 25

Admit that you did not "[a]dminister mental health evaluations within 7 days of admission to DS for all prisoners receiving long-term DS" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 25: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

### REQUEST TO ADMIT NO. 26

Admit that you did not "[e]nhance mental health services for prisoners in segregation at […] Menard[] and Stateville" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 26: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

### REQUEST TO ADMIT NO. 27

Admit that you did not "[e]nhance mental health services for prisoners in segregation at […] Menard[] and Stateville [by] [d]etermin[ing] approximate mental health population at each facility [and] [b]ased on that number, determin[ing] the number of licensed professionals needed at each facility" in accordance with the recommendations made by Vera on or around February

2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 27: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

### REQUEST TO ADMIT NO. 28

Admit that you did not "[e]nhance mental health services for prisoners in segregation at […] Menard[] and Stateville [by] develop[ing] dedicated housing, services, group treatment, and programming for mentally-ill prisoners in segregation" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 28: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

### REQUEST TO ADMIT NO. 29

Admit that you did not "[e]nhance mental health services for prisoners in segregation at […] Menard[] and Stateville [by] mandat[ing] out-of-cell visits with a mental health worker" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 29: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

### REQUEST TO ADMIT NO. 30

Admit that you did not "[e]nhance mental health services for prisoners in segregation at […] Menard[] and Stateville [by] develop[ing] a housing plan for mentally ill prisoners in segregation to separate them from non-mentally ill population" in accordance with the recommendations made by Vera on or around February 2012 as a part of the Vera study (*see* Davis et al., v. Baldwin et al., USDC-SD IL 010947-53 and 010954-60), either:

(1) on or before June 2, 2016, or
(2) as of the date of service of Plaintiffs' First Set of Requests for Admission.

**RESPONSE to No. 30: Defendant objects to Plaintiffs' request for admission related to the recommendations of Vera as not relevant to Plaintiffs' claims and outside the scope of F.R.C.P. 26(b)(1). Subject to and not waiving said objection, denied.**

        Respectfully submitted,

        JOHN BALDWIN,

            Defendant,

        LISA MADIGAN, Attorney General,
        State of Illinois,

            Attorney for the Defendant,

By   s/ Melissa A. Jennings
     Melissa A. Jennings, #6300629
     Assistant Attorney General
     500 South Second Street
     Springfield, IL 62701
     Phone: (217) 782-1841
     Fax: (217) 782-8767
     E-Mail: mjennings@atg.state.il.us
       & gls@atg.state.il.us

# CERTIFICATE OF SERVICE

The undersigned counsel for Defendant, JOHN BALDWIN, hereby certifies that on February 26, 2018, she caused a copy of the foregoing DEFENDANT'S ANSWERS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION to be filed with the Court electronically, and that copies of same were served electronically to the following counsel.

*Counsel for Plaintiffs:*

Kimball R. Anderson
Alyssa E. Ramirez (admitted *pro hac vice*)
Reid F. Smith (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
312-558-5600 (tel)
312-558-5700 (fax)
kanderson@winston.com
aramirez@winston.com
rfsmith@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, IL 60640
773-769-1411 (tel)
773-769-2224 (fax)
alan@uplcchicago.org

    s/ Melissa A. Jennings
Melissa A. Jennings, #6300629
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
Phone: (217) 782-1841
Fax: (217) 782-8767
E-Mail: mjennings@atg.state.il.us
 & gls@atg.state.il.us