UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

HENRY DAVIS, *et al.*,
    Plaintiffs,

v.

LATOYA HUGHES,
    Defendant.

Case No. 3:16-cv-00600-MAB

Hon. Mark A. Beatty

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF AMENDED SCHEDULING ORDER

Defendant's expert disclosures were due September 1, 2023, per this Court's Scheduling Order (Doc. 340). Instead of serving expert disclosures, Defendant filed on September 1, 2023, its motion for entry of amended scheduling order seeking to extend not only its deadline for disclosing expert reports (by 90 days), but also its deadline for dispositive motions (by 112 days).[1] Defendant's motion fails to identify any "good cause" for an extension (as required by Rule 16 of the Federal Rules of Civil Procedure), let alone extensions of 90 days and 112 days. At this late date in this action, which has been pending since June 2, 2016, Defendant's request for additional extensive delays is beyond the pale and should be denied.

Defendant's request to modify the Court's scheduling order is governed by Rule 16(b)(4), Federal Rules of Civil Procedure. That Rule provides a schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good-cause standard focuses on the diligence of the party seeking the extension. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720

---

[1] Defendant's motion says that the parties met and conferred shortly before September 1 regarding Defendant's request, but this is only partially true. In the latest iteration of the parties' discussion, Defendant requested an extension of 75 days for disclosing its expert reports but made no request to extend the deadline for dispositive motions by 112 days.

1

(7th Cir. 2011). To demonstrate good cause, a party must show that, despite its diligence, the timetable could not reasonably have been met. *Carter v. David*, 2022 WL 488008, at *1 (S.D. Ill.) (citing *Smith v. Howe Military Sch.* No. 3, 1997 WL 662506 (N.D. Ind. Oct. 20, 1997)).

No good cause exists here. The entirety of Defendant's supposed good cause is buried on page 4 of its motion, as follows:

> Good cause exists to grant this request because defense counsel has met with several potential experts over the years while this case has been pending. After much consideration, we have selected one but, due to bureaucratic issues inherent with the State retaining and paying an external expert, our contracting process has taken some time. Further, after receiving Plaintiffs' expert reports (disclosed 7/21/23) and taking depositions in light with the deposition schedule, there are some items that will need to be address with in-person tours for our expert, who lives out-of-state.

(Doc. 353 at 4).

That's it in a nutshell—"bureaucratic issues" are the supposed good cause. Moreover, it is Defendant's own bureaucracy that is the problem. A party's self-imposed bureaucratic sclerosis is simply not the sort of "good cause" required by Rule 16. *Cf. Mississippi v. Turner*, 498 U.S. 1306, 1306, 111 S. Ct. 1032 (1991) (Scalia, Circuit Justice) (an "overextended caseload is not 'good cause shown,' unless it is the result of events unforeseen and uncontrollable by both counsel and client."); *Pfeiffer v. Merit Sys. Prot. Bd.*, 230 F.3d 1375 (Fed. Cir. 1999) (affirming decision that a heavy attorney workload and busy travel schedule does not constitute good cause). Here, Defendant concedes that it only recently selected an expert. Defendant, therefore, waited seven years to hire an expert, who apparently now wants to tour Defendant's prison facilities—facilities to which Defendant, unlike Plaintiffs, has unfettered access.

It is not as if Defendant was somehow surprised by Plaintiffs' expert disclosures. Plaintiffs' expert Prof. Craig Haney toured Defendant's prison facilities in 2019 and submitted his expert declaration in support of class certification on September 6, 2019. *See* Decl. of Craig Haney,

2

Ph.D., J.D. in Supp. of Pl.'s Mot. for Class Certification (Doc. 222-3). Plaintiff's expert Eldon Vail also toured Defendant's prison facilities in 2019 and submit his expert declaration in support of class certification on September 6, 2019. *See* Decl. of Eldon Vail in support of class certification (Doc. 222-4). In summary, Prof. Haney opined that Defendant's ongoing policies and practices of confining thousands of inmates under conditions involving extreme isolation is causing and/or exacerbating the mental illness in those inmates. Mr. Vail, in turn, opined that the conditions of confinement for thousands of inmates under Defendant's custody were far below accepted norms and that these inmates were afforded little or no due process in challenging this type of confinement. This Court relied on these expert declarations in its order (Doc. 230) granting Plaintiffs' motion for class certification.

At that point, in the Fall of 2019, Defendant was fully aware of the nature and scope of the opinions of Plaintiffs' experts. Other than updating those opinions so that they are based on current conditions, nothing has changed. Yet Defendant did nothing to retain experts for another four years, and now pleads that its own lack of diligence somehow constitutes good cause.

