## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HENRY DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-CV-600-MAB |
| | ) | |
| LATOYA HUGHES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Plaintiffs' motion asking the Court to sanction Defendant for violating the protective order in this case by filing her motion for summary judgment unsealed on the public docket even though it contained information and exhibits that had previously been marked as "confidential" and/or "attorney eyes only" (Doc. 378). Plaintiffs ask the Court to strike the motion for summary judgment and make Defendant pay twice the reasonable attorney fees that they incurred in preparing the motion for sanctions (*Id.*). For the reasons explained below, Plaintiffs' request for sanctions (Doc. 378) is granted in part. The Court finds that Defendant's violation of the protective order merits sanctions but opts not strike Defendant's motion for summary judgment and instead resolve the motion on the merits and provide finality on the issues presented therein. Plaintiffs will, however, be awarded their attorney's fees and expenses incurred in bringing the instant motion.

## LEGAL STANDARD

Plaintiffs' motion asks for sanctions pursuant to Rule 16(f)(1), Rule 37, and/or the Court's inherent authority (Doc. 378, pp. 7–10). "District courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct . . . ." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012). Sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process, otherwise conducted the litigation in bad faith, or engaged in misconduct. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012).

Federal Rule of Civil Procedure 37 authorizes a range of sanctions against a party who "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A).[1] There is some disagreement between the circuits as to whether Rule 37(b)(2) encompasses violations of a protective order governing the production of confidential documents. *Compare Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1322–23 (11th Cir. 2001) (holding that Rule 37(b) does not encompass protective orders issued pursuant to Rule 26(c)), *with Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) ("In our view, by prescribing the method and terms of the discovery of confidential material, the Protective Order was granted 'to provide or permit discovery' of confidential documents within the meaning of Rule 37(b)."); *Falstaff Brewing Corp. v.*

---

[1] Plaintiffs' counsel indicated at the hearing that their preferred vehicle for relief is Rule 37.

*Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir.1983) (upholding award of attorneys' fees under Rule 37(b) for violation of a protective order).

The Seventh Circuit has suggested that a party who violates a protective order can be held to have violated Rule 37. *See Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005). *See also* FED. R. CIV. P. 37, advisory committee notes to 1970 amendment ("Various rules authorize orders for discovery—*e.g.*, . . . Rule 26(c) as revised [for protective orders]" and "Rule 37(b)(2) should provide comprehensively for enforcement of all these orders."); *Ramirez*, 845 F.3d at 776 ("We have signaled a willingness to broadly construe what constitutes a court order for purposes of imposing sanctions under Rule 37.") And courts in this circuit have found that sanctions can be imposed under Rule 37(b)(2) for such violations. *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2020 WL 6153269, at *2 (N.D. Ill. Oct. 11, 2020) *Instant Tech., LLC v. DeFazio*, No. 12 C 491, 2013 WL 5966893, at *3 (N.D. Ill. Nov. 8, 2013); *Whitehead v. Gateway Chevrolet, Oldsmobile,* No. 03 C 5684, 2004 WL 1459478 at *3 (N.D. Ill. June 29, 2004). Because Defendant does not dispute that sanctions under Rule 37(b)(2) are available for violations of a court-imposed protective order (*see* Doc. 386), the Court assumes the same.

Rule 16(f)(1) authorizes and incorporates many of the same sanctions as Rule 37 for a party who "fails to obey a . . . pretrial order." FED. R. CIV. P. 16(f)(1) (incorporating FED. R. CIV. P. 37(b)(2)(A)(ii) to (vii)). Sanctions under Rules 16 and 37 can be imposed based solely on a party's unexcused failure to comply with a discovery order. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). "The simple failure to comply is enough." *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 165 (7th Cir. 1994) (discussing Rule

37 sanctions). *See also Tamari v. Bache & Co.*, 729 F.2d 469, 473 (7th Cir. 1984) ("The weight of authority . . . holds that the culpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all.") (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 208, (1958)). A finding of willfulness, bad faith, or fault is only required to impose the most severe sanction—dismissal or default. *e360 Insight*, 658 F.3d at 642 (citation omitted) (discussing Rule 37 sanctions); *Long v. Steepro,* 213 F.3d 983, 986 (7th Cir. 2000) (discussing Rule 16 sanctions). *See also Newman v. Metropolitan Pier & Exposition Authority,* 962 F.2d 589, 591 (7th Cir. 1992) ("If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal (if the failure is by the plaintiff) or default (if by the defendant) would be an excessively severe sanction.") (alterations in original).

