IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 3:16-CV-600-MAB |
| | ) |
| LATOYA HUGHES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This order is to follow-up on several pertinent pretrial matters, which were discussed at the status hearing on May 15, 2025 (Doc. 459; *see also* Doc. 453) and/or the status hearing on August 14, 2025 (Doc. 473; *see also* Doc. 470).

**A. Trial Format**

The parties agreed that the trial should not be bifurcated into a liability phase and a remedy phase (Doc. 461, p. 4; *see also* Docs. 453, p. 1; Doc. 457, pp. 1–3). The Court will therefore conduct a single trial to decide whether Defendant's restrictive housing practices violated the class's constitutional rights under the Eighth Amendment and Fourteenth Amendment, and if so, the proper scope of an injunction.

**B. Length of Trial**

Plaintiffs' counsel previously represented to the Court that they thought the entire trial in this matter could be conducted in two weeks (*see, e.g.,* Doc. 457, p. 4), and defense counsel was in general agreement (Doc. 461). The Court, however, was skeptical of that

estimate and instead set aside three weeks for trial out of an abundance of caution (Doc. 462). Now, after seeing Plaintiffs' list of potential video witnesses and consulting with the parties at the status conference, it is abundantly clear that this trial will not be finished within two weeks, and maybe not even three.

The undersigned has reviewed his calendar and can rearrange matters to free up three additional days for trial on October 27, 28, and 29, 2025, if necessary. If the trial is not concluded by October 29th, however, it is very likely that it will have to be continued, and the earliest that it could possibly resume is in December. This type of extended break in the trial proceedings is certainly not ideal, and the Court would like to avoid it, if possible. For that reason, the parties are strongly encouraged to work together to ensure that trial is completed by October 29, 2025.

Additionally, the Court will not use a "shot clock" or otherwise impose a limit on the time that each side has to present its case. The Court believes this would place an additional burden on the Court and Court personnel to monitor the "shot clock" and keep track of the time each party is using during trial rather than focusing its attention on the evidence and exhibits offered during trial. However, the Court expects counsel for both sides to put forth their best effort to narrow the issues, eliminate unnecessary witnesses, and streamline the proceedings via whatever means available. For example, stipulating to certain facts or testimony; stipulating to the foundation, authenticity, admissibility, etc. of exhibits; if there are any witnesses that both sides intend to call, agreeing to modify the format of examination to avoid calling the witness twice.

## C. Trial Schedule

The undersigned intends to begin trial each day at 9:00 a.m. There will be a lunch break of approximately 30-45 minutes each day. The undersigned will recess for the day by 4:30 p.m., with few exceptions. Additionally, October 13, 2025, is a federal holiday; the courthouse will be closed and no proceedings will take place on that day.

At the August 14th status conference, defense counsel proposed creating a trial calendar or trial schedule in collaboration with Plaintiff's counsel, which would be shared with the Court. Plaintiffs' counsel agreed that it would be beneficial. The Court likewise agrees that this would be beneficial. The goal of the calendar is simply to map out each day of trial with as much precision as possible. It should, at a minimum, indicate which days are reserved for the site visits and list the witnesses that are expected to be called each day, in the order that counsel expects to call them, with the estimated time that each witness will take the stand, and the manner in which each witness will be appearing (*e.g.*, by video or in person). The Court would like the parties to provide a first draft of the trial calendar at (or prior to) the Final Pretrial Conference, and understands that the calendar will be evolving and modified as needed.

## D. Site Visits

The parties have agreed to conducting site visits during the trial (*see e.g.*, Doc. 461; Doc. 468). The Court previously indicated that it was inclined to visit Menard, Pinckneyville, and Lawrence Correctional Centers (Doc. 470). Having received no objection from either side at the status hearing, the Court now states as a definitive matter that site visits will be conducted at these three facilities during trial.

The site visits shall take place during Plaintiffs' case in chief, *after* the presentation of their fact witnesses and *before* the presentation of their expert witnesses. If possible, the Court would like the visits to take place on two consecutive days, with the visits to Menard and Pinckneyville on one day and the visit to Lawrence on the other.

No testimony will be taken during the site visits; the visits will be limited to touring the facilities. Plaintiffs' counsel has sent a proposal to defense counsel regarding the areas of the prisons to be toured. Defense counsel indicated that he believes the parties will be able to reach an agreement as to what the site visits will consist of. Once an agreement is reached, the parties shall provide the details to the Court via a Notice filed on the docket. In the event the parties are not able to reach an agreement, they must notify the Court and provide their respective proposals before the Final Pretrial Conference on September 4, 2025 (*see* Doc. 466).

