## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HENRY DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-CV-600-MAB |
| | ) | |
| LATOYA HUGHES, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Plaintiffs' Motion in Limine number 2 (Doc. 472) and Defendant's Motion in Limine number 2 (Doc. 474). In these motions, each party seeks to prohibit the other from calling witnesses who were arguably disclosed too late. Plaintiffs want to prohibit Defendant from calling six officials from the Illinois Department of Corrections ("IDOC"): Chief of Operations, Justin Hammers; Deputy Directors of Operations, Christine Brannon-Dorch, Angela Locke, and Kim Smith; former Chief of Compliance, Jason Hall; and Chief of Mental Health, Dr. Melvin Hinton. As for Defendant, she wants to prohibit Plaintiffs from calling certain inmate witnesses (who have not been specifically identified to the Court).

The parties filed responses in opposition to one another's Motions in Limine (Docs. 479, 480), and the Court heard oral argument on the Motions at the Final Pretrial Conference. The Court took these two Motions in Limine under advisement and is now ready to issue a ruling as to both.

<u>BACKGROUND</u>

The parties served their initial Rule 26(A)(1) disclosures in October 2016, approximately four months after the case was filed and at the outset of discovery (*see* Doc. 476, Doc. 534-1). Plaintiffs listed themselves (but no other inmates) (Doc. 476). They also listed Defendant: the Director of the IDOC, and twelve other executive-level IDOC officials along with the names of the individuals who held those positions at the time the disclosures were filed (Doc. 476). Amongst the executive-level officials were the predecessors of some of the officials Plaintiffs now seek to exclude, including Mike Atchison, then Chief of Operations, and Nikki Robinson, Sandra Funk, and Charles Peck, then Deputy Directors of Operations (Doc. 476).[1] Plaintiffs also listed "*all* IDOC wardens and assistant wardens at *all* . . . facilities," "*all* IDOC supervisors and Correctional Officers" assigned to restrictive housing units, and all individuals disclosed by Defendant (Doc. 476) (emphasis added). Defendant listed thirteen individuals in his initial disclosures: himself,[2] the six named Plaintiffs, the wardens at Lawrence, Menard, and Stateville, and the Records Office Supervisors at those same facilities (Doc. 534-1).

To be clear, neither side listed the six individuals at issue—Justin Hammers, Christine Brannon-Dorch, Angela Locke, Kim Smith, Jason Hall, and Dr. Melvin Hinton—in their initial disclosures (*see* Doc. 476; *see also* Docs. 472, 480). This is

---

[1] The other officials that Plaintiffs listed were the Assistant Director of the IDOC—Gladyse Taylor, the Chief Financial Officer—Jared Brunk, the Chief of Programs & Support Services—Kim Butler, the Chief of Performance Based Standards—Barb Cooksey, the Chief Public Safety Officer—Carolyn Gurski, the Deputy Chief of Operations—Marcus Hardy, and the Chief Internal Auditor—Rob Faith (Doc. 476).

[2] John Baldwin was the IDOC Director and the Defendant in this case at the time the initial disclosures were filed. He later retired and was succeeded by Rob Jeffreys, who was succeeded by Latoya Hughes.

unsurprising with respect to Hammers, Brannon-Dortch, Locke, Smith, and Hall because none of them had been named to an executive-level position as of October 2016.[3] Dr. Hinton was the only one who already held his position as of October 2016, but neither side opted to disclose him.[4]

Pre-class certification discovery went on for nearly three and half years (from Sept. 7, 2016 (Doc. 28) through Jan. 31, 2020 (Doc. 187)). After the class was certified, the parties engaged in another two-plus years of discovery (from July 19, 2021 (Doc. 235) through September 22, 2023 (Doc. 340)). The Court worked closely with the parties throughout

---

[3] According to the IDOC website, Hammers was named Chief of Operations on January 1, 2022. *Operations Division*, ILLINOIS DEP'T OF CORR. https://idoc.illinois.gov/aboutus/operationsdivision.html (last visited Sept. 15, 2025) [https://perma.cc/7L3T-KCC3].

Brannon-Dortch was named the Deputy Director of Operations for Region 1 (formerly known as the Northern District) in January 2022. *Deputy Director, Region 1*, ILLINOIS DEP'T OF CORR. https://idoc.illinois.gov/aboutus/deputydirectornortherndistrict.html (last visited Sept. 15, 2025) [https://perma.cc/A68B-8V9L].

Locke was named the Deputy Director of Operations for Region 2 (formerly known as the Central District) in April 2022. *Deputy Director, Region 2*, ILLINOIS DEP'T OF CORR. https://idoc.illinois.gov/aboutus/deputydirectorcentraldistrict.html (last visited Sept. 15, 2025) [https://perma.cc/32B5-JD5G].

Smith was named Deputy Director of Operations for Region 3 (formerly known as the Southern District) in 2019. *Deputy Director, Region 3*, ILLINOIS DEP'T OF CORR. https://idoc.illinois.gov/aboutus/deputydirectorsoutherndistrict.html [https://perma.cc/PAC2-5WEF]; *Deputy Director of Project Development*, ILLINOIS DEP'T OF CORR., https://idoc.illinois.gov/aboutus/deputydirectorofprojectdevelopment.html (last visited Sept. 15, 2025) [https://perma.cc/J3DW-PRY3]. It is unclear to the Court whether Smith currently remains in that position because, in June 2025, she was appointed Deputy Director of Project Development.

As for Jason Hall, there is little to no information on the IDOC's website about him. However, the Court was able to glean information from other documents submitted and statements made in this case. Specifically, former Chief of Operations, John Eilers, testified at his deposition about an email that Jason Hall sent on July 30, 2021, and Eilers confirmed that Hall was the Chief Compliance Officer for the IDOC. Therefore, it stands to reason that Hall was named Chief of Compliance sometime before July 30, 2021. Defense counsel indicated at the FPTC that Mr. Hall was no longer with the IDOC.

[4] Dr. Hinton testified in another case, *Monroe v. Meeks,* that he has been the IDOC's Chief of Mental Health since 2012. *Id.,* SDIL Case. No. 18-cv-156-NJR, Doc. 348, pp. 302–03.

both phases of discovery to monitor the parties' progress, provide guidance on areas of

disagreement, and decide issues that the parties were unable to resolve on their own (*see*

Docs. 42, 61, 65, 66, 69, 79, 82, 87, 90, 92, 93, 99, 102, 105, 110, 111, 113, 119, 126, 127, 130,

132, 137, 140, 141, 148, 165, 237, 240, 244, 252, 260, 269).

