IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HENRY DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-CV-600-MAB |
| | ) | |
| LATOYA HUGHES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiffs' Emergency Motion for Protective

Relief and Sanctions (Doc. 613) and Plaintiffs' Emergency Motion to Shorten Time for

Defendant's Discovery Responses (Doc. 616). For the reasons discussed below, both

motions are DENIED without prejudice (Docs. 613, 616).

**BACKGROUND[1]**

This class-action lawsuit proceeded to a bench trial in October 2025 (*see generally*

Docs. 561-580). During the trial, the Court heard testimony from numerous witnesses,

including testimony from Ray Tate (*see* Doc. 498), Lamar Hardy (Doc. 505), Anthony

Williams (Doc. 577), and Kevin Norman (Doc. 502), all of whom are inmates at Menard

Correctional Center. On October 23, 2025, trial concluded, and this matter was taken

---

[1] The Court assumes the parties, who have already participated in a Status Conference discussing these motions (Doc. 619), are familiar with the procedural posture of this case and the facts underlying Plaintiffs' Motions (Docs. 613, 616; *see also* Doc. 621) and Defendant's Responses (Docs. 617, 620). Accordingly, the Background section of this Order only briefly recollects relevant background information.

under advisement by the Court (*see* Docs. 580, 593). Thereafter, the parties submitted their respective Proposed Findings of Fact and Conclusions of Law (Docs. 611, 612).

On February 4, 2026, Plaintiffs filed an Emergency Motion for Protective Relief and Sanctions (Docs. 613). That motion alleged that certain Menard inmates who testified at trial, including Ray Tate, Lamar Hardy, Anthony Williams, and Kevin Norman, were being subjected to a "violent campaign of harassment and abuse for the stated purpose of retaliating against the Menard prisoners who testified before this Court at trial." (*Id.* at p. 1). More specifically, Plaintiffs alleged that those inmate witnesses had been subjected to violent physical assaults, confiscation of legal papers, ransacking of their cells, deprivation of food, fraudulent disciplinary tickets, deprivation of privileges, withholding of property, and verbal threats to their safety (*Id.* at p. 2). The motion further alleged that after learning of the retaliatory conduct their clients had been subjected to, Plaintiffs' counsel sent a letter to the Warden of Menard on January 5, 2026, complaining of the alleged retaliation against Ray Tate (*Id.* at pp. 2, 13-14). However, after counsel sent that letter to Menard, Ray Tate was violently assaulted and forced to sign a form stating that he had not been subjected to retaliation (*Id.* at pp. 2-3). Plaintiffs' motion then recounted their counsels' largely unsuccessful attempts to discuss and resolve this matter with opposing counsel (*Id.* at pp. 4-5). Finally, Plaintiffs' motion concluded by discussing the purported legal authority for judicial intervention and Plaintiffs' requested relief (*Id.* at pp. 5-11).[2]

---

[2] Specifically, Plaintiffs' motion requested: (1) an immediate evidentiary hearing; (2) if appropriate, a Protective Order prohibiting retaliation; (3) mandatory disclosure of disciplinary proceedings against

In light of the troubling allegations of retaliation raised by Plaintiffs, the Court ordered an expedited response from Defendant and expressed an intent to set this matter for an evidentiary hearing after receiving Defendant's response (Doc. 614). At that time, the Court also promptly set this matter for a Status Conference to discuss the logistics of Plaintiffs' motion and questions the Court had regarding Plaintiffs' request for an evidentiary hearing (*Id.*). As ordered, Defendant filed a Response to Plaintiffs' Motion for Protective Relief and Sanctions on February 11, 2026 (Doc. 617). In her Response, Defendant generally argued that Plaintiffs had not provided any evidentiary support for their concerning and inflammatory accusations (*see Id.* at pp. 1-2). Defendant also asked the Court to clarify what standard applies to Plaintiffs' motion and any future evidentiary hearing (*Id.* at p. 2). Additionally, Defendant refuted Plaintiffs' contention that Defense Counsel had all but ignored Plaintiffs' prior correspondence alerting Defendant to the alleged retaliation (*Id.* at pp. 3-6; *see also* Docs. 617-1, 617-2).