After Eldon Vail retired, Plaintiffs replaced him with expert Dan Pacholke and, on June 16, 2022, disclosed that Mr. Pacholke and Prof. Haney would like to tour Defendant's prison facilities. (*See* June 16, 2022, email from Plaintiff's counsel Nicole Schult to Defendant's counsel Lisa Cook, Ex. A hereto). Defendant allowed Mr. Pacholke and Prof. Haney to tour Defendant's prison facilities, and to interview inmates, in October and November 2022. Plaintiffs thereafter requested inmate files for the inmates interviewed by Mr. Pacholke and Prof. Haney.[2] Defendants completed

---

[2] Defendant asserts that "on December 2, 2022, Plaintiffs requested for the first time production of extensive records for over 300 prisoners" and requested an extension of Plaintiffs' expert report deadline on the same date "stating simply that they would not be disclosing expert reports as soon as hoped." This is a misrepresentation. Plaintiffs' counsel emailed Defendant on October 25, 2022—while the expert tours were still ongoing—referencing the inmate files that would need to

the production of the inmate files on March 10, 2023.[3] Thereafter, Plaintiffs served Mr. Pacholke's and Prof. Haney's Rule 26 expert disclosures on July 21, 2023, in accordance with this Court's scheduling Order (Doc. 340).

In summary, Prof. Haney's Rule 26 disclosure opined that Defendant's ongoing policies and practices of confining thousands of inmates under conditions involving extreme isolation was continuing to cause and/or exacerbate mental illness in those inmates. Mr. Pacholke, in turn, agreed with Mr. Vail that the conditions of confinement for thousands of inmates under Defendant's custody were far below acceptable norms and that these inmates were afforded little or no due process in challenging this type of confinement. Plaintiffs also served a short report from economist Anna King compiling inmate housing data provided by the Illinois Department of Corrections ("IDOC") and a two-page supplemental disclosure from Eldon Vail that merely adopted his opinions disclosed in his 2019 report and stated that if called to testify at trial, he intends to testify about the opinions disclosed in that report.

---

be produced. Plaintiffs then provided the full list of prisoner names for file production on December 2, 2023. The parties followed the same process (i.e., tours followed by file production of the prisoners interviewed) with regard to the class certification expert reports. Plaintiffs' good cause for extending this deadline was stated in the stipulation entered on December 2, 2022 (Doc. 286) and in the January 5, 2023, joint motion to enter the proposed modified scheduling order (Doc. 288).

[3] Defendant credits itself for "complet[ing] production of the inmate files earlier than promised, on March 10, 2023." Defendant's self-congratulation is misplaced. The parties agreed on the group of prisoners on December 16, 2022, and Defendant agreed on January 4, 2023, to produce the files on a rolling basis. Instead, Defendant held off and produced them in two large chunks on March 3 (1,162 documents comprising 147,790 pages) and March 10, 2023 (1,113 documents comprising 41,179 pages). Defendant gave no explanation for the bulk (as opposed to rolling) productions and no apparent justification for the delay in producing these files (which did not require review for attorney-client privilege).

In short, the July 21, 2023, expert disclosures revealed no new expert theories. The only change in their opinions was that the cruel and unusual conditions of extreme isolation at Defendant's prisons have become worse since class certification in this action.

Defendant's counsel deposed Prof. Haney on August 11, 2023, and deposed Mr. Pacholke on August 17, 2023.[4] Defendant then waited until September 1, 2023—the last day for disclosure of Defendant's Rule 26 expert reports—to file its motion to modify the scheduling order.

Other than its vague reference to "bureaucratic issues," Defendant makes no attempt to meet the "good cause" standard of Rule 16(b)(4). Defendant does not even address, let alone satisfy, the first prong of Rule 16(b)(4), namely that the movant demonstrate that it has been diligent in complying with the Court's scheduling order. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (the party seeking modification must demonstrate diligence). Defendant also makes no attempt to satisfy the second prong of Rule 16(b)(4), namely that despite its diligence, the timetable could not have been met. *See Carter v. David*, 2022 WL 488008, at *1 (S.D. Ill.) (citing *Smith v. Howe Military Sch.* No. 3, 1997 WL 662506 (N.D. Ind. Oct. 20, 1997) (movant must show that the timetable could not have been met despite diligence). Defendant concedes that its counsel has been meeting "with several potential experts *over the years* while this case has been pending." (Doc 353 at 4, emphasis added). Thus, long ago Defendant was aware of the potential need to retain experts. Defendant, however, does not explain when it attempted to contract with an expert or why, despite diligence, it could not have retained an expert years ago, let alone by September 1, 2023. Under these circumstances, Defendant has failed its Rule 16 burden under settled law.