A court can impose lesser sanctions without such a finding so long as the sanctions are proportional to the failure they are punishing. *e360 Insight*, 658 F.3d at 643 (explaining that negligence "is a degree of fault sufficient for imposing sanctions" under Rule 37) (citing *Tamari,* 729 F.2d at 474); *see also Long*, 213 F.3d at 986 ("The choice of appropriate sanctions is primarily the responsibility of the district court, however, the sanction selected must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.") (citations and internal quotation marks omitted); *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (any sanction under Rule 37(b)(2) "must be proportionate to the circumstances."); *Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992) ("[T]he circumstances of the failure must

be considered, because the judge must be guided by the norm of proportionality that guides all judicial applications of sanctions.") Relevant considerations "include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Donelson*, 931 F.3d at 569.

**BACKGROUND**

**A.  Protective Order**

Because the motion for sanctions relies on the protective order entered in this case, the Court will begin with a summary of the salient portions of that Order. The parties submitted an Agreed Confidential Order (also referred to herein as the protective order), which was entered by the Court with some slight modifications on December 5, 2016 (Doc. 45). The Order governed "all materials produced or adduced in the course of discovery," and allowed the parties to designate materials as "Confidential" if they contained "significant sensitive, proprietary and/or competitive information," including personal identifying information (Doc. 45, para. 1, 2). It allowed the parties to apply the higher designation of "Attorney Eyes Only" if the materials contained "extremely sensitive information," including medical information concerning any individual and "information that would threaten the safety or security of a prison, prisoners, or prison employees" (Doc. 45, para. 1, 2). Under the protective order, materials designated as "Confidential" or "Attorney Eyes Only" can be disclosed only to limited individuals in limited circumstances (*Id.* at para. 5). Such documents cannot be disclosed to anyone else, let alone the public at large, without the consent of the parties or an order of the Court (*see id.* at para. 5(b)(2), (9), 7). The protective order further commands that the parties are

5

not automatically authorized to file documents designated as "Confidential" or "Attorney Eyes Only" under seal (*Id.* at para. 7), or by extension, to redact confidential information. Rather, they must file a motion and allow the Court to determine whether the information should be sealed/redacted or made part of the public record (*Id.*).

## B.  Gang-related Information

When it came to producing gang-related information,[2] Defendant was not satisfied to rely on the "Confidential" and "Attorney Eyes Only" designations provided for in the Protective Order. Rather, Defendant went a step further and redacted certain information from documents that they produced in discovery, including (in pertinent part) information regarding inmate gang affiliations, ranks, aliases/nicknames, and known enemies (*see* Doc. 378-1, pp. 2, 3). According to Defendant, this type of information was extremely sensitive and highly confidential (*Id.* at p. 3). To the extent it was obtained through an investigation by the IDOC's gang intelligence unit, Defendant even asserted that it was "confidential pursuant to State law and the law enforcement investigatory privilege" (*Id.* at p. 4; *see also* p. 3). Defendant also claimed this type of information was harmful if disclosed—it had "the possibility of creating conflicts or even leading to death" (*Id.* at p. 5; *see also id.* at p. 3).