As for the evidentiary value of the tours, Plaintiffs argue that the tours should be an illustrative aid only,[1] while Defendant argues the tours should be substantive evidence (Doc. 468). Courts are also divided on the issue. *See generally*, 2 MCCORMICK ON EVID. § 219 (9th ed.); 22 FED. PRAC. & PROC. EVID. § 5176.1 (2d ed.); Layne S. Keele, *When Mohammed Goes to the Mountain: The Evidentiary Value of A View*, 80 IND. L.J. 1091, 1092 (2005). In this Circuit, using a view as an illustrative aid has been approved. *E.E.O.C. v.*

---

[1] The Court and the parties previously used the term "demonstrative evidence" (*see, e.g.,* Docs. 465, 468). However, the most recent amendment to the Federal Rules of Evidence uses "illustrative aid" instead of "demonstrative evidence," because the "latter term has been subject to differing interpretation in the courts." FED. R. EVID. 107, ADVISORY COMM. NOTE. The Court will likewise switch to using the term "illustrative aid" to conform with the terminology used in the Federal Rules of Evidence.

*Mercy Hosp. & Med. Ctr.*, 709 F.2d 1195, 1200 (7th Cir. 1983) (holding it proper for the district court to consider its observations "only for the purpose of weighing the testimony of witnesses and to better understand the evidence submitted at trial"). However, the Court is unaware of any case law in which the Seventh Circuit has expressly approved of a view as substantive evidence. *But see id.* (declining to decide whether a view can be considered substantive evidence). For that reason, the Court will consider the site visits as an aid to better understand, appreciate, and weigh the evidence properly admitted by both sides.

### E.  Witnesses Appearing by Video

Plaintiffs have provided a list of over four dozen inmates from twelve different facilities whom they may call to testify via videoconference. That is simply too much for the undersigned's courtroom deputy to coordinate on her own, and Plaintiffs' counsel must assist with some of the legwork. Defense counsel is also expected to assist in this process, as necessary.

Counsel shall contact each facility to ensure that the videoconferencing equipment is available on the dates and at the times provided on the list (or find an alternate date and time) and take whatever steps possible to preliminarily reserve those slots. For the days where counsel expects to call multiple inmates from the same facility in succession, counsel should inquire whether the facility would prefer to have a specific time listed on the writ for each inmate or if a time range would be better. Additionally, the Court would like to ensure an easy and relatively quick transition between witnesses so that there will not be large chunks of time where the Court and counsel are left waiting while the next

inmate is retrieved. Therefore, counsel should also inquire about the transition of witnesses when contacting the facility.

Once counsel has nailed down a date and time for each inmate witness, they shall provide it to the undersigned's courtroom deputy along with the inmate's name, prison identification number, and the name of the facility at which the inmate is housed. This information can be provided on a rolling basis, or counsel can wait and provide it all at once for every witness. The Court will then prepare the writs and submit them to the respective facilities.

Additionally, for the New Mexico facility, counsel must provide the undersigned's courtroom deputy with contact information for the litigation coordinator or other person in charge of coordinating inmate appearances pursuant to a video writ.

Closer in time to trial, counsel will be expected to confirm that each witness is still housed at the facility listed on their respective writ.

**F. Court Reporting**

As indicated, one of the District's court reporters will be contacting counsel for each party to discuss whether either party will be making any special court reporting/transcript requests, such as daily copy or Realtime transcription during the trial. The Court trusts that counsel will promptly respond to her phone calls, emails, etc. and be cooperative in answering her questions. In the event that she gives the parties a deadline that conflicts with what the Court has already set, (*see, e.g.,* Doc. 467, p.6, sec. I), the Court will defer to the court reporter and her deadline will control.

### G. Evidentiary Cutoff for Liability and Remedy

The Court previously asked the parties for their positions as to the relevant time period for determining liability and a potential remedy (Doc. 453). Plaintiffs contend that the liability determination should be based on the facts as of the close of discovery (Doc. 457, pp. 5–6; Doc. 460; Doc. 461). Defendant, on the other hand, contends that in order for Plaintiffs to be entitled to injunctive relief, both the PLRA and the Eleventh Amendment require the Court to find an "ongoing violation" of a federal right, and therefore Defendant must be allowed to present evidence up to the time of trial (Doc. 463, pp. 2, 7). After reviewing the parties' written submissions, the arguments made orally during the May 15th status conference, and the relevant case law, the Court agrees with Plaintiffs' position.

It is well-established that the *Ex parte Young* exception to Eleventh Amendment immunity permits injunctive relief against state officials "when there is an ongoing *or threatened* violation of federal law." *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996) (emphasis added). *See also Denius v. Dunlap*, 330 F.3d 919, 928 (7th Cir. 2003) (rejecting argument that Eleventh Amendment barred injunctive relief where there was enough evidence to support jury's finding that defendants were likely to violate the plaintiff's rights in the future).