During fact discovery in this case, the parties agreed to select a representative

sampling of inmates at each facility for whom Defendant would produce records (*see, e.g.,*

Doc. 474, pp. 3–4). Defendant also agreed to produce additional inmate files requested by

Plaintiffs after their experts toured certain facilities (*see e.g., id.*). As for depositions, the

Court recalls that most were taken prior to class certification.[5] After class certification,

each side was permitted to take five more depositions (Doc. 235). The parties conferred

and reached an agreement as to what those additional depositions would be (Doc. 237).

The parties represented at a status conference on October 13, 2021, that all fact witness

depositions had been completed (Doc. 240). The next scheduling order, which was

entered on February 3, 2022, stated that fact discovery was complete, that no more

depositions would be taken (other than expert depositions), and that Defendant would

produce the remaining prisoner files requested by Plaintiffs on a rolling basis (Doc. 253-

1). As best the Court knows, no additional fact witness depositions were taken thereafter.

Defendant continued producing inmate records as expert discovery took place and even

after the cutoff for all discovery, which was September 22, 2023 (Doc. 340; *see also* Doc.

---

[5] For pre-certification discovery, the parties were excused from the 10-deposition limit imposed by Rule
30(a)(2)(A) (Doc. 28-1). The Court does not, however, know exactly how many depositions were taken
during this phase of discovery, or collectively across both phases.

253-1, 280, 292, 334, 357).

Toward the close of discovery—as is customary—Plaintiffs supplemented their disclosures on June 23, 2023 (Doc. 476-1). Defendant did not. Plaintiffs once again listed themselves as potential witnesses and added one other current inmate and one former inmate: Kilsey Shearrill and Charles Donnelson, respectively (Doc. 476-1). Plaintiffs also included a group listing of "all inmates . . . identified in Appendix A," which was a six-page list of over 250 inmates (*Id.*). As for non-inmate witnesses, Plaintiffs listed (amongst others) 24 IDOC executive-level officials (*Id.*). It was the same twelve individuals listed in their initial disclosures and their successors (if any), including in pertinent part, Chief of Operations Justin Hammers and Deputy Directors of Operations Christine Brannon-Dortch, Angela Locke, and Kim Smith—and two new officials: Chief Compliance Officer Jason Hall and former Chief of Staff Camile Lindsay (*see id.*).

Plaintiffs supplemented their disclosures twice more after the close of discovery to list additional inmate witnesses (*see* Doc. 476-2, 476-3). In the supplemental disclosures served on October 23, 2023, Plaintiffs listed 14 new inmates by name in the body of the document and maintained their group disclosure of "all inmates . . . identified in Appendix A" (Doc. 476-2). In their supplemental disclosures served on April 23, 2024, Plaintiffs listed another 30 new inmates by name in the body of the document while, again, maintaining their group disclosure (*compare* Doc. 476-3 *with* Doc. 476-2).[6] In total,

---

[6] The Court's number deviates from the number Defendant gave, which was 31 new inmates, (Doc. 474, p. 4), because the Court noticed that Keshawn Perkins was listed twice. Perkins was one of the new inmates that Plaintiffs included in the Oct. 23, 2023, supplemental disclosures (Doc. 476-2, p. 10). But he was also

with respect to inmate witnesses, Plaintiffs disclosed themselves and 46 other inmates by name along with a group disclosure of approximately 250 inmates listed in an Appendix.

About 15 months later, Plaintiffs gave notice that they had whittled down their list of potential witnesses. Specifically, in an email dated August 5, 2025, Plaintiffs provided a list of 51 inmate witnesses whom they said they intended to call to testify by video at trial.[7] According to that list, Plaintiffs were going to call themselves and only *four* of the inmates identified by name in the body of their supplemental disclosures. The rest of the inmates from the body of the disclosures were scrapped and replaced with 40 inmates from the Appendix and one inmate (Mark Morando), who had never been disclosed in any manner as best the Court can tell.[8] Plaintiffs subsequently submitted slightly different lists in the proposed Final Pretrial Order ("FTPO") and the first draft of the Trial Calendar, which were both submitted on September 3, 2025,[9] and their Rule 26(a)(3) pretrial disclosures, which were filed on September 5, 2025 (Doc. 483).

As for Defendant's witnesses, Plaintiffs represented at the FPTC that the first time

---

listed a second time amongst the new batch of inmates in their April 23, 2024, supplemental disclosures (Doc. 476-3, pp. 10, 16).

[7] Email from Reid Smith, Plaintiffs' counsel, to Jennifer Jones, Courtroom Deputy to Magistrate Judge Mark Beatty (Aug. 5, 2025, 5:02PM) (on file with the Court).

[8] Neither party provided the Court with a comparison of the various lists of potential witnesses provided by Plaintiffs, so the Court did the comparison itself. Given the need to rule on these Motions in Limine as soon as practicable with the looming trial date, the Court did not double or triple check its comparisons, so it cannot say for certain that its numbers are exactly correct. But the numbers are certainly close enough to paint an accurate picture of how Plaintiffs' list shifted over time.

[9] Email from Reid Smith, Plaintiffs' counsel, to Magistrate Judge Beatty's proposed documents inbox (MABpd@ilsd.uscourts.gov), (Sept. 3, 2025, 8:56PM) (on file with Court).

Defendant informed them that she intended to call Hammers, Brannon-Dortch, Locke, Smith, Hall, and Hinton as witnesses at trial was on August 21, 2025, which Defendant did not dispute. Defendant also included these six individuals on the first draft of the Trial Calendar, but she did not provide any information as to what the witnesses were expected to testify about.[10] Nor did she supplement her initial disclosures to include these six individuals. In fact, Defendant did not formally disclose these individuals and the actual subject of their testimony until September 5, 2025, when she filed her Rule 26(a)(3) pretrial disclosures (Doc. 484, pp. 1–2).

On September 9, 2025, the parties sent the Court the second draft of the Trial Calendar, which showed that Plaintiffs had significantly narrowed their list of inmate witnesses by eliminating approximately 40% of them.[11] Plaintiffs were left with 31 current/former inmates: themselves, three of the inmates named in their supplemental disclosures, plus 22 inmates from the Appendix.