Meanwhile, on February 9, 2026, Plaintiffs filed an Emergency Motion to Shorten Time for Defendant's Response to Plaintiffs' Rule 34 Requests and for Other Relief (Doc. 616) (hereinafter, Plaintiffs' "Emergency Motion to Shorten Time"). In that motion, Plaintiffs first detailed the post-trial discovery related to retaliation that the parties had already conducted, and then argued that Defendant was improperly "slow roll[ing]" or withholding other discovery materials (*see generally Id.*). Defendant did not, however, have time to respond to Plaintiffs' Emergency Motion to Shorten Time before appearing

---

testifying witnesses; (4) the Court hold Defendant in contempt for allowing witness retaliation; (5) an award of attorneys' fees and costs; and (6) any other relief the Court finds appropriate (*see* Doc. 613 at pp. 11-12).

at the Status Conference held on February 12, 2026 (*see* Doc. 619). Accordingly, at that Status Conference, the Court set a deadline for Defendant to respond to Plaintiffs' Emergency Motion to Shorten Time (*Id.*). In addition, the Court discussed various logistical matters with the parties and briefly listened to the parties' arguments as to the applicable standards governing these post-trial proceedings (*Id.*). Defendant filed her Response in Opposition to Plaintiffs' Emergency Motion to Shorten Time on February 19, 2026 (Doc. 620). In that response, Defendant contended that: (1) the evidence produced to date did not support Plaintiffs' allegations, and (2) Plaintiffs lacked any legal basis to justify expedited discovery and/or discovery of disputed materials (*see generally Id.*). One day later, Plaintiffs filed a Reply in Support (Doc. 621).

### DISCUSSION

I.      *Plaintiffs' Emergency Motion for Protective Relief and Sanctions (Doc. 613)*

Plaintiffs' Emergency Motion for Protective Relief and Sanctions argues that Plaintiffs are entitled to their requested relief and sanctions because at least four of Plaintiffs' inmate witnesses have been retaliated against by prison staff for testifying at trial (*see generally* Doc. 613). In response, Defendant contends that Plaintiffs have not provided any threshold evidence to support their troubling assertion that Ray Tate and other Menard inmates were subjected to retaliation, let alone retaliation specifically due to their trial testimony (*see generally* Doc. 617). Defendant also requests that the Court clarify what standard applies to Plaintiffs' Motion for Protective Relief and Sanctions (*see Id.* at p. 2). Ultimately, the Court finds Plaintiffs' failure to provide any evidentiary support for their motion to be dispositive.

Significantly, Plaintiffs' motion is not accompanied by any evidence to support their allegations of retaliation (*see generally* Doc. 613). Put simply, without providing at least some evidence, such as affidavits, to support their contentions, the Court has no assurances that even one piece of evidence will potentially support Plaintiffs' allegations of retaliation. And given the substantial time commitment and resource expenditures required to conduct a multi-day evidentiary hearing on Plaintiffs' Emergency Motion for Protective Relief and Sanctions (*see* Doc. 619), the Court does not believe it is unreasonable to require a threshold evidentiary showing before such a lengthy hearing is scheduled.

Tellingly, the Court's review of similar motions in other cases has revealed that in those situations, the party seeking a protective order and/or emergency relief has accompanied their request with at least some evidence before a hearing was potentially held. *See, e.g.*, *Adams v. NaphCare, Inc.*, 2:16-CV-229, 2016 WL 10492102, at *10 (E.D. Va. July 25, 2016) (the motion was accompanied by letters from inmate witnesses to the plaintiff's attorneys describing abuse and seeking relief); *Tyner v. Cain*, 3:22-CV-257-KHJ-BWR, 2024 WL 578775, at *1 (S.D. Miss. Feb. 13, 2024) (affidavits and "other documentary evidence" accompanied the plaintiff's motion for protection); *Dockery v. Hall*, Case No. 13-cv-326-CWR-RHWR (S.D. Miss. May 30, 2013) (motion for protective order against retaliation accompanied by numerous signed inmate declarations); *Parsons v. Ryan*, CV-12-00601-PHX-DKD, 2017 WL 3575711 (D. Ariz. July 25, 2017) (counsel submitted an affidavit recounting his conversation with clients about retaliation prior to an evidentiary hearing being conducted).