---

[4] Defendant elected against deposing Eldon Vail again because it previously had deposed him in connection with his declaration in support of class certification.

Although Rule 16(b)(4) and the applicable case law focus on the diligence of the party seeking the extension (*Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)), Defendant inexplicably devotes the first four pages of its motion focusing on prior modifications of the scheduling order. Indeed, the parties have been forced on several occasions to seek modification of the schedule orders. On each occasion, however, the proposed modification was supported by good cause, namely Defendant's ongoing difficulty in timely complying with its discovery obligations. The parties June 23, 2023, Joint Motion to Enter Proposed Modified Schedule Order, for example, recited the fact that despite the age of this action, in March 2023, Defendant made a production of nearly 200,000 documents, which Plaintiffs' counsel needed to review for purposes of incorporating into their expert reports. (Doc. 339 at 1). And, as Defendant concedes in its current motion to amend the scheduling order, Defendant was still producing responsive files and other documents on June 13, 2023, and again on June 19, 2023. (Doc. 353 at 3).

Defendant's June 19, 2023, document production was particularly egregious and prompted the following inquiry by Plaintiffs' counsel:

> Dear Lisa: Today we received your client's production of approximately 799 documents and 24,546 images. Fact discovery closed months ago per court order. It appears that your client is attempting to dump self-serving material on us well after the close of fact discovery and on the eve of Plaintiffs' expert report deadline (June 30, 2023). The materials appear responsive to Plaintiff's Rule 34 document requests propounded long ago. The materials also appear to be those that Defendant was required to disclose long ago pursuant to Rule 26. Emails (example attached hereto) included in your client's production today show that the Illinois AG's office did not ask IDOC for this material until June 5, 2023, which, to state the obvious, is long after the close of discovery and long after responses to Plaintiffs' Rule 34 requests were due. Rule 37(c)1, Federal Rules of Civil Procedure, provides, in pertinent part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (c), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." This isn't harmless. What is your client's substantial justification for this extremely late and large document production?

6

(Anderson email dated June 19, 2023, attached hereto as Exhibit B). Defendant provided no persuasive justification. Nevertheless, Plaintiffs' counsel reviewed this very large and very late document production, and timely served Plaintiffs' expert disclosures on July 21, 2023.

It is important to note that in this case (as in all prisoner cases) Defendant not only has exclusive and unlimited access to its own facilities, but controls access to virtually every relevant document. The delays described by Defendant in its motion (with the exception of one occasion when Plaintiffs' experts caught COVID) were all caused by the Defendant's delay in producing its own documents. The foregoing quoted example is only one of scores of examples of delays caused by Defendant's inability to comply with its discovery obligations.

In short, this action has suffered massive delays already, almost all caused by Defendant's failure to timely comply with its discovery obligations. Now, here we go again. Defendant is seeking more delay. Rather than demonstrating that the further delay sought could not have been avoided despite its own diligence, Defendant attempts to justify modification of the scheduling order by arguing that it did not object to earlier modifications of the scheduling order, all but one of which were caused by Defendant's own discovery defaults. This misguided reasoning does not meet Rule 16(b)'s good-cause standard. The Rule 16(b) standard is not whether Defendant acceded to extensions sought by Plaintiffs because of Defendant's failure to timely produce documents. Instead, the standard is whether the movant was diligent and whether, despite its diligence, the court's deadline could not have been met. Defendant has not come close to meeting this standard.

Furthermore, Defendant's delays have been, and will continue to be, highly prejudicial to Plaintiffs. As the Court is aware, many inmates have written the Court (and hundreds more have written Plaintiffs' counsel) citing dire circumstances and begging for relief. The relief sought in

this action is not money damages. The relief sought is injunctive only and is based on the ongoing irreparable harm to a large, certified class of plaintiffs. They have suffered enough. Their harm is not reparable. Defendant, for over a decade, has displayed nothing but deliberate indifference to this ongoing irreparable harm. Indeed, as noted in this Court's class certification order, the harmful nature of social isolation caused by solitary confinement/restrictive housing is well known to the Illinois Department of Corrections. In 2008, the IDOC retained the Vera Institute of Justice, an independent, nonpartisan nonprofit center for justice, policy, and practice, to study its segregation policies and to make recommendations for reform. (Doc. 222-18). The Vera Institute made recommendations that, as this Court observed in 2021, "have largely fallen on deaf ears." (Doc. 230 at 17).