Defendant was concerned, in particular, with the fact that the "Attorney Eyes Only" designation permitted materials to be viewed by "employees of counsel" because Plaintiffs' attorneys at Uptown People's Law Center employed a former inmate, who,

---

[2] The IDOC refers to gangs as "Security Threat Groups," which they abbreviate as "STGs." The Court understands the terms "gang" and "security threat group" to be synonymous and uses them interchangeably throughout this Order.

according to Defendant, had been tied to STG activity, "still keeps in touch with incarcerated individuals[,] and has no enforceable obligation to keep the documents confidential" (Doc. 378-1, p. 5; *see also* Doc. 45, p. 4, para. 5(b)). Defendant implied that this employee might intentionally release the gang intelligence (*see* Doc. 378-1, p. 5.). Defendant insisted that the "very real safety, security, and other confidentiality concerns counsel[ed] against producing unredacted versions of documents, regardless of the designation under a protective order" and "urge[d]" the Court to "uphold the needed redactions and limit the amount of gang intelligence information Plaintiffs are entitled to receive" (*Id.* at pp. 1, 3).

Plaintiffs disputed that Defendant's safety and security concerns justified the redactions and argued that the "Attorney Eyes Only" designation was sufficient to safeguard the information (*see* Doc. 378-1, p. 3). Ultimately, Defendant agreed to produce documents containing gang-related information that the IDOC had already served on the named Plaintiffs (such as disciplinary reports for STG activity and Administrative Detention notices and reviews) in an unredacted form and marked as "Confidential" (*Id.* at p. 4). However, for all other class members, Defendant demanded the "strictest confidentiality" and objected to disclosing any gang-related information (*Id.*).

After considering the parties' arguments and conducting an in-camera review of some representative documents, Magistrate Judge Stephen Williams determined that the gang-related information was not only relevant to Plaintiffs' claims but necessary for them to be able "to conduct an adequate analysis of their theory of the case" (Doc. 80, pp. 1–2). But Judge Williams also found that Defendant had legitimate safety and security

concerns about such information getting out to other inmates (*Id.*). As a compromise, he directed Defendant to produce STG information for both the named Plaintiffs and unnamed class members unredacted and with an "Attorney Eyes Only" designation but ordered that the information be maintained at the law offices of Plaintiffs' attorneys at Winston and Strawn and only reviewed by attorneys on the case (*Id.* at p. 2). In other words, the information could not be maintained at Uptown People's Law Center and their attorneys had to go to Winston and Strawn to review it (*Id.*).

## C.  Class Certification Proceedings

At the class certification stage, Plaintiffs followed the protocol set forth in the protective order for filing confidential information. They filed an unsealed, redacted version of their Motion for Class Certification and all exhibits (Doc. 174), along with sealed and fully unredacted versions (Doc. 176), and a motion for leave to keep certain portions of the brief, as well as exhibits attached thereto, redacted (Doc. 172). They did the same for their reply brief (Docs. 195, 197, 198). Specifically, they asked to redact information in their briefs that quoted, summarized, or cited to documents that Defendant had designated as "Attorney Eyes Only," and to redact in whole or in part exhibits with the same designation (Docs. 172, 195). The information specifically at issue included photos from inside the prison and pages from inmate master files that contained medical information and Security Threat Group ("STG") information (Docs. 172, 195).

After reviewing Plaintiffs' briefs and exhibits, the Court expressed its reservations that all the requested redactions were necessary and directed the parties to confer with one another on the matter (*see* Docs. 219, 221). The parties determined that much of it

8

could be unredacted, but they requested that several things remain confidential. First, they asked to keep the names and IDOC identification numbers of putative class members redacted from the briefs and exhibits (Doc. 221). The Court agreed in principle with concealing the identities of the putative class members but instructed the parties to replace names with initials (as opposed to outright redacting the names) and eliminate or redact the IDOC numbers (*Id.*).