It was likewise well-established long before the enactment of the PLRA that injunctive relief is available for an ongoing or a threatened violation of federal law. *See Farmer v. Brennan,* 511 U.S. 825, 845 (1994) (indicating that injunctive relief is available "on the ground that there is a contemporary violation of a nature likely to continue" as

well as "to prevent a substantial risk of serious injury from ripening into actual harm"). Additionally, in the case of an ongoing violation, it is well-established that even if a defendant voluntary discontinues the illegal conduct during the course of litigation, injunctive relief is still available if there is a likelihood that the violation will recur. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not . . . make the case moot" because "[t]he defendant is free to return to his old ways"; the case only becomes moot "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'") (citation omitted); *Lackey v. Stinnie*, 604 U.S. ---, 145 S. Ct. 659, 669 (2025) ("[E]ven if the plaintiff seeks only injunctive relief, voluntary cessation of the challenged conduct does not moot an action 'unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'") (citation omitted).

According to Defendant, things changed when the PLRA was enacted. She contends that the PLRA requires a finding of an ongoing violation in order to impose prospective injunctive relief (Doc. 463, p. 5), thereby displacing the well-established principles mentioned above. Defendant's only authority is the Ninth Circuit's opinion in in *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002) (Doc. 463, p. 5). In *Hallett*, the plaintiffs moved to extend a consent decree that was initially entered prior to the enactment of the PLRA, while the defendants moved to terminate the consent decree. *Id.* at 738. The district court denied the plaintiffs' motion after holding an evidentiary hearing and determining that the prison had cured the constitutional violations and there was no "current and ongoing" violation, which meant it lacked authority to extend its

jurisdiction over the consent decree. *See id.* at 739, 742. The plaintiffs argued on appeal that the district court erred by requiring them to prove a "current and ongoing violation" of their constitutional rights because that standard only pertains to termination proceedings under § 3626(b)(3). *Id.* at 743. The Ninth Circuit disagreed, stating that "[t]he quoted standard for termination does not differ materially from the standard to be applied in deciding whether prospective relief is proper." *Id.* The Court reasoned that under § 3626(a)(1)(A), the plaintiff had to "establish that the prospective relief 'extend[s] no further than necessary to correct the *violation* of'" their rights, and "[t]his standard, too, requires the existence of a constitutional 'violation' in need of correction." *Id.* (emphasis in original). The Court went on to say:

> The text of § 3626(a)(1)(A) suggests that, in the absence of a 'current and ongoing' violation, there is no occasion to fashion prospective relief to cure the violation. In other words, if a violation no longer exists, the statute does not permit the court to order prospective relief.

The Court notes that the Ninth Circuit's reading of the PLRA has been rejected by the Fourth and the Eleventh Circuits, which both concluded that the PLRA allows a court to grant injunctive relief in the absence of an ongoing constitutional violation. *Porter v. Clarke*, 923 F.3d 348, 367, 368 (4th Cir. 2019) (holding the "current and ongoing" standard in § 3626(b)3) applies only in the termination context, and the court can initially impose prospective injunctive relief under § 3626(a)(1) "even when a violation is not 'current and ongoing.'"); *Thomas v. Bryant*, 614 F.3d 1288, 1320 (11th Cir. 2010) (holding that the initial entry of injunctive relief in prison litigation cases is governed by "[t]he PLRA's need-narrowness-intrusiveness limitation" in § 3626(a)(1)(A); in contrast, "[w]hether there is a

'current and ongoing' constitutional violation . . . is a matter to be considered . . . [only] in a termination proceeding" under 18 U.S.C. § 3626(b)(3)). *See also Amos v. Cain,* No. 4:20-CV-7-DMB-JMV, 2021 WL 1080518, at *6 (N.D. Miss. Mar. 19, 2021) (predicting that the Fifth Circuit would follow the approach of the Fourth and Eleventh Circuits) (citing *Guajardo v. Tex. Dep't of Crim. Just.,* 363 F.3d 392, 395 (5th Cir. 2004)); *Victory v. Berks Cnty.,* No. CV 18-5170, 2020 WL 236911, at *18 (E.D. Pa. Jan. 15, 2020) (finding the reasoning of *Porter* and *Thomas* and more persuasive than *Hallett*'s).