## LEGAL STANDARD

Rule 26 requires a party to disclose the name of every individual "likely to have discoverable information . . . that [the party] may use to support its claims or defenses," and to identify "the subjects of that information." FED. R. CIV. P. 26(a)(1)(A)(i).[12] Parties

---

[10] Email from Reid Smith, Plaintiffs' counsel, to Magistrate Judge Beatty's proposed documents inbox (MABpd@ilsd.uscourts.gov), (Sept. 3, 2025, 8:56PM) (on file with Court).

[11] Email from Reid Smith, Plaintiffs' counsel, to Magistrate Judge Beatty's proposed documents inbox (MABpd@ilsd.uscourts.gov), (Sept. 9, 2025, 5:00PM) (on file with Court).

[12] To the extent that any individual disclosed as a fact witness under Rule 26(a)(1) is also expected to give expert testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702, a second disclosure is required under Rule 26(a)(2). *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757,

must supplement or amend their disclosures "in a timely manner" as the cases progresses "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect[.]" FED. R. CIV. P. 26(e)(1)(A).[13] However, an exception exists and excuses the obligation to supplement "if the additional corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing." *Id.*

To ensure compliance with the initial and supplemental disclosure requirements, Rule 37 provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The Seventh Circuit has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (citation omitted).

"[T]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *David*, 324 F.3d at 857 (citations omitted). *See also Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 950 (7th Cir.

---

758 (7th Cir. 2004). *See also, e.g., Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012) (explaining distinction between lay opinion and expert opinion). This is noted because Plaintiffs argued at the FPTC that they believed at least some of the anticipated testimony from the six individuals at issue would constitute expert testimony under Rule 702 because it would be based on their specialized knowledge. The Court need not reach this issue though because the Court has concluded that Defendant did not properly disclose the six individuals at issue as fact witnesses to begin with.

[13] *See also Sender v. Mann*, 225 F.R.D. 645, 653–54 (D. Colo. 2004) ("While the court has found no cases that address this precise issue, the objectives underlying Rule 26(a)(1) suggest that information 'is incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation.")

2018) ("A district court's discovery rulings, including a decision to exclude expert testimony, are reviewed for an abuse of discretion.") (citation omitted). The district court's decision will amount to an abuse of discretion only if there is no evidence in the record upon which the court could have rationally based its decision, the decision is based on an erroneous conclusion of law or clearly erroneous factual findings, or the decision appears to be arbitrary. *Id.* at 950–51 (citation omitted).

<u>DISCUSSION</u>

The Court evaluated the two motions at issue, keeping in mind the purpose of disclosures, the context of the type of litigation involved, the volume of discovery conducted, and the trial preparation required. With respect to the latter consideration, this is a 23(b)(2) class action case and the relief Plaintiffs seek could potentially affect a significant aspect of how the IDOC operates, and therefore important public interests are at stake. Additionally, the universe of discoverable information in this action was truly massive. As demonstrated by Plaintiffs' initial and supplemental disclosures, there were thousands of current and former inmates and hundreds (if not thousands) of IDOC employees with information relevant to the claims in the case. (There was also a fair amount of turnover during the course of this litigation amongst the executive-level officials; for instance, three different individuals have served as director of the IDOC since the complaint was filed in this matter). A staggering number of documents have been produced in this matter. Defendant said that she alone produced over 750,000 pages of documents.

Given the sheer volume of discoverable information, there was simply no way to

talk to every person or to lay eyes on every relevant and probative document. And so discovery was a very strategic and evolving process that required a significant amount of communication and negotiation between the parties to narrow down what documents would be produced and which individuals would be deposed. *See* MANUAL FOR COMPLEX LITIGATION p. 7, § 10.21 (4th Ed. 2004) ("Fair and efficient resolution of complex litigation requires . . . counsel [to] act cooperatively and professionally" and to "collaborate" with the judge "to develop and carry out a comprehensive plan for the conduct of pretrial and trial proceedings.").

As for the purpose of disclosures, the advisory committee to Rule 26 instructs that disclosures are intended "to accelerate the exchange of basic information about the case," "help focus the discovery that is needed, and facilitate preparation for trial or settlement." FED. R. CIV. P. 26 advisory committee's notes to 1993 amendment. The disclosure requirements should "be applied with common sense in light of the principles of Rule 1"—meaning "the just, speedy, and inexpensive determination of every action and proceeding." *Id.*; FED. R. CIV. P. 1. The committee also counseled that "litigants should not indulge in gamesmanship with respect to the disclosure obligations." FED. R. CIV. P. 26 advisory committee's notes to 1993 amendment.

The text of Rule 26(a) and (e) makes clear that a party need not disclose every single individual who may know something relevant to the case, nor is a party required to disclose witnesses that they do not intend to use. Rather, they are required to disclose only the individuals who possess information that they intend to potentially rely on. *See* FED. R. CIV. P. 26(a)(1)(A)(i), (e)(1)(A).

As the Seventh Circuit has explained, "[a]dherence to the duty to supplement takes on practical importance" in a complex case, like this one, where many people play a role in the facts and possess relative information. *Morris v. BNSF Ry. Co.*, 969 F.3d 753, 765 (7th Cir. 2020). Supplemental disclosures "help to separate wheat from chaff . . . ." *Id.* That is, supplemental disclosures signal to the opposing party which individuals with relevant information really matter because they are likely to be called as witnesses at trial during the party's case-in-chief. *Doe 1 v. City of Chicago*, No. 18-CV-3054, 2019 WL 5290899, at *8 (N.D. Ill. Oct. 18, 2019). *See also Morris*, 969 F.3d at 765 ("[T]he whole point of introducing the discovery mechanisms listed in Rule 26 was to ensure that trials would no longer be 'carried on in the dark.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862–63 (9th Cir. 2014) ("The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush."). Knowing who a party may rely on to provide information, in turn, enables their opponent to make an informed and strategic decision as to who they want to interview, depose, or otherwise elicit information from during the discovery process.[14] Simply put, "[k]nowing the identity of