When this lack of evidence was discussed with Plaintiffs at the Status Conference on February 12, 2026, Plaintiffs explained that their inmate witnesses were fearful to provide evidence/testimony in any format other than appearing in person due to their fears of retaliation (Doc. 619). While that fear is understandable, the Court does not believe such a concern, without more, justifies proceeding to a multi-day evidentiary hearing without any evidence whatsoever on record to support Plaintiffs' position (and to commit Plaintiffs to that position). Furthermore, even if the Court accepts the inmate witnesses' fears of retaliation as the reason why they have not publicly provided an out of court statement, there are other ways Plaintiffs could have presented at least some evidence to support their motion. For example, Plaintiffs could have sought to file an inmate witness's affidavit under seal, perhaps even designated as attorneys' eyes only, thereby alleviating the inmate's fear of retaliation for publicly speaking out against prison officials in this proceeding. Alternatively, Plaintiffs' counsel could have prepared an affidavit attesting to the retaliatory conduct their clients had relayed to them and explaining why counsel believed that information was true. Beyond that, Plaintiffs could have belatedly submitted discovery evidence that supported their allegations, which had been recently produced to them by Defendant.[3] Yet, Plaintiffs did not do any of these things. *See, e.g.*, *Perry v. Cmty. Action Services*, 82 F. Supp. 2d 892, 898 (N.D. Ill. 2000) (denying motion for protective order due to alleged witness harassment where the

---

[3] To the extent Plaintiffs contend that they did not provide any evidence to support their motion at the time it was filed because post-trial discovery had not yet been conducted and Defendant possessed the desired evidence, this still does not explain why Plaintiffs could not have provided an affidavit to support their allegations of retaliation.

movant did not offer "anything more than conclusory allegations that the action taken by CASI was in any way related to Ms. Origel's affidavit.").

Therefore, while the Court undoubtedly shares the desire to ensure that witnesses are not retaliated against, the Court finds that Plaintiffs' Emergency Motion for Protective Relief and Sanctions does not warrant an evidentiary hearing at this time because it lacks any evidentiary support whatsoever.[4] Resultingly, given the complete lack of evidentiary support, Plaintiffs' Emergency Motion for Protective Relief and Sanctions is DENIED without prejudice (Doc. 613).

Should Plaintiffs refile a similar motion in the future, they must accompany that motion with at least some evidence to support their allegations of retaliatory conduct before the Court will consider scheduling the motion for an evidentiary hearing. Furthermore, to avoid future uncertainty, the Court believes its ability to prohibit retaliation against witnesses after trial has concluded, but before final judgment has been rendered, predominantly originates from the Court's inherent equitable powers.[5] *See Adams v. NaphCare, Inc.*, 2:16-CV-229, 2016 WL 10492102, at *10 (E.D. Va. July 25, 2016) ("Accordingly, based on *Disability Rights* and *Travisono*, an order directing jail personnel

---

[4] While the Court acknowledges that it could have allowed for the filing of supplemental briefing and exhibits instead of denying Plaintiffs' motion without prejudice, the Court believes that would not have been the fairest way to address the lack of evidence supporting Plaintiffs' motion because Defendant's Response would have presumably varied substantially if Plaintiffs had accompanied their motion with any evidence.

[5] This is not to say, however, that all such requests for relief from retaliation fall under the purview of the Court's inherent powers and will be reviewed under the two-prong test laid out in *Travisono*. Instead, as *Travisono* recognized, the standard to be applied may vary depending on the nature and type of relief requested. *See Ben David v. Travisono*, 495 F.2d 562, 564-65 (1st Cir. 1974) (Finding "paragraph 1 to exceed the court's authority, both because of its vagueness and because it crosses the line from a limited protective order, which we hold permissible, to a more expansive preliminary injunction appropriate only upon express findings that the prohibited conduct is likely.").

to not 'retaliate' against the inmate witnesses for their participation in this lawsuit would likely be available through this Court's inherent equitable power in the form of a protective order, should sufficient findings be made that the inmate witnesses reasonably fear retaliation, and that the court's fact-finding may be materially impaired unless a protective order is entered."). Consequently, in reviewing any future motion for a protective order against retaliation, "[t]he findings necessary to support such a protective order are simply that the plaintiffs reasonably fear retaliation and that the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court order." *Ben David v. Travisono*, 495 F.2d 562, 564 (1st Cir. 1974). *See also Tyner v. Cain*, 3:22-CV-257-KHJ-BWR, 2024 WL 578775, at *3 (S.D. Miss. Feb. 13, 2024) (denying without prejudice Tyner's motion seeking to be protected from retaliation for participating in the lawsuit, and indicating that if he re-urges that motion, the standard to be considered was the two prong standard laid out in *Travisono*).