Over a decade after the Vera Institute report and recommendation, Defendant continues to suffer from "deaf ears." Defendant's use of extreme isolation as a means of punishing inmates, often for the most minor offenses, is increasing. Data charted below from the IDOC's publicly available Monthly Operation Reports (available on the IDOC website) show that the overall percentage of IDOC prisoners subjected to solitary confinement/restricted housing has not changed materially since this lawsuit was instituted. Although the total prison population and the number of persons in solitary confinement/restricted housing temporarily declined during the COVID pandemic, both the totals and overall percentages of prisoners in solitary confinement/restricted housing have returned to their pre-pandemic norms.





Additionally, data compiled from IDOC solitary confinement/restricted housing data produced in this case shows that IDOC placements of persons in these housing units on a per capita basis have been rising dramatically since 2020 and that some prisoners have been housed in restricted housing for extremely long periods of time (many years in some cases).





**Prisoner Counts By Number of Days in Restrictive Housing**
*January 2011 – May 2023*

| Days in Restrictive Housing | Prisoner Count |
|---|---|
| ≥1 | 65,367 |
| ≥30 | 39,710 |
| ≥60 | 25,889 |
| ≥90 | 19,878 |
| ≥120 | 15,628 |
| ≥180 | 11,212 |
| ≥270 | 7,418 |
| ≥365 (1 year) | 5,457 |
| ≥730 (2 years) | 2,317 |
| ≥1,095 (3 years) | 1,327 |
| ≥1,460 (4 years) | 826 |
| ≥1,825 (5 years) | 555 |
| ≥2,190 (6 years) | 354 |
| ≥2,555 (7 years) | 228 |
| ≥2,920 (8 years) | 146 |
| ≥3,285 (9 years) | 87 |
| ≥3,650 (10 years) | 44 |
| ≥4,015 (11 years) | 23 |
| ≥4,380 (12 years) | 11 |

**Notes & Sources:**
O360 Data, Illinois Department of Corrections.

This data demonstrates that the ongoing harm to the certified Plaintiff class is severe. Yet Defendant's September 1, 2023, motion for delay does not even pay lip service to the prejudice to plaintiffs that they will suffer if this action is delayed by another 90 to 112 days. Defendant simply has not met its strict Rule 16(b)(4) burden of demonstrating good cause for modifying the scheduling order deadline for disclosure of expert reports.

Defendant also has not even addressed, let alone met, its burden of demonstrating why this Court's deadline of September 29, 2023, for dispositive motions should be extended by 112 days. Rule 56(b), Federal Rules of Civil Procedure, provides that a defending party "may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Because a summary judgment motion may be filed at any time, the fact that expert discovery is not complete, or that no discovery has been undertaken, does not mean that a

motion for summary judgment is premature. *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir.2006) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir.1986)); *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir.1994) (same). It is settled that Rule 56 motions for summary judgment can be filed at any time.

Here, Defendant does not explain why, despite diligence, it could not have moved for summary judgment at any time since this action was commenced over seven years ago. Defendant does not identify either a legal basis or an uncontested issue of material fact that could not have been asserted pursuant to Rule 56 with diligence at any time during the last seven years. Surely Defendant's dispositive motion, if any, cannot depend on additional prison tours at this late date by an unnamed out-of-state expert. This complete failure by Defendant to show good cause compels denial of Defendant's motion to extend its deadline for dispositive motions by 112 days.

Under these circumstances of a complete failure by Defendant to show good cause for modifying the scheduling order, this Court should deny Defendant's motion.

Respectfully submitted,

Counsel for Plaintiffs
/s/ Kimball R. Anderson

| | |
|---|---|
| Alan S. Mills | Kimball R. Anderson |
| Nicole Schult | Matthew R. DalSanto |
| UPTOWN PEOPLE'S LAW CENTER | Reid F. Smith |
| 4413 North Sheridan Road | ARDC No. 6308794 |
| Chicago, IL 60640 | WINSTON & STRAWN LLP |
| 773-769-1411 (tel) | 35 W. Wacker Drive |
| 773-769-2224 (fax) | Chicago, IL 60601 |
| alan@uplcchicago.org | 312-558-5600 (tel) |
| | 312-558-5700 (fax) |
| | kanderso@winston.com |
| | mdalsanto@winston.com |
| | rfsmith@winston.com |

## CERTIFICATE OF SERVICE

I, Reid Smith, an attorney, hereby certify that on September 5, 2023, I caused a copy of the foregoing Opposition to be served by electronic mail to counsel of record.

DATED: September 5, 2023    By:   */s/ Reid Smith*

One of Plaintiffs' Attorneys

Reid Smith
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
312-558-5600 (tel)
312-558-5700 (fax)
rfsmith@winston.com