Second, the parties agreed that nothing in the body of Plaintiffs' expert reports needed to be redacted other than the names of putative class members and faces that appeared in photographs within the reports (Doc. 221, pp. 2–3). The Court agreed (*Id.*). Third, the parties asked to keep sealed/redacted Adjustment Committee Reports, grievance records, and mental health evaluations, reports, and treatment plans—which were all marked as "Attorney Eyes Only"—because they possibly reflected STG information or health/privacy-related information of prisoners. They asked that the same type of information within the briefs also remain redacted. The Court determined that it was not necessary to keep all of these exhibits redacted in full. The exhibits were ordered to be unsealed if they did not, in fact, contain any gang-related information and contained only generalized mental health-related information,[3] but putative class members' names that appeared in these exhibits had to be replaced with initials and the IDOC numbers redacted (*see id.* at pp. 3–6). Exhibits that contained more specific mental health-related

---

[3] For example, some of the exhibits at issue contained broad, unspecific statements pertaining to mental health, like that a prisoner had been designated as seriously mentally ill, had been evaluated, or had asked for a crisis team (*see* Doc. 221, pp. 3–6). The Court did not see any privacy reason for keeping these types of statements confidential (*Id.*).

information or any STG-related information were to remain redacted (*see id.*). This same type of information was also to remain redacted in the briefs (*Id.* at pp. 5–6).

DISCUSSION

It is beyond dispute, and Defendant herself admitted, that she violated the Protective Order when she filed her motion for summary judgment—which contained information from exhibits that had been marked as "Confidential" and/or "Attorney Eyes Only" and attached exhibits with those same designations—completely unsealed and largely unredacted (Doc. 378; Doc. 386, p. 4; Doc. 386-1, para. 12). The question for the Court is whether Defendant should be sanctioned for violating the protective order, and if so, what sanctions are appropriate.

Defendant says she should not be sanctioned (Doc. 386). Defense counsel submitted a declaration stating that she "believed [she] was following all applicable requirements for redaction and sealing" in filing Defendant's motion for summary judgment and corresponding exhibits, "but made a mistake." (Doc. 386-1, para. 21). The declaration demonstrates that confidentiality issues were not completely overlooked, and that Defendant was cognizant of them. Specifically, counsel claims to have consulted the Court's previous Order regarding redactions to/sealing of class certification documents, and she believed she complied with the dictates of that Order (*Id.* at para. 13; *see* Doc. 221). She said she redacted summary judgment exhibits in the same manner as class certification exhibits (Doc. 386-1, para. 15). She explained that some exhibits designated as "confidential" or "attorney eyes only" were later produced without the designation, and the wrong version was simply filed (Doc. 386-1, para. 16, 19). She also ran certain

10

exhibits past the IDOC's Special Litigation Counsel to make sure there were no safety and security concerns (Doc. 386-1, para. 16, 17).

Defendant contends that despite the mistake of including information from confidential exhibits in the summary judgment brief unredacted, and submitting confidential exhibits unsealed, sanctions are not warranted (Doc. 386, p. 4). According to Defendant, many of the paragraphs that Plaintiffs take issue with do not actually contain or cite to confidential information and therefore do not violate the protective order (*Id.* at pp. 4–5). As for the remaining paragraphs, which do contain information from exhibits designated as confidential, and the exhibits themselves, Defendant contends that good cause does not exist to seal and/or redact the information and exhibits (*Id.* at pp. 4, 6–13). And because redactions are not needed, there is no reason to issue sanctions (*Id.* at p. 6).

As an initial matter, Defendant's response strikes the Court as seemingly nonchalant, as if a clear violation of Court orders is no big deal. Defendant offered no meaningful explanation, either in the brief or at the hearing, as to how she failed to consider and follow the protective order (*see* Doc. 386). This type of oversight is difficult for the Court to comprehend. After all, protective orders are an exceedingly common feature of civil litigation. Adhering to them is a fundamental obligation for any attorney. And, in this case, the protective order was *the* governing document regarding the production and dissemination of information that the parties deemed to be confidential.