After reviewing *Hallett, Porter,* and *Thomas*, the Court finds the Fourth and Eleventh Circuit's analyses, which were based on the text of the PLRA and which applied sound principles of statutory construction, far more persuasive than the Ninth Circuit's. As the Fourth Circuit pointed out, the phrase "current and ongoing" does not appear anywhere in the PLRA provision regarding the initial imposition of prospective injunctive relief. *Porter*, 923 F.3d at 366. *See* 18 U.S.C. § 3626(a)(1). Rather, that provision simply provides that "in any civil action with respect to prison conditions . . . [t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). The "current and ongoing" language only appears in § 3626(b)(3), which addresses the *termination* of an existing injunctive order, not the initial imposition of such relief. *Porter*, 923 F.3d at 366. *See* 18 U.S.C. § 3626(b)(3).

The fact that Congress included the "current and ongoing" language in the termination provision but omitted it from the initial prospective relief provision is

"strong evidence that Congress did not intend for the 'current and ongoing' standard to apply outside of the termination context." *Porter*, 923 F.3d at 366. *See also Thomas*, 614 F.3d at 1320 ("[T]he 'current and ongoing' requirement is distinct from the standard governing the initial entry of injunctive relief."); *See also Amos*, 2021 WL 1080518, at *6 (N.D. Miss. Mar. 19, 2021) (noting the Fifth Circuit has previously held "that findings [of need-narrowness-intrusiveness] are distinct from the finding that an ongoing violation exists.") (citing *Guajardo*, 363 F.3d at 395).

Furthermore, interpreting the PLRA to require a finding of "a current and ongoing violation" before injunctive relief can be imposed would mean that injunctive relief is no longer available to address a threatened violation of federal law. But "courts 'should not construe a statute to displace courts' traditional equitable authority absent the clearest command or an inescapable inference to the contrary.'" *Porter*, 923 F.3d at 367 (quoting *Miller v. French*, 530 U.S. 327, 340 (2000)). And, in this instance, Congress clearly knew how, but chose not to "clearly command" in the PLRA that courts could not impose prospective relieve when the violation was only threatened and not actively ongoing. *Porter*, 923 F.3d at 367. *See also Thomas*, 614 F.3d at 1320 ("[T]here is no indication in the PLRA, its legislative history, or the case law to suggest that the 'current and ongoing' requirement was intended by Congress to amend the well-established law that injunctive relief is available in the first instance . . . to prevent future harm.").

The Court finds these reasons persuasive and concludes that under § 3626(a)(1)(A) of the PLRA, which is the applicable provision here, can impose prospective relief even if Plaintiffs do not show that the alleged constitutional violation is still ongoing at the

time the injunction is entered, like Defendant contends (Doc. 461, p. 15).

So, what does this mean then for the evidentiary cutoff? Case law establishes that even where an ongoing constitutional violation is alleged (like here), the Court does not have to allow the parties to present evidence up to the time of trial. It is well-established that district courts "have broad discretion to manage their dockets, including setting close-of-discovery dates" and deciding whether to "permi[t] extensions[.]" *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1218 (7th Cir. 2023) (citation omitted). Generally speaking, "a district court is [not] obligated to permit additional discovery after the close-of-discovery deadline has passed." *Id.* That general principle holds true even within the context of a case in which injunctive relief is being sought for an alleged ongoing constitutional violation. As the Supreme Court recognized in *Farmer*, whether the parties can rely "on developments that postdate the pleadings and pretrial motions" is a decision left to the district court's discretion. 511 U.S. at 846. The Supreme Court reiterated as much in *Brown v. Plata*, when it instructed that "[o]rderly trial management may require discovery deadlines," and even in prison cases, "it is within the sound discretion of the court" to order "that evidence of 'changed prison conditions' after [a certain] date would not be admitted." 563 U.S. 493, 523 (2011).

In this instance, the Court intends to decide whether Defendant violated the Constitution, and whether injunctive relief is warranted, based on the facts as of September 22, 2023, which was the close of discovery (Doc. 340). The Court acknowledges that the gap in time here between the close of discovery and the start of trial is far longer than the gap in *Brown*. *See Brown*, 563 U.S. at 522 (court allowed discovery until a few

months before trial). The Court nevertheless does not believe that any additional discovery is necessary because as Defendant herself acknowledged, very little has changed since the close of discovery (Doc. 463, p. 10).

Furthermore, Defendant has not made a written or oral motion to reopen discovery, nor has she proposed any parameters for the additional discovery or specified what it is that she wants to do (*e.g.*, disclose new witnesses, take depositions, produce new documents, etc.). Discovery in this case was a massive undertaking that took far too long, was far too fraught with difficulties and delays, and required far too much involvement from the Court. As a result, the Court simply will not consider a wholesale reopening of discovery on an unrestricted basis. It is a non-starter. If there is something specific that Defendant wants to obtain pertaining to a development that post-dated the close of discovery, she can file a motion that carefully and specifically details the proposed discovery and the significance of and implications of this material.

IT IS SO ORDERED.

DATED: **August 21, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**