---

[14] *E.g., Doe 1,* 2019 WL 5290899, at *8 ("When a party discloses witnesses on their Rule 26(a)(1) disclosure, it . . . alerts the opposing party that deposing those witnesses may be necessary in order to learn the substance of their testimony, and to ensure that they do not hear the testimony for the first time at trial."); *Smith v. Aurora Public Schools*, 318 F.R.D. 429, 431 (D. Colo. 2016) ("If one party lists a potential witness on its Rule 26 disclosures, the other parties . . . can then make a calculated decision whether to seek discovery from that person and thereby mitigate the possibility of surprise . . . ."); *Johnson v. Sch. Dist. No. 1 in the Cnty. of Denver*, No. 12-CV-02950-MSK-MEH, 2014 WL 983521, at *3 (D. Colo. Mar. 13, 2014) ("Rule 26 disclosures are designed to allow a party enough time to conduct interviews and depositions, and to prepare a trial strategy in light of the witnesses that may be called by the opposing party.") (citing *Dunlap v. City of Okla. City,* 12 Fed.Appx. 831, 834 (10th Cir. 2001)); *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216,

the opponent's . . . witnesses allows a party to properly prepare for trial." *Musser,* 356

F.3d at 757. *Accord Ollier,* 768 F.3d 843 at 862–63 ("Orderly procedure requires timely

disclosure so that trial efforts are enhanced and efficient, and the trial process is

improved."). "The late disclosure of witnesses throws a wrench into the machinery of

trial." *Ollier,* 768 F.3d at 863. As the Court has emphasized in recent weeks, proper and

adequate preparation for this trial is absolutely essential so that the Court and the parties

can try this case efficiently and endeavor to finish the trial in the three and half weeks the

Court has set aside.

    With that context in mind, the Court turns first to Plaintiffs' Motion in Limine.

## A.  PLAINTIFFS' MOTION IN LIMINE NUMBER 2: BAR EVIDENCE, WITNESSES, AND EXHIBITS NOT TIMELY DISCLOSED DURING DISCOVERY (Doc. 472, pp. 3–4)

    In this motion, Plaintiffs ask the Court very generally to bar any evidence,

witnesses, and exhibits that were not properly disclosed pursuant to Rule 26 (Doc. 472,

pp. 3–4). Defendant surmised, (Doc. 480, p. 2), and Plaintiffs confirmed at the FPTC, that

the motion is really targeting the six IDOC officials identified above: Justin Hammers,

Christine Brannon-Dortch, Angela Locke, Kim Smith, Jason Hall, and Dr. Melvin Hinton.

As already mentioned, none of these six individuals were identified in Defendant's initial

disclosures served in October 2016 (Doc. 476, Doc. 534-1). And Defendant never

---

1224 (D. Kan. 2007) ("A party's ability to order its discovery and select its witnesses for deposition is
prejudiced by another party's failure to make sufficient Rule 26(a)(1) disclosures.") (citation omitted);
*Sender v. Mann,* 225 F.R.D. 645, 656 (D. Colo. 2004) (Rule 26(e) disclosures "must be sufficiently detailed to
allow [the opposing party] to make intelligent decisions regarding how [it] will efficiently use the limited
number of depositions permitted under the Rule 16 scheduling order").

supplemented her initial disclosures at any time during the approximately nine years of litigation that followed. Defendant said nothing about her intent to call these six individuals as witnesses at trial until August 21, 2025. At that point, discovery had been closed for almost two years, the Final Pretrial Conference was just two weeks away, and trial was scheduled to begin in six and half weeks. (*see* Docs. 472, 474; Doc. 462 (trial to begin on Oct. 6, 2025); Doc. 466 (FPTC set for Sept. 4, 2025)).

As Plaintiffs see it, this is a straightforward matter—Defendant did not disclose these individuals in a timely manner as required by Rule 26 and so they must be excluded from testifying at trial (*e.g.,* Doc. 472, pp. 3–4). Defendant, however, argues that she should not be barred from calling these six witnesses because, although she did not ever formally disclose them pursuant to Rule 26, they were all disclosed in discovery documents or by Plaintiffs themselves (*e.g.,* Doc. 480, pp. 2–4). In particular, Hammers, Hall, and Hinton were identified in Defendant's interrogatory responses (*Id.*; Doc. 405-2). Hammers and Smith were also identified as custodians for the ESI search conducted post-class certification, and Hinton for the pre-certification search, which meant emails written by and to them were produced (Doc. 480, pp. 2–4). Hammers also provided testimony via declarations at summary judgment (*Id.*). And finally, Plaintiffs listed five of the six individuals (everyone except for Hinton) in their own supplemental disclosures (*Id.*; *see* Docs. 476, 476-1 through 476-3).

Defendant's argument invokes the "otherwise made known" exception in Rule 26(e), which applies and excuses supplementation if the witnesses are made known "during the discovery process or in writing" in a manner that provides "the functional

equivalent of the information required" in a supplemental disclosure. FED. R. CIV. P. 26(e)(1)(A); *Ahad v. Bd. of Trs. of S. Illinois Univ.*, No. 15-CV-3308, 2018 WL 534158, at \*7 (C.D. Ill. Jan. 24, 2018) (citing *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1169 (D. Colo. 2015)). *Accord Johnson v. Statewide Investigative Servs., Inc.*, No. 20 C 1514, 2021 WL 825653, at \*12 (N.D. Ill. Mar. 4, 2021); 6 MOORE'S FEDERAL PRACTICE – CIVIL § 26.131 (2025). That means the opposing party must be put on notice during the discovery period of (1) the witness's identity, (2) the subjects on which the witness could provide testimony pertinent to the case, and (3) the party's potential interest in calling the witness in support of its claims or defenses. *E.g., Maxson v. Dwyer*, No. 16-CV-9417, 2023 WL 4352146, at \*2 (N.D. Ill. July 5, 2023) (citing *Johnson*, 2021 WL 825653, at \*12).

Starting with Melvin Hinton, Plaintiffs were certainly aware of his identity and his role as the IDOC's Chief of Mental Health. As other courts have remarked, however, "[i]t's one thing to know that a person's name is out there [but] it's another thing to know that the other side is intending to call him as a witness." *Morris*, 969 F.3d at 765 (repeating trial judge's statement and affirming exclusion of late disclosed witnesses). *Accord Poitra v. Sch. Dist. No. 1 in the Cnty. of Denver*, 311 F.R.D. 659, 666 (D. Colo. 2015) ("[K]nowledge of the existence of a person is distinctly different from knowledge that the person will be relied upon as a fact witness.") (citation omitted). *See also Zurwell v. Hill's Pet Nutrition, Inc.*, No. 1:05-CV-1475-WTL-DML, 2010 WL 11561393, at \*3 (S.D. Ind. Mar. 9, 2010) ("Knowing that some employees may have relevant information about her allegations is not enough to put [Defendant] on notice that the particular employees would be [Plaintiff's] witnesses in the case."); *Mehus v. Emporia State Univ.*, 326 F.Supp.2d 1213, 1219

(D. Kan. 2004) (explaining the plaintiff's "knowledge that [a witness] occupied a position at issue in this case is no substitute for [Defendant's] compliance with Rule 26.").