II.      *Plaintiffs' Emergency Motion to Shorten Time (Doc. 616)*

Plaintiffs also seek a court order shortening the timeframe for Defendant to respond to Plaintiffs' post-trial discovery requests and requiring Defendant to preserve and produce responsive electronically stored information ("ESI") (*see generally* Doc. 616). In response, Defendant contends that no applicable rule of discovery supports either of Plaintiffs' requests (*see generally* Doc. 620). For the following reasons, the Court DENIES without prejudice Plaintiffs' Emergency Motion to Shorten Time (Doc. 616).

First and foremost, Plaintiffs' motion does not identify any discovery rule or other procedural mechanism that actually entitles Plaintiffs to the post-trial discovery they seek

(*see generally* Doc. 616).[6] This is crucial because, in the absence of such an entitlement, Plaintiffs would only be permitted to conduct additional discovery with the approval of the Court and/or the modification of a scheduling order. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause ***and with the judge's consent*** (emphasis added). Yet, as was discussed above, Plaintiffs have not provided any evidence to support their Emergency Motion for Protective Relief and Sanctions (Doc. 613). Without such a threshold showing, the Court will not order Defendant to devote further resources and time to conducting post-trial discovery based on Plaintiffs' unverified allegations. Therefore, in the absence of either a discovery rule applicable to this case's unique procedural posture or a court order permitting additional discovery, there is obviously no support for Plaintiffs' request to expedite such discovery and to require Defendant to produce ESI.

Here, rather than explaining what discovery rule or court order entitles Plaintiffs to any of the post-trial discovery they now unilaterally seek, Plaintiffs instead frame the issues as: (1) should Plaintiffs discovery requests be expedited under these circumstances; and (2) can Defendants categorically exclude ESI from its discovery responses (*see* Doc. 616 at pp. 4-5). But Plaintiffs' Emergency Motion puts the cart before the horse (Doc. 616). Both of the issues framed by Plaintiffs presuppose that Plaintiffs are entitled to conduct post-trial discovery at this time. In that regard, Plaintiffs' contention that Defendant

---

[6] Indisputably, Plaintiffs' motion cites to numerous Local and Federal Rules (*see* Doc. 616 at pp. 4-7) (citing SDIL LR 26.1(c)(2), FRCP 26, 34, 37). Nevertheless, Plaintiffs' motion fails to explain why those rules, which generally speaking, govern the normal course of discovery, should apply here—years after the close of discovery and in the absence of any court order permitting the parties to conduct additional discovery.

"unilaterally refus[ed] to meet and confer" and "unilaterally declar[ed] ESI off limits from discovery" is equally unavailing (Doc. 616 at p. 4). Discovery closed on September 22, 2023 (*see* Doc. 340; *see also* Doc. 357). Thus, regardless of the normal discovery rules related to meeting and conferring or producing discovery materials such as ESI, Defendant cannot be said to have unilaterally ignored any applicable discovery rule—particularly when it was Plaintiff who unilaterally declared that discovery would be reopened years after it had officially been closed (*see Id.*).

Finally, Plaintiffs' motion repeatedly argues that Defendant is not preserving evidence and cites rules requiring preservation (*see, e.g.*, Doc. 616 at p. 6) ("It is beyond peradventure that ESI must be preserved and must be produced pursuant to Rules 26, 34, and 37[.]"). However, Defense Counsel's refusal to produce ESI years after the close of discovery is readily distinguishable from situations where a party destroys or fails to preserve ESI. Put simply, a failure to preserve is different than a failure to produce. Therefore, at this time, the Court will not devote further time to the hypothetical question of whether Defendant has failed to preserve ESI or other materials. Again, Defense Counsel is simply declining to produce (or expedite the production of) those materials to Plaintiffs in a situation where Plaintiffs have not shown that they are entitled to them.

Consequently, Plaintiffs' Emergency Motion to Shorten Time is DENIED without prejudice (Doc. 616).

## CONCLUSION

For the reasons discussed above, both Plaintiffs' Emergency Motion for Protective Relief and Sanctions and Plaintiffs' Emergency Motion to Shorten Time are DENIED without prejudice (Docs. 613, 616).

Nevertheless, to the extent that it needs to be stated, the Court wishes to reiterate that Defendant and her agents must follow the law. They may not harass, intimidate, or retaliate against any inmate witness for providing testimony or other evidence in this action. Should credible evidence of such retaliation emerge, the Court will not hesitate to take appropriate measures.

**IT IS SO ORDERED.**

**DATED: March 9, 2026**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**