The excuses Defendant offered in her brief and the declaration attached thereto do her no favors. The Court is flummoxed by Defendant's assertion that she believed her motion for summary judgment and exhibits complied with the Court's previous order

regarding redactions/sealing (Doc. 386-1, para. 13), when that is obviously not the case. For example, at the class certification stage, the Court's first ruling—which was repeated numerous times throughout the Order, and with which the parties agreed—was that putative class members' names and IDOC numbers should be kept under wraps (*see* Doc. 221). But Defendant's summary judgment brief and numerous exhibits include non-Plaintiff class members' full names and IDOC numbers (*see, e.g.,* Doc. 370, para. 61 through 65, 90, 91; Docs. 370-19, -27, -30 through –33, -36 through –39, -51). As another example, the Court ordered—and the parties had already agreed—that gang-related information in the briefs and exhibits should remain redacted (Doc. 221, pp. 4, 5, 6 (re: Exhibits 15, 17, 40, and page 32 of Plaintiffs' reply brief)). But Defendant's summary judgment brief and numerous exhibits included both general and very specific gang-related information for named Plaintiffs as well as non-Plaintiff class members (*see, e.g.,* Doc. 370, para. 61 through 65; Docs. 370-16, -19, -24, -27, -30 through –33).

One of those exhibits—Exhibit 16, which is an email chain about some administrative detention reviews—merits its own discussion. As Defendant acknowledges (Doc. 386, p. 6), this same email chain was previously submitted at class certification by Plaintiffs as part of their exhibit 17, and the Court gave *specific* instructions as to how it should be redacted (Doc. 221, p. 5; *see also* Doc. 174-17 (original, fully redacted exhibit); Doc. 176-17 (sealed, unredacted version of exhibit); Doc. 222-17 (exhibit with redactions ordered by Court)). Defendant states that she "believed that the redactions to Exhibit 16 [of her summary judgment motion] complied with the Court's previous order regarding redactions/sealing in regards to the class certification documents" (Doc. 386,

p. 6). But two sentences later, Defendant admits that the redactions she made to her summary judgment Exhibit 16 *were not* the redactions previously ordered by the Court (*Id.*). In particular, Defendant fully redacted the names of non-Plaintiff class members' names, as opposed to using their initials, and unilaterally decided that none of the STG-related information needed to be redacted (*see* Doc. 370-16).

Defendant's public disclosure of STG-related information is particularly striking because it is a *complete* reversal from Defendant's previous position that STG information was so sensitive and the consequences of disclosure so dire that the information could not be disclosed, not even to Plaintiffs' counsel (*see* Doc. 378-1, pp. 2, 3, 4). While Judge Williams ordered the information to be disclosed, he also directed that it could not be kept at Uptown People's Law Center; it could only be kept at Winston and Strawn (Doc. 80). As Plaintiffs' counsel pointed out at the hearing, that requirement is *still* in effect today. For eight years now, Plaintiffs' attorneys from Uptown People's Law Center have had to go to Winston and Strawn any time they wanted to look at these discovery materials. This obstacle makes Defendant's seeming nonchalance about filing confidential information with her motion for summary judgment all the more troubling.

Another statement in the declaration—"For Defendant's MSJ Exhibit 24, I reviewed the exhibits Defendant had previously submitted in opposition to class certification, and redacted the same information from Exhibit 24 as had previously been redacted in class certification opposition exhibits, including class certification opposition

Exhibit 21, ECF 191-5"—left the Court puzzled (Doc. 386-1, para. 15).[4] But the Court reviewed class certification opposition exhibit 21, and it does not appear to contain any redactions (*see* Doc. 191-5). So how could summary judgment exhibit 24 have been redacted in the same manner as class certification opposition exhibit 21?