The Court finds that Defendant's interrogatory answers, in which Hinton was named four times, were not sufficient to put Plaintiffs on notice that Defendant was interested in using Dr. Hinton at trial to support her claims and defenses, or the subjects on which Hinton would be expected to testify. Hinton's name was listed amongst many other people collectively identified as being the most knowledgeable about certain IDOC policies and procedures (Doc. 405-2, pp. 4, 5, 6, 14). There was nothing that indicated Hinton was of particular importance or that he was the particular individual whom Defendant would choose, from amongst the many different individuals named, to call as a witness. *See Ahad,* 2018 WL 534158, at *7 (identification of individuals in interrogatory response is not functional equivalent of Rule 26(a) disclosure because it does not "identify the individuals as someone the Defendants 'may use to support its claims or defenses.'"); *Ty, Inc. v. Publications Int'l, Ltd.*, No. 99 C 5565, 2004 WL 421984, at *4 (N.D. Ill. Feb. 17, 2004) ("[M]erely because the names of these witnesses appeared, among hundreds of other names . . . does not mean that [plaintiff] should have anticipated that [defendant] would call these individuals as trial witnesses and deposed them accordingly."). It is also not clear that the subject matter of the interrogatory responses in which Hinton was identified relate to or match up with the substantive topics that Defendant wants Hinton to testify about at trial. (*Compare* Doc. 405-2, pp. 4, 5, 6, 14 *with* Doc. 484.)

As for Hinton's role as a pre-class certification custodian of records, Defendant failed to explain, (*see* Doc. 484), nor can the Court discern, how that could have possibly

put Plaintiffs on notice that Defendant intended to call Dr. Hinton to testify at trial or the subjects that he was expected to cover. The Court also notes that Dr. Hinton was not deposed in this case, which implies that Defendant was not interested in obtaining his testimony. And Defendant did not rely on Hinton in any substantive way to support her motion for summary judgment; Hinton was never even mentioned in the motion (*see* Doc. 435). Simply put, there was never any indication from Defendant during the discovery period that she intended to use Dr. Hinton at trial to support her claims or defenses. Therefore, Plaintiffs' knowledge of Dr. Hinton generally was not enough to excuse Defendant of her obligation to supplement her disclosures to include him.

Turning next to the five other individuals—Hammers, Brannon-Dortch, Locke, Smith, and Hall—they differed from Dr. Hinton in that they were all listed in Plaintiffs' own supplemental disclosures served prior to the close of discovery. That demonstrates that Plaintiffs were obviously on notice of these individuals' identities and the positions they occupied within the IDOC. Plaintiffs also knew these individuals possessed information significant to the issues in this case; in fact, Plaintiffs were likely generally aware of the subjects of that information because Plaintiffs had deposed a number of these individuals' predecessors and other executive-level officials. The issue is thus whether Plaintiffs were on notice that Defendant might call these five individuals as witnesses "to support [her] claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). *See Morris v. BNSF Ry. Co.*, 429 F. Supp. 3d 545, 563 (N.D. Ill. 2019), ("[T]he fact that a party knows that an individual has relevant information does not constitute notice that the other side intends to call that person to testify."), *aff'd*, 969 F.3d 753 (7th Cir. 2020). *See also* FED. R.

CIV. P. 26(a)(1)(A) advisory committee's note to 2000 amendment (initial disclosure obligation requires "identification of witnesses and documents that the disclosing party may use to support its claims or defenses . . .  at a pretrial conference, to support a motion, or at trial."); *Id.* at advisory committee's note to 1993 amendment ("As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses . . . .").

The Court concludes for the same reasons explained above with respect to Dr. Hinton that neither the identification of Hammers and Hall in Defendant's interrogatory responses, nor the role of Hammers and Smith as custodians of records, was sufficient to put Plaintiffs on notice that Defendant intended to use them as witnesses at trial. The Court is likewise unconvinced that the declarations from Hammers submitted in support of Defendant's motion for summary judgment provided the information necessary to satisfy Defendant's disclosure obligations. Hammers was only used to explain the current status of three of the named Plaintiffs and to authenticate some documents (*see* Doc. 435-38; Doc. 387-1). He did not provide any substantive testimony on the subjects Defendant wants him to cover at trial (*compare* Doc. 435-38; Doc. 387-1 *with* Doc. 484, p. 2).

That leaves Plaintiffs' own supplemental disclosures. None of the cases that Defendant cited, (*see* Doc. 480, p. 2), are analogous to the situation here.[15] The Court's

---

[15] *See Bick v. Harrah's Operating Co.*, No. 00-1677, 2001 U.S. App. LEXIS 455, *10–11 (7th Cir. Jan. 5, 2001) (unpublished) (affirming district court's decision that defendant's failure to disclose witness was harmless and caused no unfair surprise where witness played a prominent role in the wrongful termination lawsuit as she was the manager who signed the report terminating plaintiff, plaintiff had included the witness in her own initial disclosures at the outset of the case, and plaintiff had deposed the witness); *Mims v. City of Chicago*, No. 18 C 7192, 2021 WL 5006649, at *4 (N.D. Ill. Oct. 28, 2021) (denying defendant's motion to depose witness after discovery cutoff because defendant had disclosed witness in its own initial disclosures

own research revealed cases that go both ways—some hold that a party is excused from

supplementing their disclosures to identify a potential witness if their opponent included

that same person in their own initial disclosures, but other cases say the opposite.

*Compare, e.g., Wilber v. City of Milwaukee*, No. 23-CV-951-JPS, 2025 WL 275593, at *4 (E.D.

Wis. Jan. 23, 2025) (holding defendant was not obligated to supplement initial disclosures

to identify witnesses who had been "otherwise . . . made known" to the plaintiff through

the discovery in the case as well as the plaintiff's own initial disclosures) *with Bouricius v.*

*Mesa Cnty.*, No. 1:18-CV-01144-DDD-STV, 2021 WL 12298817, at *6 (D. Colo. Oct. 8, 2021)

(defendant's untimely disclosure of its "may call" witnesses for trial not excused by

plaintiff's inclusion of some of the witnesses in her own initial disclosures).