At any rate, while reviewing exhibit 21, (Doc. 191-5), the Court noticed that it was designated "attorney eyes only," (*see id.*), yet it was filed unsealed without authorization from the Court. The Court also noticed that the exhibit contained specific allegations about STG activity (*see* Doc. 191-5), which as already discussed above, contravened the parties' subsequent agreement and the Court's related order that Plaintiffs' class certification exhibits containing gang-related information should remain sealed (Doc. 221). These observations prompted the Court to review the rest of Defendant's class certification opposition exhibits. It turns out that Exhibit 21 was not the only exhibit designated as "attorney eyes only" that was filed unsealed and unredacted.[5] Exhibit 21 was also not the only exhibit that contravened the parties' subsequent agreement and the Court's related Order to redact STG information and health/privacy-related information.[6] And the Court also notes that a number of Defendant's class certification

---

[4] Summary judgment exhibit 24 is an Administrative Detention report for numerous inmates (*see* Doc. 370-24 (sealed); Doc. 435-24 (unsealed)). Class certification opposition exhibit 21 is the same type of report but only for Plaintiff Percell Dansberry (*see* Doc. 191-5).

[5] *See* Doc. 190-9; Doc. 190-10; Doc. 190-11; Doc. 190-13; Doc. 191-1; Doc. 191-6; Doc. 191-9; Doc. 192-3; Doc. 192-10; Doc. 193-1; Doc. 193-2 (only portions of document were designated as "attorney eyes only"); *see also* Doc. 190-8 (designated Attorney Eyes Only and containing redactions not approved by the Court).

[6] *See* Doc. 190-9 (containing specific STG information for Plaintiff Deshawn Gardner); Doc. 190-11 (same); Doc. 191-6 (containing specific STG information for Plaintiff Percell Dansberry); Doc. 192-10 (mental health treatment note for Plaintiff Henry Davis that mentions gang activity).

opposition exhibits did not adhere to the parties' subsequent agreement and the Court's related Order to use initials instead of putative class members' names and to redact their IDOC numbers.[7]

In other words, it seems to the Court that Defendant violated the protective order at the class certification stage in the exact same manner that she violated it at the summary judgment stage. Defendant certainly should have known that many of the exhibits filed in support of their opposition to class certification did not comply with the agreements she later reached with Plaintiffs or the Order issued by the Court. But Defendant never brought it up or sought to rectify the problems. Plaintiffs' counsel also did not raise the issue nor did the Court notice it at the time. Now, Defendant is essentially arguing that her past failure to abide by the protective order, which went unnoticed, excuses the current failure (*see* Doc. 386, pp. 7–8; Doc. 386-1, para. 15). The Court cannot go along with this ill-advised argument; as the adage goes, two wrongs don't make a right.

The Court finds that Defendant's violation of the protective order was made worse by the fact that Defendant did not try to *immediately* rectify the violation. Both sides indicate that Plaintiffs alerted Defendant via email on November 16, 2024, at 9:50 a.m. that confidential materials had been publicly disclosed in the motion for summary judgment (Doc. 386, p. 1; Doc. 386-1, para. 3; Doc. 400, p. 1 n.3). Plaintiffs asked for the offending documents to be removed from the public docket immediately and stated that they intended to file a motion for show cause and sanctions that same day at 5:00 p.m.

---

[7] *See* Doc. 191-1; Doc. 191-8; Doc. 191-9; Doc. 192-2; Doc. 192-3; Doc. 192-4; Doc. 193-1; Doc. 193-2.

(Doc. 386, p. 1; Doc. 386-1, para. 3; Doc. 400, p. 1 n.3). Rather than agreeing to take immediate action, Defendant wanted to first confer with Plaintiffs to see if an agreement could be reached as to necessary redactions before filing anything with the Court (Doc. 386-1, para. 5–6). Plaintiffs said they were willing to confer *but* only after the filings were taken off the public docket (*Id.* at para. 7). They asked Defendant to contact the Court by 9:30 the next morning to have the documents removed from the docket (*Id.*).

Counsel for Defendant indeed called the Clerk of Court's Office the next morning and asked that the motion for summary judgment and all 52 attached exhibits be placed under seal (Doc. 386-1, para. 8). The Clerk's Office correctly responded that it did not have the authority to do so and that a motion must be filed (*Id.*).[8] At 10:09 a.m., Defendant informed Plaintiffs' that the Clerk's Office could not seal the documents, and she would be filing a motion asking to place the filings under seal while the parties conferred (*Id.*).