Context is important here. And in the context of this case, the Court concludes that

Plaintiff's inclusion of the five officials at issue in her own supplemental disclosures did

not excuse Defendant from disclosing them herself. Plaintiffs' disclosure did not occur

---

and never sought depose her until plaintiff produced an affidavit from the witness on the day discovery ended; "For three years, they appeared to be completely disinterested in what she might say."); *Thomas v. Sheehan*, 499 F. Supp. 2d 1062, 1072–73 (N.D. Ill. 2007) (denying defendants' motion to strike affidavits from plaintiff's four witnesses after finding that plaintiff had in fact disclosed the witnesses in writing prior to discovery cut-off but also noting, amongst other things, that defendants raised the possibility of one of the witness's testimony in their own supplemental disclosures); *McGuire v. Carrier Corp.*, No. 1:09-cv-00315-WTL-JMS, 2009 U.S. Dist. LEXIS 126191, at *3–5 (S.D. Ind. Oct. 30, 2009) (finding Rule 37(c) sanctions were mandatory where plaintiff served her initial disclosures over a month late and made no attempt to establish that her failure was substantially justified or harmless; plaintiff barred from relying on any witnesses other than herself and the witnesses that defendant had disclosed because those were "individuals for whom late disclosure is by definition harmless") (citing FED. R. CIV. P. 37(c), advisory committee note to 1993 amendment). *See also* FED. R. CIV. P. 37(c), advisory committee note to 1993 amendment (providing examples of situations in which late disclosures are harmless, such as "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.")

until late in the game, nearly two years after fact witness depositions had finished. It appears that Plaintiffs listed these five officials simply for the sake of completeness, and perhaps out of an abundance of caution, to reflect who was now holding the positions that they had identified in their initial disclosures as being the most significant. There is nothing that suggests Plaintiffs actually intended to call these individuals as witnesses at trial; Plaintiffs never deposed these individuals or utilized them in any way throughout their own discovery. *But cf. Bick*, 2001 U.S. App. LEXIS 455, at *10–11 (rejecting motion to exclude defendant's late disclosed witness where plaintiff had included the witness in her own initial disclosures and deposed the witness). Defendant likewise never sought to depose them or otherwise showed any interest in obtaining their testimony. *See Mims*, 2021 WL 5006649, at *3 (denying defendants' request to take a late deposition when defendants knew about witness from inception of case but "[f]or three years, they appeared to be completely disinterested in what she might say."). *See also Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, No. 317CV00147RLYMPB, 2020 WL 1663130, at *5 (S.D. Ind. Jan. 16, 2020) (excluding two of defendant's witnesses who were never deposed and had not been disclosed in plaintiff's own initial disclosures or otherwise utilized throughout discovery).

Furthermore, it is not as though Hammers, Brannon-Dortch, Locke, Smith, and Hall played a role so integral in the underlying facts that it should have been obvious to Plaintiffs that Defendant would call them as witnesses at trial. Rather, there are many other current and former officials who can likely speak on the same subjects. *But cf. Bick*, 2001 U.S. App. LEXIS 455, at *10–11 (no surprise that manager who signed report

terminating plaintiff's employment would be called as a witness in plaintiff's wrongful
termination suit).

Finally, and perhaps most importantly, Plaintiffs' own disclosures say nothing
about whether *Defendant* was interested in calling these officials at trial to support *her*
own case. *See, e.g., Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 297 (D. Colo. 2014) ("[T]he
purpose of [the plaintiff's] disclosure under Rule 26(a) was to inform [the defendant] of
which individuals *the Plaintiffs* believed had pertinent information . . . ."). And, in fact,
Plaintiffs rationally assumed Defendant was *not* interested in calling these officials at trial
because Defendant had not supplemented her disclosures to include them.[16]

In sum, after careful consideration of the parties' arguments, the relevant
circumstances, and the applicable case law, the Court concludes that within the specific
context of this case, neither the mention of these six individuals during discovery nor
their inclusion in Plaintiffs' own supplemental disclosures was enough to override
Defendant's obligation to timely supplement her own Rule 26(a)(1) disclosures. As such,
Rule 37(c)(1) requires Hammers, Brannon-Dorch, Locke, Smith, Hall, and Dr. Hinton to

---

[16] *See Smith*, 318 F.R.D. at 432 ("Each party is entitled to presume that the other party understands and will
comply with [Rule 26]"; if a party does not supplement their disclosures to include an individual known
to possess relevant information, then their opponent is "generally entitled to presume that the [party] has,
for some reason, decided not to use [that individual's] testimony in support of its claims" and to "plan their
discovery strategy accordingly."); *Poitra*, 311 F.R.D. at 671 ("There comes a time when an opposing party
is entitled to make informed decisions and to rely on the statements (or silence) of the other side."); *Rhodes
v. Sutter Health*, 949 F. Supp. 2d 997, 1010 (E.D. Cal. 2013) ("Parties . . . have a right to expect that only
disclosed witnesses will be used to support the disclosing party's claims and defenses. They should be able
to rely on Rule 26 disclosures and not be required to second guess whether a disclosing party has
purposefully omitted a potential witness or done so accidently."). *See also Wilkins*, 487 F.Supp.2d at 1224
(precluding witnesses from testifying because failure to disclose was not harmless where "[i]n reliance on
the plaintiff's decision not to disclose these persons as witnesses, the defendant did not depose them or
seek additional discovery about them.").

be excluded from trial unless the Court finds that Defendant's failure to disclose them is
substantially justified or harmless.

The Court "need not make explicit findings concerning the existence of a
substantial justification or the harmlessness of a failure to disclose," but the Seventh
Circuit has identified several factors that should guide the Court's discretion: "(1) the
prejudice or surprise to the party against whom the evidence is offered; (2) the ability of
the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad
faith or willfulness involved in not disclosing the evidence at an earlier date." *David*, 324
F.3d at 857. The burden of establishing substantial justification and harmlessness is on
Defendant as the party who is facing the imposition of sanctions. *Id.* (citation omitted).