Two hours later, Defendant still had not filed the promised motion, so Plaintiffs filed their motion for sanctions on November 17, 2024, at 12:20 p.m. (Doc. 378). Yet Defendant still took no action; there was no motion to seal filed that afternoon or evening. Notably though, Defendant did manage to find the time to file a seemingly trivial opposition to Plaintiffs' request to extend their deadline to respond to Defendant's Daubert motion by five days so that it aligned with their deadline to respond to the motion for summary judgment (Doc. 379; *see also* Doc. 380). Defendant waited three more

---

[8] The response from the Clerk's Office was a foregone conclusion; as set forth in the protective order, filing a document under seal requires leave of Court (Doc. 45, para. 7).

days, until the following Monday, to finally file a motion asking the Court to temporarily seal the motion for summary judgment and exhibits (Doc. 381).

"The response of someone who has made an innocent mistake—especially a mistake that violates a court order—is to apologize and take immediate action to correct the mistake." *Instant Tech., LLC v. DeFazio*, No. 12-C-491, 2013 WL 5966893, at *3 (N.D. Ill. Nov. 8, 2013) (rejecting party's assertion that confidential documents were mistakenly filed in the public record because when they were notified of the issue, they took no action to immediately seal the documents and spent days trying to first negotiate redactions with the opposing party). But that is not what Defendant did in this case. When Plaintiffs notified Defendant about the violation of the protective order and asked for the documents to be removed immediately from the public docket, Defendant's response was to *push back*. It is inexplicable and unacceptable that it ultimately took Defendant more than four days to take any meaningful action to shield the confidential information on the docket from the public's view.

All that said, the Court does not think Defendant's disclosure of confidential information resulted in harm anywhere near what Plaintiffs suggest. In the motion for sanctions, Plaintiffs take issue with every instance in which Defendant's summary judgment brief mentions anything about a gang or STG (*see* Doc. 378, p. 5 (list of paragraphs from summary judgment motion deemed problematic); *see also* Doc. 370, para. 10, 43, 44, 46, 47, 49, 50, 51, 56–59, 61–65, 73 and pages 38, 40, and 58–59).[9] Plaintiffs

---

[9] The page numbers cited from Defendant's summary judgment brief refer to the page numbers at the bottom of the page, not the page numbers at the top imprinted by CM/ECF.

also take issue with each of Defendant's exhibits that were marked as "Confidential" and/or "Attorney Eyes Only" yet filed unredacted (Doc. 378, p. 5 n.1 (list of exhibits deemed problematic); *see also* Doc. 370-1, -16, -19, -23, -24, -30 through -33, -36, -37, -42, -44, -48 through -52, Doc. 372-4). However, the Court ultimately ruled that much of the information did not need to be redacted (Doc. 430; Doc. 433).

For example, the Court ruled that good cause does not exist to redact or seal STG-related information as to the named Plaintiffs (Doc. 430, p. 8, n.4; *see* Doc. 370, para. 10, 43, 44, 46, 47, 49–51, 56–59, 73 and pp. 38, 40; *see also* Doc. 370-16, -19, -24). The Court similarly ruled that STG-related information as to non-Plaintiff class members did not have to be redacted so long as their names and IDOC numbers were (Doc. 430, pp. 7–8; *see* Doc. 370, para. 61–65, pp. 58–59; *see also* Docs. 370-19, -30, -31, -32, -33, -52).

There were five exhibits regarding restrictive housing incentive programs, out of cell time, or reductions in time that the parties agreed should not be sealed and did not require any redactions, and the Court concurred (*see* Doc. 418; Doc. 430; *see also* Docs. 370-44, -48 through -51).