Defendant did not offer any explanation in her brief or at the FPTC to justify her
failure to timely disclose the six officials at issue (*see* Doc. 480). Given that each of these
individuals was in their respective positions well before the close of discovery in
September 2023, they could have and should have been disclosed much sooner.
Supplementing disclosures is a fundamental and core obligation imposed on all attorneys
who appear in federal court, and so it is difficult to fathom how Defendant overlooked it.
That is particularly true because Plaintiffs repeatedly supplemented their disclosures,
and one would think that would have prompted Defendant to supplement her own.

Defendant's late disclosure as the parties and the Court were gearing up for trial—
almost nine years after this litigation commenced and nearly two years after the close of
discovery—is, without a doubt, prejudicial to Plaintiffs. *See, e.g., King v. Ford Motor Co.,*
872 F.3d 833, 838 (7th Cir. 2017) ("[T]here is obvious prejudice in failing to disclose . . . a

witness during discovery, as that prevented [defendant] from deposing [the witness] and

conducting any appropriate follow-up discovery, so the violation was not harmless"); *See*

*also Doe 1*, 2019 WL 5290899, at *8 (detailing the harm that comes from not being able to

depose a witness prior to trial). Although Plaintiffs had included these six officials at issue

in their own supplemental disclosures, they ultimately chose not to call these officials as

witnesses at trial, and believing that Defendant was not going to either, took no further

action. Plaintiffs specifically said at the FPTC that if Defendant had provided any notice

of her likely intent to call these officials, Plaintiffs would have sought to depose them.

Defendant insisted at the FPTC that Plaintiffs had every opportunity to depose the

officials at issue but simply chose not to. In fact, Defendant made the point that Plaintiffs

deposed "many people" whom she had never disclosed but were simply listed in her

interrogatory responses. Defendant's argument, in essence, is that because Plaintiffs

previously worked around Defendant's failure to supplement, they should have just

continued doing so. The Court is simply not persuaded. It was not Plaintiffs'

responsibility to comb through all of the documents in this case and try to guess which

particular witnesses Defendant would call at trial in her case-in-chief and then choose

whether to ask the Court for permission to conduct additional depositions (at the cost of

considerable time and money, which could later prove worthless) or run the risk of

examining Defendant's witnesses cold for the first time at trial. That is not how

disclosures work. *See, e.g., Morris*, 969 F.3d at 766 (timely supplementing disclosures

"should be a priority—not something brushed off as tedious or unimportant so long as

the information disclosed late can somehow be unearthed like a needle in a haystack

within a prior discovery production."); *Ollier*, 768 F.3d at 863 ("An adverse party should

not have to guess which undisclosed witnesses may be called to testify."); *Zurwell,* 2010

WL 11561393, at *4 ("The purpose of [supplementations] is to narrow the issues for an

expeditious and inexpensive resolution, not to impose a tea leaves-reading burden on the

opposing party."); *Norman v. CP Rail Systems,* 2000 WL 1700137 (N.D. Ill. 2000)

(explaining Rule 26(a)(1)(A) is a "fairness rule, not a technicality," the point of which is

to "avoid having to slog through heaps of discovery material"). Had Defendant properly

supplemented her disclosures in a timely manner, Plaintiffs would have been able to

factor that information into their discovery plan.

Additionally, there is no chance to cure the prejudice to Plaintiffs. They would

have to be allowed to depose each of these six individuals in order to prepare an effective

cross examination at trial. But the rapidly approaching trial date makes that cure

unreasonable. The Court simply cannot expect Plaintiffs to find the time and expend the

money to depose *six* witnesses, and incorporate that testimony into their trial strategy,

while also finalizing other preparations for a nearly month-long trial, in such a short

amount of time. While such a "remedy" would alleviate some of the prejudice caused by

Defendant's non-disclosure, it "would wreak its own distinctive prejudice." *Poitra*, 311

F.R.D. at 670 (citation omitted). The Court is also unwilling to postpone this trial to allow

Plaintiffs time to depose the six witnesses. It has taken far too long to bring this case to

trial and responsibility for many of the delays ultimately lies with Defendant. The Court

will not allow yet another delay (which surely would be significant given the challenge

of fitting this lengthy trial into the Court's schedule) in order to remedy Defendant's

failure to comply with her fundamental disclosure obligation.

For these reasons, the Court concludes that Defendant failed to comply with Rule 26 by failing to timely disclose Hammers, Brannon-Dorch, Locke, Smith, Hall, and Hinton, and Defendant's failure was not substantially justified or harmless. As such, Plaintiffs' motion in limine No. 2 is granted and Defendant is barred from calling the aforementioned witnesses at trial during her case-in-chief.

The Court does not reach this decision lightly. Given the important public interests that are at stake, the Court has repeatedly made clear its desire to decide this case on the merits after a full and fair presentation of the evidence by the parties' preferred witnesses. But allowing Defendant to call her preferred witnesses would simply be too prejudicial to Plaintiffs and that prejudice cannot be overcome without inflicting a significant and unfair burden on Plaintiffs and the Court. Furthermore, the Court believes that excluding these six witnesses likely will not have a materially adverse effect on Defendant's case because the topics that they were expected to cover closely match the topics of other officials anticipated or already-provided testimony.[17]

## B. DEFENDANT'S MOTION IN LIMINE NUMBER 2 (Doc. 474)

In this motion, Defendant asks the Court to bar Plaintiffs from calling any inmates for whom records were not produced (Doc. 474, pp. 3–5). Defendant pointed out that, with respect to the inmates Plaintiffs had identified by name in the body of their

---

[17] The parties provided agreed-to deposition designations for former Directors John Baldwin and Rob Jeffreys; former Assistant Director Gladyse Taylor; former Chiefs of Operations Mike Atchison, Sandra Funk, and John Eilers; and former Deputy Directors of Operations Randy Pfister and Marcus Hardy.

supplemental disclosures, records had been requested and produced for only a handful

of them (*Id.* at p. 4). As for the inmates named in the Appendix attached to Plaintiffs'

supplemental disclosures, it is unclear whether records were produced for each of these

inmates. Defendant seemed to say that she learned for the first time that Plaintiffs were

reserving the right to call any of inmates listed in the Appendix when Plaintiffs sent the

August 5th email regarding the inmates they intended to call to testify by video at trial

(*see id.*). Defendant stated that she had not had sufficient time to compare the list of

inmates from the Appendix with the list of inmates for whom records were produced

(*Id.*). As a compromise, Defendant proposed that she would not object to any late-

disclosed inmates testifying so long as she was able to produce their records for use at

trial (*Id.*). In response, Plaintiffs called Defendant's motion "absurd" and rejected

Defendant's proposed compromise (*see* Doc. 479, pp. 2–5). As Plaintiffs see it, Defendant

is trying to bar testimony from properly disclosed witnesses because she failed to

supplement her document production (*Id.* at p. 2).