With respect to Plaintiffs' expert reports that Defendant submitted (Doc. 370-1 (Anna King); Doc. 370-42 (Dan Pacholke); and Doc. 372-4 (Dr. Craig Haney)), the parties previously agreed and the Court concurred that the reports should be filed publicly with very limited redactions (Doc. 221, pp. 2–3; Doc. 430, p. 12). In fact, the version of Dr. Haney's report that Defendant filed, (Doc. 372-5), did not require any redactions (*see* Doc. 430, p. 11). And the only thing that had to be redacted from Anna King and Dan Pacholke's reports (Docs. 370-1 and 370-42) was the list of inmate names at the end of

18

each report and one photo from Pacholke's report (Doc. 430, pp. 5–6. 9). Three other exhibits also only required inmate names to be redacted (Docs. 370-23, -36, -37).

Finally, as Defendant points out, ten of the supposedly problematic paragraphs from the summary judgment brief technically do not violate the protective order because the information within those paragraphs was taken from non-confidential sources (Doc. 386, pp. 4–5), such as public records (*i.e.*, court orders and opinions), discovery materials that were presumably never marked as "confidential" (such as Plaintiffs' written discovery responses and deposition transcripts), and discovery materials that were initially produced with a "confidential" designation but were subsequently re-produced without it (*see id.*; *see also* Doc. 370, para. 10, 43, 44, 47, 49, 50, 51, 57, 58, 73; Docs. 370-9, -10, -11, -12, -14, -15, -25).[10]

All in all, the only harm that could have been caused by Defendant's actions is the disclosure of non-Plaintiff class members names and IDOC numbers, sometimes in conjunction with allegations of gang activity. These names were open to public viewing for just over four days. Plaintiffs have not identified any specific harm that befell any inmates (*see* Docs. 378, 400). The Court also does not know if the non-Plaintiff class members are even aware that their names appeared in Defendant's summary judgment brief and/or exhibits, let alone if they have any meaningful objection to it.

While the Court ultimately does not believe Defendant violated the protective order in bad faith or that the violation resulted in any substantive harm, it is nearly

---

[10] While this argument is technically correct, it is still difficult to square with Defendant's fervent protests during the initial stages of discovery to disclosing this type of information at all.

impossible to understand how such a blunder occurred. It was, at best, an extraordinarily careless oversight of an extremely basic and fundamental litigation procedure. And Defendant's response when the filing was brought to her attention cannot be justified. Simply put, Defendant should have taken immediate action to correct the problem but unnecessarily delayed in doing so. Furthermore, as explained above, it was also not Defendant's first time violating the protective order. And Defendant wholly disregarded the Court's prior Order regarding redactions, while feigning belief that it had been adhered to. These circumstances transform Defendant's conduct from a potentially innocent and forgivable mistake into sanctionable conduct for violating a Court Order. The Court thus finds it appropriate to exercise its authority under Rules 16 and 37 to sanction Defendant.

The Court considered striking Defendant's statement of facts in support of her motion for summary judgment (and believes this would be proportional to Defendant's violation), but the Court opted not to do so in order to resolve the motion fully on its merits and provide finality on the issues presented therein. Plaintiffs are, however, awarded their expenses, including attorney fees, incurred in bringing their motion for sanctions, including their reply brief. FED. R. CIV. P. 16(f)(2), 37(b)(2)(C). The Court declines to award twice that amount like Plaintiffs asked, because they did not explain the basis for that particular request. The Court also has no concept of how much that would amount to because Plaintiffs did not provide an itemized statement of the expenses and fees they incurred, or even an estimate.

<u>CONCLUSION</u>

Plaintiffs' Motion for Sanctions (Doc. 378) is **GRANTED in part** and Plaintiffs are awarded their expenses and fees incurred in bringing the motion. Plaintiffs shall have 14 days to file a declaration and itemized statement of the expenses and fees they incurred in bringing their motion for sanctions. Defendant shall then have 14 days to contest the amount requested by Plaintiffs.

**IT IS SO ORDERED.**

**DATED:  March 28, 2025**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**

21