     The Court notes that the witnesses at issue have become somewhat of a moving

target, *see supra* at pp. 5, 6, 7, so the Court's analysis will speak generally to encompass

all of the approximately 300 inmate witnesses whom Plaintiffs disclosed in the months

before the overall discovery cutoff and the months that followed. The issue, as the Court

sees it, is whether the disclosure of 300 potential inmate witnesses satisfied Plaintiffs'

duty to disclose and supplement under Rule 26. The Court concludes, that in the context

of this particular case, Plaintiffs' disclosure was deficient.

     As previously discussed, one of the purposes of Rule 26 disclosures is for a party

to inform their opponent whom they are likely to rely on as witnesses so that the opposing party can then make an informed and strategic decision whether to seek discovery from, or pertaining to, those individuals. It was especially important in this case for Plaintiffs' supplemental disclosures to be as refined and precise as possible because there were literally thousands of potential inmate witnesses, and Defendant could not possibly know which ones Plaintiffs expected to rely on without being told. It was therefore incumbent on Plaintiffs to narrow things down by supplementing their disclosures in a timely manner.

When Plaintiffs eventually supplemented their disclosures, they indicated there were approximately 300 current/former inmates whom they may potentially call as witnesses at trial. A list of 300 is simply too many; it does not provide Defendant with enough meaningful information to make an informed decision regarding discovery and trial preparation. *E.g.*, *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 3:05-MD-527 RM, 2007 WL 2128164, at *3 (N.D. Ind. July 23, 2007) (holding list of 10,000 individuals was not a proper disclosure because it was "simply too broad and extensive to be meaningful."); *Sender*, 225 F.R.D. at 651, 655 (holding the plaintiff's disclosure generically identifying over 300 potential witnesses was insufficient; a "party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses. . . . ."the Rule 26(e) supplementation requirement contemplates greater precision . . . .").

Furthermore, Plaintiffs certainly realized that a much smaller number of witnesses would actually be used at trial. *See Monfore v. Phillips*, 778 F.3d 849, 851 (10th Cir. 2015)

("At trial you just can't . . . present the millions of documents and the scores of witnesses you were able to dig up in discovery: no sensible judge would tolerate it."). It therefore makes no sense—and is antithetical to the objectives of Rule 1 to minimize the expenditure of time and money for all parties—to expect Defendant to view all 300 inmates as potential witnesses and to obtain discovery from, or pertaining to, all of them. It was Plaintiffs' job to narrow their list down and to do so in a timely manner.

Plaintiffs waited until early August 2025 to edit their list down and inform Defendant for the first time which inmates they actually intended to call as witnesses at trial. At that point, discovery had been closed for almost two years, the Final Pretrial Conference was approximately four weeks away, and trial was scheduled to begin in about eight weeks. If a similar timeframe was too late for Defendant to disclose her witnesses, *see supra* section (A), then it is also too late for Plaintiffs.

Defendant proposed a compromise, which the Court thinks was eminently reasonable and fair. Plaintiffs, however, were not interested in compromise. They argue that if Defendant wanted to supplement her document production to include records for all of their potential witnesses, then she should have done so at or near the time they served their supplemental disclosures (Doc. 479, p. 3). But, again, Defendant was not required to view all 300 inmates as potential witnesses. That means Defendant did not have to proactively cross-reference Plaintiffs' list of 300 potential witnesses against the list of inmates for whom she had produced (or was in the process of producing) records to determine if discovery had been done as to all of them and if not, to benevolently supplement her production with records she never agreed to provide and which were

not requested by Plaintiffs. And to do all of this at the cost of considerable time and
money that would undoubtedly prove worthless for a large portion of the inmates. Nor
did Defendant have to try to guess which of the 300 inmates Plaintiffs would actually call
at trial during their case-in-chief. Rather, the burden was on Plaintiffs to supplement their
disclosures more precisely in the first instance. But Plaintiffs did nothing until long after
the close of discovery when trial was just two months away. "If the risk or consequences
of indecision should fall on one side or the other, it should be the party with the
affirmative disclosure obligation." *Poitra*, 311 F.R.D. at 671.

Finally, Plaintiffs, unable or unwilling to see that their supplemental disclosures
were problematic, made no effort to justify their failure to properly supplement with
more specificity (*see, e.g.*, Doc. 479, pp. 2–5). Nor did Plaintiffs explain how their failure
was harmless (*see id.*). If these witnesses were permitted to testify, the Court does not
believe that Defendant would be harmed to the same degree and in the same manner that
Plaintiffs faced, *see supra* at pp. 21–22,[18] because there is no indication that Defendant
intended to depose all of Plaintiffs' inmate witnesses prior to trial. However, the late
disclosure of witnesses on the eve of trial is always bound to cause some harm. *See King*,
872 F.3d at 838 ("[T]here is obvious prejudice in failing to disclose . . . a witness during
discovery . . ."); *In re FedEx*, 2007 WL 2128164, at *3 ("Waiting until the discovery period
has closed to inform the [opposing party] which specific witnesses will be used is too
late.").

---

[18] *See also Doe 1*, 2019 WL 5290899, at *8 (detailing the harm that comes from not being able to depose a
witness prior to trial).

By rejecting Defendant's offer to compromise, Plaintiffs took a gamble that the Court would see things their way. The Court does not. Defendant's motion in limine No. 2 is granted and Plaintiffs are barred from calling any inmate witnesses for whom records were not produced during the discovery period or at any point thereafter.

## Conclusion

Plaintiffs' motion in limine No. 2 is granted and Defendant is barred from calling Justin Hammers, Christine Brannon-Dorch, Angela Locke, Kim Smith, Jason Hall, and Dr. Melvin Hinton as witnesses at trial during her case-in-chief.

Defendant's motion in limine No. 2 is granted and Plaintiffs are barred from calling any inmate witnesses for whom records were not produced during the discovery period or at any time thereafter.

IT IS SO ORDERED.

DATED: September 25, 2025

s/ Mark A. Beatty
MARK A. BEATTY
United States Magistrate Judge